Ronald N. Richards (SBN 176246)
Morani Stelmach (SBN 296670)
LAW OFFICE OF RONALD RICHARDS & ASSOCIATES, APC
P.O. Box 11480
Beverly Hills, CA  90213
Tel: (310) 556-1001
Fax: (310) 277-3325
E-mail:  ron@ronaldrichards.com

Attorneys for *Specially Appearing Defendant,* Charif Kazal

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUNDER STUDIOS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARIF KAZAL; TONY KAZAL; ADAM KAZAL; AND DOES 1 TO 100, INCLUSIVE,<br><br>Defendants. | Case No. 2:17-cv-00871 AB (SSx)<br><br>**SPECIALLY APPEARING DEFENDANT CHARIZ KAZAL'S OPPOSITION TO PLAINTIFF'S NOTICE OF EX PARTE AND EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE; REQUEST FOR SANCTIONS**<br><br>Judge: Honorable Andre Birotte Jr.<br>Ctrm: 7B |

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.  THIS EX PARTE APPLICATION SHOULD NOT BE CONSIDERED BECAUSE IT VIOLATES THE COURT'S LOCAL RULES AND THE JUDGE'S REQUIREMENTS ........................................................... 2

II.  SERVICE NEEDS TO COMPLY WITH THE HAGUE CONVENTION BECAUSE AUSTRALIA, DEFENDANT'S RESIDENCE, IS A SIGNATORY ................................................................................ 5

    A.  Compliance With The Hague Convention Is Mandatory and Applies Here ....................................................................................... 7

III.  AUSTRALIA DOES NOT ALLOW EMAIL SERVICE ...................................... 9

IV.  A SPECIAL APPEARANCE FOR THE SOLE PURPOSE OF OPPOSING THIS EX PARTE IMPROPERLY SEEKING EMAIL SERVICE ON JURISDICTIONAL GROUNDS DOES NOT CONSTITUTE A GENERAL APPEARANCE ...................................................................... 11

CONCLUSION ............................................................................................. 12

i

# TABLE OF AUTHORITIES

**CASES**

*Backjoy Orthotics, LLC v. Forvic International Inc., et al.* 2016 WL 7664290 .............. 8

*Chanel, Inc. v. Song Xu*, 2010 WL 396357 ................................................. 9

*Compass Bank v. Katz*, 287 F.R.D. 392 (S.D. Tex. 2012) ................................. 8

*DFSB Kollective Co., Ltd. v. Tran, et. al.* (N.D. Cal. Dec. 21, 2011, No. 11-CV-01049-LHK) 2011 WL 6730678 ........................................................ 7

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685 (9th Cir.1988) ................................................................................. 5

*Gerber v. Riordan* (6th Cir. 2011) 649 F.3d 514 ........................................ 11

*Grand Entmt' Group, Ltd. V. Star Media Sales, Inc.* (3d Cir. 1993) 988 F.2d 476 ........ 11

*Indagro, S.A. v. Nilva*, No. 2:07–cv–3742–MCA–LDW, 2014 WL 1515587 ............. 7, 8

*Jimena v. UBS AG Bank*, No. CV–F–07–367 OWW/SKO, 2010 WL 2465333 (E.D. Cal. June 10, 2010) ........................................................ 9

*Opella v. Rullan* No. 10-21134-CIV, 2011 WL 2600707 (S.D. Flz. June 29, 2011)........ 9

*Peterson v. Highland Music* (9th Cir. 1998) 140 F.3d 1313 ............................. 11

*Progressive Southeastern Ins. Co. v. J & P Transp.*, No. 1:11–cv–137, 2011 WL 2672565 (N.D. Ind. July 8, 2011)................................................. 9

*RPost Holdings, Inc. v. Kagan*, No. 2:11–cv–238–JRG, 2012 WL 194388 .................... 9

*Sinatra v. National Enquirer* (9th Cir. 1988) 854 F.2d 1191 ........................... 11

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)........................5, 7

*West v. Terry Bicycles, Inc.* 5th Cir. 2000) 230 F.3d 1382............................. 11

*Williams-Sonoma Inc. v. Friendfinder, Inc.* (N.D. Cal. Apr. 17, 2007, No. C 06-06572 JSW) 2007 U.S.Dist.LEXIS 31299 .............................................. 8

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

## STATUTES

California Code of Civil Procedure Section 418.10 ........................................................ 11

## OTHER AUTHORITIES

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
    in Civil or Commercial Matters ........................................................................... 6, 7

## RULES

Fed. R. Civ. P. 4(f)(1) .................................................................................................. 5, 6

Local Rule 7-19 ................................................................................................................. 2

Local Rule 7-19.1 .......................................................................................................... 2, 3

Uniform Civil Procedure Rule 2005- Regulation 10.20 (2)(a) ....................................... 10

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL
SERVICE**

## **INTRODUCTION**

Plaintiff's ex parte application and supporting memorandum (collectively cited to as "Memo") is a frivolous attempt to circumvent Defendant's constitutional due process and Treaty rights.   It is also attempt to shut the Courthouse door to the defendant under the false belief by Plaintiffs they can file an ex parte application and enjoy no response by the defendant out of a fear of inadvertently submitting to jurisdiction and waiving blatant violations of The Hague Convention.

Plaintiff's ex parte application should not be considered by the Court as Plaintiff violated the Court's local rules and the Honorable Birotte's requirements by failing to provide Defendant's known counsel notice of its proposed ex parte application and its substance.  Defendant's counsel went as far as advising Plaintiff's counsel of his violations of the rules and provided him an opportunity to withdraw his application. (Richards Decl. ¶6, Exh. A.)  However, Plaintiff's counsel refused to do so.  Defendant is now forced to oppose a frivolous and meritless motion that violates local rules and seeks impermissible relief prohibited by international agreements, namely The Hague Convention.

The papers sent forth no exigency and no real effort at serving the defendant in Australia according to Australian law.

In the unlikely event the Court considers this abusive motion on the merits, the application should be denied as service on both of these Australian Defendants must comply with The Hague Convention. Defendant is a resident of Australia, which is a signatory to The Hague Convention.  Service of the initial documents in this action must strictly comply with the Convention or it is invalid.  Therefore, an alternative method of service, such as email, is inappropriate and in contradiction to the strict requirements of not only the Convention, but also of the Australian jurisdiction, New South Wales, which requires personal service of initial documents in an action.

1

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

Plaintiff cannot evade the service requirements provided for by The Hague Service Convention.  Allowing Plaintiff to serve these Australian Defendants by email contradicts international and Australian law on this matter.  To preserve the Defendants' due process, Plaintiff must act reasonably and diligently to serve the Defendants, which it has yet to do.

Specially appearing Defendant, Charif Kazal, respectfully requests that this court not consider this ex parte application as it violates local and local, local rules.

Alternatively, Kazal requests that the Court deny this ex parte application and order Plaintiff to serve Defendants in compliance with the rules provided in The Hague Service Convention.

Specially appearing Defendant asks that the Court impose monetary sanctions against Plaintiff for filing a frivolous motion in violation of the Court's local rules and the Judge's requirements, and refusing to withdraw the frivolous motion even after Plaintiff was advised of its fatal flaws.

## <u>ARGUMENT</u>

## I.   THIS EX PARTE APPLICATION SHOULD NOT BE CONSIDERED BECAUSE IT VIOLATES THE COURT'S LOCAL RULES AND THE JUDGE'S REQUIREMENTS

The Honorable Birotte's requirements state, "Applications that fail to conform to Local Rule 7-19 and 7-19.1, including a statement of opposing counsel's position, will not be considered.  In addition, to the requirements of Local Rules 7-19 and 7-19.1, the moving party shall serve the opposing party by e-mail, facsimile transmission or personal service and shall notify the opposing party that opposition papers must be filed no later than 24 hours (or one court day) following such service."

Plaintiff's ex parte application is wholly defective and should not be considered as it violates this court's local rules and the Honorable Birotte's requirements.

2

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

First, the application does not include a "statement of opposing counsel's position" assumingly because Plaintiff's counsel failed to comply with Local Rule 7-19.1 and failed to notify opposing counsel of his proposed ex parte application, even though he knew Mr. Richards was representing Defendant pursuant to the Notice of Appearance of Counsel filed on February 23, 2017 by Ronald Richards, which Plaintiff acknowledges.  (Memo, 3:19-23; Doc. 8.)

Local Rule 7-19.1 states, "It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application."  (Central District of California L.R. 7-19.1.)

Defendant's counsel, Ronald Richards, was never orally advised of Plaintiff's anticipated ex parte application, as Mr. Richards neither received a phone call nor voicemail from Plaintiff's counsel.  (Richards Decl. ¶2.)  In his declaration in support of Plaintiff's ex parte application, Mr. Wiener does not confirm that he made a reasonable, good faith effort to advise Mr. Richards of "the date and substance of the proposed ex parte application," even though Mr. Wiener knew that Mr. Richards was Mr. Kazal's counsel.  (Memo, 3:19-23; 4:4.)

The only evidence Mr. Wiener provides of any communication with Mr. Richards is a letter dated May 9, 2017, attached as Exhibit A to his declaration.  However, the letter only "inquired whether Attorney Richards was authorized to accept service on behalf of the Defendants."  (Memo, 4:4-5; Exh. A to Weiner Decl.)  Nowhere in this letter does Mr. Weiner even mention a proposed ex parte application, let alone its substance.  It was only a "Request for Acceptance of Service," as indicated by the heading of the letter.  (Id.)

3

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

Had Mr. Richards been contacted by Mr. Weiner and notified of his intent to file this ex parte application and supporting memorandum, he would have advised Mr. Weiner of the reasons why his request is improper, namely because service must comply with The Hague Convention, as explained below.  (Richards Decl. ¶2.)

Furthermore, Mr. Weiner did not "serve [Mr. Richards] by e-mail, facsimile transmission or personal service and [did not] notify [Mr. Richards] that opposition papers must be filed no later than 24 hours (or one court day) following such service," as required by Judge Birotte.  Mr. Richards was not served at all by Mr. Weiner nor was he notified of when he must file his opposition papers.  (Richards Decl. ¶2.)

The only notice Mr. Richards received of this ex parte application was by an email he received at 7:00 p.m. on May 15, 2017 from the Court's Electronic Filing system. (Id. ¶4.)  Upon receiving this email, Mr. Richards then looked up the Court's Local Rules and the Honorable Birotte's requirements to determine when his opposition papers were to be filed.  (Id. ¶5.)

Again, had Mr. Weiner complied with the Court's Local Rules and the Judge's requirements, Mr. Richards would have informed him that Defendant is a resident of Australia, which he concedes (see, Complaint, ¶3, Doc. 11), Australia is a member of The Hague Convention, and that compliance with The Hague Convention is mandatory. Plaintiff's violation of the court's specific rules and requirements has forced specially appearing defendant to spend unnecessary time and money on opposing this meritless ex parte application.

Plaintiff's failure to comply with this court's and Judge Birotte's specific requirements is fatal.  The Court should not consider the ex parte application because of Plaintiff's blatant disregard of these rules.  The Court should impose sanctions against Plaintiff for its misuse of this ex parte application, as provided for in Judge Birotte's requirements.  Specifically, this Court states, "Sanctions may be imposed for misuse of

4

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

the ex parte applications." Clearly this is a misuse.

Mr. Richards informed Mr. Wiener that his ex parte application violates numerous local rules, as those indicated above, and provided an opportunity for Mr. Weiner to withdraw his application. (Richards Decl. ¶6.) Mr. Weiner refused to withdraw his application. (Id.)

## II. SERVICE NEEDS TO COMPLY WITH THE HAGUE CONVENTION BECAUSE AUSTRALIA, DEFENDANT'S RESIDENCE, IS A SIGNATORY

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed.R.Civ.P. 4." (*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 688 (9th Cir.1988).) Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. The Rule specifically notes, in part, that an individual or corporation may be served at a place not within any judicial district of the United States, "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service of Judicial and Extrajudicial Documents." (Fed. R. Civ. P. 4(f)(1).)

Australia- the resident country of the specially appearing Defendant- is a signatory to The Hague Convention[1], which Plaintiff acknowledges. (Memo. 6:10-13; see also Exh. B.) Accordingly, service abroad on a foreign individual is governed by the terms of The Hague Convention, which supersedes the requirements of Rule 4 and applicable state rules. (*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) [when applicable, Hague Convention preempts inconsistent methods of service under state law by virtue of the Supremacy Clause, U.S. Const., Art VI.]; *but cf.* Fed. R. Civ. P.

---

[1] A full text of the Hague Convention, along with information with respect to the identities of the member states, and the status of each member's positions may be found at https://www.hcch.net/en/instruments/specialised-sections/service.

5

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

4(f)(1) (service pursuant to international agreement such as Hague Convention is valid service under Fed. R. Civ. P. 4).

Pursuant to The Hague Convention, each signatory state must designate a "Central Authority," whose purpose is to accept requests for service from other signatory states.[2] (See Exh. C, Australia Central Authority Details.)

Documents to be served in a foreign country must be attached to a formal request form—model forms are annexed to Hague Convention—and be sent, in duplicate, to the central authority of the country where service is sought.[6] (Exh. D, exemplar.)

If the documents are completed properly, the central authority will, in turn, serve the documents on the named defendant pursuant to its own internal laws or by a method requested by the plaintiff, provided that the latter does not contradict the laws and rules of the recipient state.[7]

After service is complete, the central authority must prepare an official certificate form—the form annexed to Hague Convention—indicating the method, time, and place of service and to whom the documents were delivered.[8]  If service is not complete, the certificate must explain the failure to complete service.[9]  The central authority's filed

---

[2] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 2, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163; *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–699, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) [describing service and function of Central Authority].

[6] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 3, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163.

[7] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 4 and 5, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163.

[8] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 6, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163; *see Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300–302 (2d Cir. 2005) (failure of central authority to file formal certificate did not undermine service under Hague Convention when filed police report contained all required elements).

[9] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 6, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163.

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

certificate conclusively establishes that service was made in accordance with the foreign country's law.[10]

The central authority of a signatory country is not a designated agent for service of process under The Hague Convention. Therefore, service is not effective merely on delivery to the central authority; instead, service is complete only on receipt by the foreign defendant.[11]

## A.    Compliance With The Hague Convention Is Mandatory and Applies Here

The Hague Convention provisions are mandatory, so that failure to comply voids the attempted service. (See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, supra, 486 US at 698, 108 S.Ct. at 2108 [compliance with the Convention is mandatory in all cases to which it applies.]; *see also DFSB Kollective Co., Ltd. v. Tran, et. al.* (N.D. Cal. Dec. 21, 2011, No. 11-CV-01049-LHK) 2011 WL 6730678 at *6 [noting that service of process in Australia must comply with the Hague Service Convention and holding that personal service by a licensed Australia process server was proper.].)

The Convention does not apply "where the address of the person to be served with the document is *not known*," (Hague Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361 (emphasis added).) While the "case law on this issue of whether or not an address is 'known' under Article One of the [Hague] Convention is not extensive," (*Indagro, S.A. v. Nilva*, No. 2:07–cv–3742–MCA–LDW, 2014 WL 1515587, at *4 (D.N.J. Apr. 17, 2014)), "courts have repeatedly looked to the efforts plaintiffs have put forth in

---

[10]  *E.g.,* Unite Nat'l Ret. Fund v. Ariela, Inc., 643 F. Supp. 2d 328, 334–336 (S.D.N.Y. 2008) (certificate of central authority of Mexico precluded defendant from arguing that service did not comport with Mexican law).

[11]  *Paracelsus Healthcare Corp. v. Philips Med. Sys.,* 384 F.3d 492, 495–497 (8th Cir. 2004) (when applicable state law in diversity action requires service within limitations period, delivery of documents to central authority for ***service*** on ***foreign*** defendant under Hague Convention does not toll limitations).

7

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

attempting to discover said addresses." (*Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (citing cases).)  Particularly, before a plaintiff "can circumvent the methods for service of process authorized by the Hague Convention," the plaintiff must "put forth *reasonable diligence* in attempting to discover [the] defendant's address."  (*Id.* at 395 (emphasis added); *see also Indagro*, 2014 WL 1515587 at *4–5 (requiring reasonable diligence); *see Backjoy Orthotics, LLC v. Forvic International Inc., et al.* 2016 WL 7664290 at *5 ["The Hague Convention's use of the word "address" does not refer only to a static, physical address; rather, it refers broadly to the location of the defendant. *See Indagro*, 2014 WL 1515587 at *4–5 (noting that an "address" follows the defendant; thus, service at a temporary address is proper)."].)

Plaintiff cites to *Williams-Sonoma Inc. v. Friendfinder, Inc.* (N.D. Cal. Apr. 17, 2007, No. C 06-06572 JSW) 2007 U.S.Dist.LEXIS 31299 for the proposition that "The Hague Convention does not prohibit service by email."  (Memo. 6:13-15.)  However, that case is distinguishable.

In *Williams-Sonomoa, supra,* the court concluded the circumstances warrant alternative service because Plaintiff "presented evidence that physical addresses for a number of the named defendants cannot be located or that defendants have refused to accept service."  (*Id.* at *4-*5.)  However, that is not the case here.

The Declaration of Frank Hoare regarding attempted service on Defendants Charif Kazal and Tony Kazal shows that the defendants' address was known, but reasonable diligence was not put forth in attempting to serve defendants.  The process server attempted to serve Defendant Tony Kazal at his residence on a couple days.  It was confirmed that Tony lived at the location.  (Hoare Decl. ¶4.) The process server was advised that Charif Kazal has multiple offices.  (Hoare Decl. ¶19.)  At no time did the process server encounter either Tony or Charif so that they could evade service.  The fact

8

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

that they were not at their addresses at the exact times the process server visited does not mean they evaded service.

Plaintiff knows the defendants' addresses, but has failed to make a reasonably diligent attempt at serving them.[3]  Defendants cannot be deprived of their due process rights and compliance with The Hague Convention is mandatory.  Imagine if in Los Angeles, a process server couldn't locate a defendant than applied ex parte to this Court for email service.  Email service is not a substitute for internationally agreed upon service methods.  There is a completely insufficient showing on an ex parte basis that this drastic and unauthorized method should be allowed at this stage.

## III.   AUSTRALIA DOES NOT ALLOW EMAIL SERVICE

Article 10(a) goes on to indicate that "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad."  (Id. art. 10(a).)  To determine whether a signatory country, Australia, opposes service of process under

_____

[3] (*Compare RPost Holdings, Inc. v. Kagan*, No. 2:11–cv–238–JRG, 2012 WL 194388, at *1, *2 (E.D. Tex. Jan. 23, 2012) (granting substituted service on defendant only after plaintiff had attempted service through the Hague Convention on the address associated with defendant's online business website and had requested defendant's address from defendant's attorney and been refused), *and Chanel, Inc. v. Song Xu*, No. 2:09-14345, 2010 WL 396357, at *1, *3 (E.D. Mich. June 24, 2010) (rationalizing that, because plaintiff hired a private investigator in China who determined that the physical addresses provided by defendants did not identify street names, numerical street addresses or building numbers and that the addresses interchanged postal codes and sections for various cities, and who also conducted further searches of public databases and directories in China, unable to locate defendants, their addresses were unknown) *with Progressive Southeastern Ins. Co. v. J & P Transp.*, No. 1:11–cv–137, 2011 WL 2672565, at *2 (N.D. Ind. July 8, 2011) (determining that, even though plaintiff initially used a private investigator to locate defendants, plaintiff's failure to ask the private investigator to perform any follow-up work after the initial attempted service through the Canadian Central Authority failed did not amount to reasonable diligence), *and Opella v. Rullan* No. 10-21134-CIV, 2011 WL 2600707, at *3, *6 (S.D. Flz. June 29, 2011) (holding that, because plaintiff did not personally check the voter registration records of Mexico, the drivers' license registration records or the utility company records in an effort to locate defendant, plaintiff's efforts to search for defendant in only certain municipalities of Mexico did not constitute reasonable diligence, and thus defendant's address was not unknown), *and Jimena v. UBS AG Bank*, No. CV–F–07–367 OWW/SKO, 2010 WL 2465333, at *9, *10 (E.D. Cal. June 10, 2010) (refusing to authorize substituted service because plaintiff provided no information regarding his efforts to ascertain defendant's address in Switzerland, had failed to conduct an appropriate investigation regarding defendant's address, and had not attempted to effect service through the Hague Convention)

9

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

Article 10 it is necessary to check the declarations and reservations that country made when it adopted the Convention.

The declaration/reservations Australia made in reference to Article 10, paragraph a, states, "Australia does not object to service by postal channels, where it is permitted in the jurisdiction in which the process is to be served.  Documents forwarded via postal channels must be sent via registered mail to enable acknowledgment of receipt."  (See Exh. E; *see e.g., Shoham v. Isalmic Republic of Iran* (D.D.C. 2013) 922 F.Supp.2d 44, 50 [the court denied Plaintiff's request to effect substitute service via international mail on Iran Air in Sydney Australia because Plaintiff failed to provide any information indicating that this jurisdiction in Australia permits service by mail, pursuant to Australia Declarations, HCCH, Status Table.].)

Here, the relevant jurisdiction is New South Wales.

Pursuant to New South Wales Consolidated Regulations, Uniform Civil Procedure Rule 2005- Regulation 10.20 (2)(a), "***any originating process***, and any order for examination or garnishee order, in proceedings in the Supreme Court, the Industrial Relations Commission (including the Commission when constituted as the Industrial Court), the Land and Environment Court, the ***District Court*** or the Dust Diseases Tribunal must be personally served…"  (Exh. F, New South Wales Consolidated Regulations, emphasis added.)

Therefore, the jurisdiction in which process is to be served does not permit for service of the initial documents to be served through "postal channels."  Personal service is mandatory.  The procedures to assure foreign documents are properly delivered need to be adhered to.  We accept Australia to follow the same American rules here.

10

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

**IV.    A SPECIAL APPEARANCE FOR THE SOLE PURPOSE OF OPPOSING THIS EX PARTE IMPROPERLY SEEKING EMAIL SERVICE ON JURISDICTIONAL GROUNDS DOES NOT CONSTITUTE A GENERAL APPEARANCE**

"Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service."  (*Grand Entmt' Group, Ltd. V. Star Media Sales, Inc.* (3d Cir. 1993) 988 F.2d 476, 492.)  Even if defendant has notice of a lawsuit against it, such notice neither validates an otherwise defective service nor waives the defendant's right to object to that service.  (*Id.*; see also *West v. Terry Bicycles, Inc.* 5th Cir. 2000) 230 F.3d 1382, at *2.)

An appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance and does not constitute a waiver of the right to make a motion under California Code of Civil Procedure Section 418.10 and his not a general appearance. This is specifically held to be the case and codified in C.C.P. 418.11.

Furthermore, a personal jurisdiction defense is not waived when a party makes a special appearance solely to contest personal jurisdiction's existence.  (*Gerber v. Riordan* (6th Cir. 2011) 649 F.3d 514, 520 *compare Peterson v. Highland Music* (9th Cir. 1998) 140 F.3d 1313, 1318, fn. 3 [Defendants failure to raise the defense of lack of jurisdiction at any point in the vigorously litigated proceeding should be construed as an acquiescence to suit in California and a waiver of any right to contest the court's in personam jurisdiction on appeal, but the court recognized that the same conclusion would not apply when a defendant specially appears for the sole purpose of contesting jurisdiction in a separate hearing and otherwise refuses to participate in the litigation.]; *see also Sinatra v. National Enquirer* (9th Cir. 1988) 854 F.2d 1191, 1192-94.)

11

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**

Specially appearing Defendant is only filing this opposition and to provide due process on a request that violates Defendant's rights under the Hague Convention.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's ex parte application should not be considered, or alternatively, denied.

Pursuant to the Honorable Birotte's requirements, the court should impose monetary sanctions against Plaintiff and its attorney for violating the local rules and mandatory service requirements as putting counsel through this unnecessary fire drill was highly improper.

Dated:  May 16, 2017

LAW OFFICES OF
RONALD RICHARDS & ASSOCIATES, APC


By:    /s/ Ronald Richards
_____
RONALD N. RICHARDS
Attorneys for Specially Appearing Defendant,
Charif Kazal

12

**OPPOSITION TO EX PARTE APPLICATION FOR ORDER AUTHORIZING EMAIL SERVICE**