1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5    THUNDER STUDIOS, INC.; RODRIC      )
     DAVID,                            )
6                                      )
                  PLAINTIFFS,          )
7                                      )
              vs.                      ) No. CV 17-0871-AB
8                                      )
     CHARIF KAZAL; TONY KAZAL;         )
9    ADAM KAZAL; AND DOES 1 TO 100,    )
     INCLUSIVE,                        )
10                                     )
                  DEFENDANTS.          )
11   _____)

12

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                 TUESDAY, DECEMBER 4, 2018

16                      9:20 A.M.

17               LOS ANGELES, CALIFORNIA

18          Day 1 of Jury Trial, A.M. Session

19

20

21

22   _____

23         **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
           FEDERAL OFFICIAL COURT REPORTER
24         350 WEST FIRST STREET, ROOM 4311
           LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFFS:

 3          LAW OFFICES OF SETH W. WIENER
            BY:  SETH W. WIENER, ATTORNEY AT LAW
 4          609 KARINA COURT
            SAN RAMON, CALIFORNIA 94582
 5          (925) 487-5607

 6              -and-

 7          SYVERSON, LESOWITZ & GEBELIN
            BY:  STEVEN GEBELIN, ATTORNEY AT LAW
 8          8383 WILSHIRE BOULEVARD, SUITE 520
            BEVERLY HILLS, CALIFORNIA 90211
 9          (310) 341-3072

10
     FOR THE DEFENDANTS:
11
            THE TAYLOR LAW FIRM
12          BY:  BENJAMIN TAYLOR, ATTORNEY AT LAW
            AND DIANE BANI-ESRAILI, ATTORNEY AT LAW
13          1880 CENTURY PARK EAST, SUITE 714
            LOS ANGELES, CALIFORNIA 90067
14          (310) 201-7600

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 4, 2018

 2                           9:20 A.M.

 3                            - - -

 4              THE CLERK:  Calling CV 17-0871-AB, Thunder

 5    Studios, Inc., versus Charif Kazal, et al., jury trial,

 6    Day 1.

 7              Counsel, please step forward and state your

 8    appearances.

 9              MR. WIENER:  Good morning, Your Honor.

10    Seth Wiener for plaintiffs, Rodric David, and Thunder

11    Studios, Inc.

12              THE COURT:  All right.  Good morning.

13              MR. GEBELIN:  Good morning, Your Honor.

14    Steven Gebelin, also on behalf of plaintiffs.

15              THE COURT:  All right.  Good morning.

16              MR. TAYLOR:  Good morning, Your Honor.

17    Benjamin Taylor on behalf of defendants Charif Kazal,

18    Adam Kazal and Tony Kazal; and Mr. Charif Kazal is present

19    in court.

20              THE COURT:  Good morning.

21              MS. BANI-ESRAILI:  Good morning, Your Honor.

22    Diane Bani-Esraili for the defendants.

23              THE COURT:  All right.  Good morning.

24              So we're here all ready for -- I assume all the

25    parties are here ready for trial.  So couple things I want
```

1    to just talk with you about briefly before we bring the jury

2    up.  Let me just get my notes here.

3            First off, I thought the last time we were here I

4    asked the parties to try to work, meet and confer with

5    respect to the special verdict form.  I have not seen

6    anything filed in the docket.  Wondering if the parties have

7    met, discussed this at all.

8            So who would like to be heard, Mr. Wiener or --

9    what discussions, if any, have happened -- or Mr. Taylor?

10           MR. TAYLOR:  Sure, Your Honor.  Should I speak

11   from the lectern?

12           THE COURT:  Why don't you do so just so the

13   court reporter can hear us.

14           MR. TAYLOR:  Absolutely.

15           Well, when we were here last month, there was some

16   discussion about the verdict form.  In the ensuing weeks, we

17   had an opportunity to discuss it and reflect further.  I

18   think the initial concern was with respect to -- at least

19   Your Honor's concern was with respect to the way that the

20   copyright portion of the verdict form was laid out; and then

21   we had some disagreement about the way the damages were laid

22   out in the stalking part of the verdict form, if memory

23   serves.  We did file that jointly, but there was some

24   reservation about that part.

25           In the ensuing weeks, on further reflection from

1    our side, we added a few proposed interrogatories to the

2    stalking claim, and we weren't able to reach any agreement,

3    which is why I think we didn't submit a further joint

4    proposed verdict form because we don't have -- we don't

5    agreement on those issues.

6          THE COURT:  Okay.  So then how do you propose we

7    proceed, then, because all I have is what the joint verdict

8    form was, which I think could be wrong, but it seems very

9    confusing, and I worry that the jurors are going to have a

10   tough time with this.

11         Is this what you all have -- is the joint verdict

12   form the last item in which both sides have agreed?

13         MR. TAYLOR:  I'm not sure I understand the

14   question.  The form we filed before the final pretrial

15   status conference was not fully agreed upon.  There was a

16   section that I believe we bracketed because we weren't in

17   agreement and Your Honor said, well, you've got to iron out

18   a final form and resubmit it, and we weren't able to do

19   that.  I think that's where we're at.

20         THE COURT:  I'm sorry.  I misunderstood.  So

21   you're saying Questions 9 through 14 were the areas where

22   neither -- where the parties were not in agreement.  But I

23   guess Questions 1 and 2, with respect to the photographs,

24   the parties were in agreement?

25         MR. TAYLOR:  Well, Mr. Wiener can correct me if I

```
1    am wrong, but I believe the copyright portion of the verdict
2    form ended up remaining unchanged.  And counsel showed me
3    where he got it from because I think Your Honor expressed
4    that you hadn't seen it done quite that way --
5            THE COURT:  Right.  And you got it from the case
6    -- if my memory serves me -- the Quinn Emanuel case.  I
7    can't remember the case, Barnes --
8            MR. TAYLOR:  No, Bratz.
9            THE COURT:  Bratz.
10           MR. TAYLOR:  Right.  And we were okay with that,
11   but while we were revisiting the verdict form, I realized it
12   would be probably good to have some interrogatories because
13   the stalking claim includes really a lot of different
14   components.
15           THE COURT:  Right.
16           MR. TAYLOR:  And so I wanted to try to see if we
17   could include some interrogatories there because it was --
18   as it was, it was very general, and then there was
19   disagreement about the inclusion of punitive damages, I
20   believe.
21           Anyway -- so I'm not sure how Your Honor would
22   proceed under these circumstances.  I think we could
23   probably reach an agreement, but we haven't been able to do
24   that yet.
25           THE COURT:  All right.  So what I will do is
```

```
 1    probably this evening or -- that's the other thing.  I will
 2    discuss the matter with you all either this evening or on
 3    Thursday, which leads me to the next issue.
 4            I don't know if you all are aware, the president
 5    has declared a national day of mourning tomorrow.  I checked
 6    with our chief judge.  The courtroom is closed.  So I
 7    couldn't even -- if I wanted to have the trial tomorrow, I
 8    could not do so because no staff will be here.
 9            So we're going to be dark tomorrow.  So that's the
10    other thing I wanted to discuss with you.  Just to the
11    extent you didn't know, we'll be dark tomorrow.  So to the
12    extent you have any witness issues, let them know they
13    aren't going to be here tomorrow.
14            The hope is this morning we will get our jury
15    picked hopefully by noon, if not before noon, and then begin
16    with testimony, go till about 4:30 or 5:00 P.M. this
17    afternoon and then resume on Thursday at 9:00 A.M.
18            The other thing I wanted to talk with you all
19    about is with respect to the exhibits.  I noticed you filed
20    something indicating that the parties have agreed -- I'm
21    sorry.  My computer is going a little slow here.  I thought
22    you filed something to the effect that the parties have
23    agreed to the admissibility of all the exhibits.
24            Is that correct, Mr. Taylor?
25            MR. TAYLOR:  We filed a stipulation, yeah.
```

```
 1              THE COURT:  All right.  So then just so I
 2   understand, how will that play out at trial?  Are you going
 3   to have a witness talk about an exhibit, lay a foundation,
 4   and just move it into evidence?  Or are you just going to
 5   move all the exhibits into evidence and -- I am trying to
 6   understand, sort of, how you all envision that working.
 7              MR. TAYLOR:  Well, I think the stipulation was to
 8   avoid having to spend a lot of time authenticating every
 9   document, but in terms of the reservation of right to object
10   to the contents or to the witness's --
11              THE COURT:  The foundation --
12              MR. TAYLOR:  -- the foundation, I think it's
13   without prejudice to our rights to object to it.
14              THE COURT:  Okay.
15              MR. TAYLOR:  But I actually am glad Your Honor
16   raised that because I don't think we were a hundred percent
17   clear on how the Court would like us to handle these
18   exhibits.
19              The idea was to just to try to maybe save a little
20   bit of time because I know Your Honor imposed very clear
21   time limitations, and I don't think, given the number of
22   witnesses and issues we have to talk about, that we want to
23   consume a lot of time with authenticating all the exhibits.
24              THE COURT:  Well, I guess it's difficult for me to
25   answer your question specifically because I wasn't sure what
```

```
 1   you all meant.  I just saw the stipulation that says -- hold
 2   on.  I'm just trying to find it here.
 3           MR. GEBELIN:  Document 168, Your Honor.
 4           THE COURT:  So 168.  So it says -- the stipulation
 5   re admissibility, it says, "We stipulate to the authenticity
 6   and admissibility of all the exhibits listed in the exhibit
 7   in the second amended exhibit list."
 8           So when I read it, I was like, okay.  Does this
 9   mean -- that's why I am asking you the question.  Does this
10   mean it all comes in?  Does this mean -- I have not had a
11   trial -- I mean, I have only been here four years, but I
12   haven't had a trial where the parties have agreed out the
13   gate as to what has been stated in this stipulation, the
14   authenticity and admissibility of all the exhibits.
15           Is it your contention that you would still go
16   through the trial, have a witness take a look at it, have
17   them lay the foundation, and then say, I seek to have this
18   exhibit introduced, and there would be no objection to it,
19   or are both sides reserving the right to object to these
20   exhibits?
21           Maybe this will be a simpler question:  What was
22   the purpose of this stipulation?
23           MR. TAYLOR:  Well, I think -- I can only speak for
24   myself, Your Honor.  But I think in reviewing the Court's
25   pretrial order, the Court certainly encourages, as I
```

```
 1   understood it, the parties to stipulate to as much in

 2   advance as possible, including with respect to the

 3   authenticity and admissibility of exhibits.

 4          But it certainly -- I don't think it was our

 5   intention, at least speaking for our side, that every

 6   exhibit necessarily comes in without -- and its contents

 7   without some nexus to some foundational support for it or

 8   some testimony about its --

 9          THE COURT:  So from your perspective, you have a

10   witness testify, you lay the foundation, introduce the

11   exhibit, show the witness the exhibit, and then ask that it

12   be admitted?

13          Is that a fair statement?

14          MR. TAYLOR:  I think that's fair.

15          THE COURT:  Okay.  Let me ask from the plaintiffs'

16   side.  What is your position?

17          And you need to rise, Counsel.  We are in federal

18   court.

19          MR. WIENER:  I apologize, Your Honor.

20          THE COURT:  Just so you all know, the lectern does

21   go up and down.  We have a lot of advanced technology in

22   this courtroom.

23          MR. WIENER:  Thank you, Your Honor.

24          It's our position that the stipulation is intended

25   to avoid any objections as to admissibility and
```

1   authenticity.  Any exhibit should still be -- their content

2   does need to be introduced through a witness.  But it was

3   the plaintiffs' intent to avoid disputing the authenticity

4   of, for example, newspaper articles, orders from the federal

5   court of Australia and to streamline the trial in that

6   manner.

7           THE COURT:  Okay.  So then, Mr. Taylor, what's

8   your -- after hearing that -- I am just using his example.

9           He was talking about orders from the federal court

10  of Australia.  I don't know what witness is going to testify

11  to that, but are you reserving your right to object if a

12  witness who may not necessarily know the contents of the

13  order testifies about the order?

14          MR. TAYLOR:  Right.  We are, Your Honor, because,

15  again, even if we would stipulate to the authenticity of a

16  photocopy of a Court order, that doesn't mean there is any

17  witness who can testify to that being the order, that being

18  what it said, having its import come into the record.

19          There still has to be a witness who can testify to

20  what the document means.  Otherwise, it just comes in and

21  then -- I'm sorry -- how does it get in front of the jury?

22          THE COURT:  Well, again, I think that's

23  inconsistent, though, with a stipulation to the authenticity

24  and the admissibility of all the exhibits in the second

25  amended joint witness list.

```
 1              I mean, at least that's why I raise the question
 2   because, when I read that, that suggests to me that -- using
 3   this Court order because I think I raised this issue at the
 4   pretrial hearing.  I'm like, look.  How are we going to deal
 5   with these foreign documents?  Maybe this was in response.
 6   But that suggests to me, then -- that means any witness
 7   arguably could say, yeah, I read this.  This is a federal
 8   Court order from Australia, and it says X, Y, and Z.
 9              So I don't know how you all are going to deal with
10   this, but at least, when I read this stipulation, it
11   suggests that the authenticity and admissibility of all the
12   exhibits the parties have agreed will come in.
13              And so one of the reasons why I raise the question
14   is I want to confirm that and, B, wanted to find out are the
15   parties intending to try to admit exhibits without any
16   testimony regarding that exhibit?  Which is something that I
17   have a lot of heartburn about, but I wanted to talk with you
18   all about before the jury gets here in that regard.
19              So as it relates to the first point, I think you
20   all probably need to talk to make sure whether or not there
21   is a meeting of the minds as to this because, as I read the
22   stipulation, Joe Blow witness can get up here and say -- be
23   shown this Court order from Australia and say, I see it.
24   It's a Court order from Australia.  He may not have been in
25   Australia at the time, but he may know about it for whatever
```

 1   reason, and then it comes in.  At least that's how I read

 2   the stipulation.  So that's one issue.

 3          The second issue is do the parties intend to

 4   introduce any exhibits that will not be discussed by a

 5   witness in this trial?

 6          And what's your response to that question,

 7   Mr. Taylor?

 8          MR. TAYLOR:  With respect to the latter question,

 9   Your Honor, I can only speak for ourselves, that that's not

10   our intention.

11          THE COURT:  Okay.

12          MR. TAYLOR:  Because I don't know how you do that.

13   I don't think we can just hand a book of exhibits to the

14   jury and say, here are the exhibits.  Figure them out.

15          THE COURT:  I agree.

16          MR. TAYLOR:  That wasn't my intention.

17          THE COURT:  Okay.  Mr. Wiener, is that also your

18   intention?

19          MR. WIENER:  I'm in agreement with Mr. Taylor as

20   to the latter question, Your Honor.

21          THE COURT:  All right.  So there is an agreement

22   as it relates to the latter portion, which is good news to

23   the Court.

24          So as to the former question, I think you all are

25   going to need to meet and confer because -- well, let me

1    just tell you this:  As I read the stipulation, the exhibits

2    are coming in.  If there is some change in that, then you

3    all need to let me know.  But as I read the stipulation, the

4    exhibits are supposed to be -- are coming in because you

5    agreed to the authenticity and admissibility of the

6    exhibits.  So I'll leave that to you all to figure out how

7    you wish to proceed before this jury comes in.

8              I guess the last area I wanted to talk with you

9    about is with respect to jury selection.  I don't know if we

10   talked about this before the trial, but I seat -- I do all

11   the voir dire.

12             I have not received any proposed questions from

13   either side.  I seat 16 jurors.  We go through the entire

14   voir dire and the questions that I ask the jurors of all 16.

15   I will ask the parties to approach at sidebar to discuss any

16   challenges for cause.  You can use challenges for cause on

17   the entire panel of 16.  We'll discuss and debate those.

18             Afterwards, after we're done with the challenges

19   for cause -- well, if there are jurors that are removed for

20   cause, I will then reseat -- I will shuffle the deck, so to

21   speak, so that the -- if the challenges for cause out of the

22   first eight jurors, then Jurors 9 through 16 will fill in

23   the seats of the first eight, and then we will refill the

24   Seats 9 through 16.  We'll go through it again, and then

25   once we're done with challenges for cause, then you can

```
 1    exercise your peremptories as to the first eight.  You each
 2    have three peremptories -- okay? -- as to the first eight.
 3             As you exercise your peremptory for the first
 4    eight, then the remaining, 9 through 16, will fill those
 5    seats.  So you always know who your jurors are.
 6             Once you have exercised your peremptories, we will
 7    go with the first eight jurors, and they will be our jurors
 8    for the trial.
 9             Does that make sense to either side?
10             Mr. Taylor?
11             MR. TAYLOR:  It makes sense to me.  Just one
12    question to clarify, Your Honor.  You've got 1 through 8 and
13    9 through 16.  As challenges are exercised with respect to
14    anyone sitting in the first eight seats, are they filled in
15    order starting from -- starting with Number 9 and then
16    everyone moves over one --
17             THE COURT:  Correct.
18             MR. TAYLOR:  -- so you know who is coming in
19    next from --
20             THE COURT:  Exactly.  So the point of it all is
21    that you'll know -- 1 through 8 is in the top row.  1 is
22    closest to me.  8 to the end, 9 through 16.  If you
23    challenge Number 6, then, Number 9 will go into 6's seat and
24    we will continue on until you are done with the
25    peremptories.
```

```
 1              MR. TAYLOR:  Thank you for clarifying.
 2              THE COURT:  Do you have any questions, Mr. Wiener?
 3              MR. WIENER:  No, Your Honor.
 4              THE COURT:  Okay.  Is there anything else that we
 5    need to discuss before we bring the jury up?
 6              Mr. Taylor.
 7              MR. TAYLOR:  Yes, Your Honor, just one thing with
 8    respect to the scheduling issue that the Court mentioned.
 9              We got a notice late last evening about
10    tomorrow's, sort of, impromptu federal holiday.  With
11    respect to witnesses, I'm not terribly concerned, but I
12    personally have a scheduling issue with respect to Friday
13    afternoon, and I didn't mention this at the final
14    pretrial --
15              THE COURT:  Let me stop you there because we don't
16    have court on Friday.  I have my civil calendar and criminal
17    calendar on Friday.  So that should not be an issue.
18              MR. TAYLOR:  Your Honor, I bring it up just
19    because -- and I am glad to hear that -- because, at the
20    final pretrial Your Honor said that, if we've gone Tuesday
21    through Thursday, then if I need to squeeze it in Friday
22    morning or clear my calendar for Friday, I will.  So I just
23    bring it up because I have an issue Friday afternoon but --
24              THE COURT:  Friday afternoon.
25              MR. TAYLOR:  Not a problem then.
```

```
 1            THE COURT:  Let me ask you this question.  The one
 2   caveat to the not being in court on Friday -- and I don't
 3   know what the pace of the trial will be -- if for some
 4   reason the jury begins deliberating Thursday afternoon, I
 5   would ask them to come back Friday morning to begin
 6   deliberations.
 7            Is that going to cause a challenge for you?
 8            MR. TAYLOR:  Only inasmuch as I can't be here
 9   after 3:00 o'clock on Friday.
10            THE COURT:  Okay.  So if they deliberate and we
11   excuse them at 3:00 on Friday, would that -- or 2:00 o'clock
12   on Friday --
13            MR. TAYLOR:  That's fine.  I think it's unlikely
14   because I don't see us getting through everything by
15   Thursday, but that would be fine.  Yeah, that's fine.
16            THE COURT:  And so just so we're clear again.
17   Today we'll have trial; we're dark tomorrow; Thursday we'll
18   have trial; I have my calendar on Friday; Monday we resume
19   trial -- okay? -- and then continue on until we're done.
20   All right?
21            Does that cause any scheduling challenges for
22   either side?
23            MR. GEBELIN:  That's fine, Your Honor.
24            MR. TAYLOR:  The only issue I would raise with
25   respect to that, Your Honor -- and I'm sorry -- is that my
```

1    client's flown in here to be here from Australia, and I have

2    to talk to him.

3            Obviously, we're just discussing scheduling now,

4    but I don't know the extent to which he can stay into next

5    week.  I can talk to him, and we can try to make that

6    happen.  But since we're the defense, I expect he would be

7    called only in our case or primarily in our case, and I

8    don't know when that's going to happen because I don't know

9    how long it's going to take to get there.  So I would just

10   raise that as an issue that I need to speak to my client

11   about.

12           THE COURT:  Right.  And I would encourage you to

13   do so.  But just so we're clear, we're not continuing this

14   trial because your client can't be here.  So if we need to

15   call him out of order on Thursday, then that's what we're

16   going to have to do.

17           MR. TAYLOR:  That's what I am getting at, just to

18   find out how much flexibility we have, but I will talk to

19   him about the scheduling issue.

20           THE COURT:  If we need to call him out of order,

21   we'll do that, but I need to proceed.  I've got another

22   criminal trial set for next Tuesday that I need to begin.

23           MR. TAYLOR:  Understood.

24           THE COURT:  All right.

25           And you all know what the time limits are.  I have

```
1   my chess clock -- will be ready to go once you begin.
2   Again, just as a reminder, apart from the -- I think I gave
3   each side eight hours.  Whenever you are up at the lectern,
4   the clock is running against you and vice versa and so --
5   and I will let you know at the end of each day how much time
6   each side has.  All right?
7            MR. WIENER:  Sure, Your Honor.  I believe the
8   Court had allotted seven hours for each side.  And then one
9   point I want to clarify is both sides are reading deposition
10  transcripts.  I would propose that we split that time
11  equally if that's possible.
12           THE COURT:  That's fine.  That's fine.
13           Do you have any objection to that, Mr. Taylor?
14           MR. TAYLOR:  That's fine.
15           THE COURT:  All right.  Okay.  Is there anything
16  further we need to discuss before we bring the jury out?
17           MR. TAYLOR:  I don't think so, Your Honor.
18           MR. WIENER:  No, Your Honor.
19           THE COURT:  Okay.  So then the courtroom clerk is
20  going to check downstairs to make sure the jurors are ready.
21  Once they're ready, we'll bring them up and we'll begin with
22  the voir dire.  I will print out in the meantime just copies
23  of the general questions, and I have come up with some
24  specific questions to ask the jurors with respect to this
25  case.
```

```
 1              One that just comes to mind is whether or not any
 2    of the jurors have heard of the Websites at issue in this
 3    case, things of that nature.  I also do allow -- after I've
 4    asked questions, I'll bring the parties to the side to see
 5    if there are any questions that either side wishes the Court
 6    to ask the jurors.  All right?
 7              MR. TAYLOR:  Very well.  Thank you, Your Honor.
 8              THE COURT:  All right.  Thank you all.
 9              THE CLERK:  All rise.  This court is in recess.
10         (Recess taken 9:40 A.M. to 9:52 A.M.)
11              THE COURT:  All right.  There are a couple of
12    other matters that you all raised that we need to discuss.
13    I believe there are some concerns about the opening jury
14    instructions.  One that pop -- that I was made aware of was
15    the plaintiffs -- in opening Jury Instruction Number 4,
16    plaintiffs Thunder Studios and Rodric David claim ownership
17    of copyrights and seek damages.
18              I understand there is an issue with respect to
19    that instruction; is that correct?
20              MR. WIENER:  Yes, Your Honor.  There is no
21    issues -- I apologize.  I will get this correct by the --
22    sooner rather than later.
23              I believe the parties are in agreement.  It's only
24    Thunder Studios that's asserting the copyright infringement
25    claim and other claims as to multiple work; so it's just a
```

```
 1    matter of deleting Rodric David from that claim and having

 2    it reflect that there's multiple copyright images at issue.

 3            THE COURT:  Okay.  So, then, if that's the case,

 4    the joint statement of the case, Docket 157, says,

 5    "plaintiffs" -- in plural -- "contend that defendants

 6    infringed on their copyright."  That's why I changed the

 7    instruction because the joint statement of the case says

 8    "plaintiffs," plural, but it's really only supposed to be

 9    "Plaintiff Thunder Studios"; correct?

10            MR. WIENER:  Correct, Your Honor, and I

11    apologize --

12            THE COURT:  So then I'm going to -- because I give

13    the statement of the case to the jurors during voir dire.

14    And if that's incorrect, we need to make that change.  So

15    let me make sure I understand.

16            So it's, "Plaintiff Thunder Studios contends that

17    defendants infringed on their copyright"?

18            MR. WIENER:  "Infringed on its copyrights,"

19    correct, Your Honor.

20            THE COURT:  Let me make this change here.

21            And then is it Plaintiff Rodric David who alleges

22    that the defendants are liable for stalking -- or is it both

23    plaintiffs?

24            MR. WIENER:  It's only Mr. David, Your Honor.

25            THE COURT:  All right.  So the statement of the
```

1    case has something different.  The statement of the case

2    says, "Further plaintiffs" -- plural -- "allege that

3    defendants are liable for stalking by organizing protests."

4    That's incorrect?

5            MR. WIENER:  That's incorrect.

6            THE COURT:  All right.  So it should be changed to

7    say, "Further, Plaintiff Rodric David alleges that

8    defendants are liable for stalking by organizing protests,"

9    et cetera, et cetera.

10           MR. WIENER:  Correct, Your Honor.

11           THE COURT:  Okay.  So I am going to change the

12   statement of the case.  We now need to change the jury

13   instructions to reflect that as well.  And then were there

14   any other changes, comments with respect to the jury

15   instructions?

16           MR. WIENER:  Not that I am aware of, Your Honor.

17           THE COURT:  Mr. Taylor, did you have a chance to

18   look at the jury instructions?

19           MR. TAYLOR:  Yes, I did, Your Honor.  I don't

20   think we have any further changes other than --

21           THE COURT:  Other than -- so just -- I'm sorry to

22   interrupt.  So I am clear, Thunder Studios is making claims

23   against all defendants for copyright?

24           MR. TAYLOR:  Right.

25           MR. WIENER:  Right.

```
 1            THE COURT:  Rodric David is making claims against
 2   all the defendants for stalking?
 3            MR. WIENER:  Correct.
 4            THE COURT:  Okay.  All right.  Let's see if we can
 5   get all this down.
 6            Okay.  Were there any -- no other changes,
 7   comments at all with respect to the preliminary
 8   instructions?
 9            MR. WIENER:  No, Your Honor.
10            THE COURT:  Mr. Taylor?
11            MR. TAYLOR:  Not to my knowledge, Your Honor.
12            THE COURT:  Okay.  We're editing the jury
13   instructions.  If you wouldn't mind, take a few moments to
14   look at -- I believe -- my courtroom deputy, if she has it,
15   she has already given you a copy of the PowerPoint that I
16   give to the jurors that lay out some of the questions.
17            Mr. Wiener, I think you have that --
18            MR. WIENER:  Yeah, I do.
19            THE COURT:  Take a few moments to look at it now.
20   I think they are relatively harmless -- or I shouldn't say
21   not harmless -- but they get to the issues at hand here.
22            I tried to be specific as to whether or not, you
23   know, people had any experience in copyright, intellectual
24   property, patent law, anyone ever being accused of
25   infringement, any people that have a connection to the
```

1    entertainment industry, registering copyrights, and whether

2    or not they've heard or visited Thunder Studios or the Kazal

3    Family Story websites; and then I do ask the question about

4    victim of stalking or ever been accused of stalking someone

5    else.  That's what I tried to tailor as it relates to this

6    case.

7           I just want to give you all a sense of what I was

8    thinking as it relates to the groups questions.  Obviously,

9    during the course of the voir dire, if something comes up at

10   sidebar, I will have you approach, and we can discuss any

11   other questions that you may want me to ask the jurors.  All

12   right.

13          Any questions with respect to that?  Or anything

14   else we've talked about this morning?

15          Mr. Taylor.

16          MR. TAYLOR:  Yes.  Just one other issue that I was

17   unclear on after Your Honor left the bench the first time.

18   Your Honor said eight hours per side questioning from the

19   lectern.  Counsel said seven.  I wasn't sure from the

20   beginning if we had said seven or eight at the beginning.  I

21   want to be clear exactly before we start on how much time --

22          THE COURT:  Perhaps in the holiday season I was

23   being overly gracious.  I thought it was eight, but in fact

24   it is seven hours per side that I gave each side.

25          MR. TAYLOR:  Just to be clear.

```
 1           THE COURT:  Yes.
 2           MR. TAYLOR:  Very good.  Thank you.
 3           THE COURT:  All right.  Okay.  So if there is
 4   nothing further, we'll take a brief recess.  I'm going to
 5   just try to get the editing of the jury instructions done.
 6   I will print copies to both of you, and then we'll bring the
 7   jurors in, and we'll begin the voir dire process.  All
 8   right?  Thank you.
 9           THE CLERK:  All rise.  This court is in recess.
10       (Recess taken 9:59 A.M. to 10:13 A.M.)
11       (The following was heard in open court in the presence
12        of the prospective jurors.)
13           THE CLERK:  Calling CV 17-0871-AB, Thunder
14   Studios, Inc., versus Charif Kazal, et al.
15           THE COURT:  Welcome to Courtroom 7B.  We are
16   honored to have you here, and we want to thank you in
17   advance for the time and attention that you are going to
18   give to this case.
19           You're here today because we are beginning the
20   process to try to pick a jury in a civil matter, and the
21   name of the matter is Thunder Studios versus Charif Kazal,
22   Tony Kazal, and Adam Kazal.
23           I will ask just preliminarily just based on the
24   name of the case alone, is there anyone in the audience that
25   has heard anything about the case at all and, if so, please
```

```
1    raise your hand.  Okay.  I see no hands.

2            Also, I will ask just as a little test:  How many

3    people out in the audience have either a mobile cell phone

4    or some sort of smartphone device?  If you could show with a

5    show of hands, please.  Okay, good.  So what I would ask you

6    respectfully is to please power down those phones or put

7    them on airplane mode.  I ask you that for a couple of

8    reasons:  One, we want to make sure we have your undivided

9    attention as we proceed in picking a jury and secondly the

10   reality of it is that in this room, the cell phone reception

11   is pretty bad, and your batteries will probably drain out

12   before lunch time if you keep your phones on.

13           So as I mentioned to you at the beginning, this is

14   a very important process in our judicial system; it is the

15   process known as voir dire.  This right goes back to the

16   Declaration of Independence.  As you will see on the screen

17   before you, the history of the present king of Great Britain

18   is a history of repeated injuries and usurpations for

19   depriving us in many cases of the benefit of trial by jury.

20   This is back in 1776.  The Seventh Amendment of the our

21   Constitution indicates that in suits of common law where the

22   value in controversy shall exceed $20, a trial by jury shall

23   be reserved; and I think Thomas Jefferson said it best when

24   he said that he considered a trial by jury as the only

25   anchor yet imagined by man by which a government can be held
```

```
 1   to the principles of its constitution.
 2            And so I can't express to you how important it is
 3   in this country to have a jury system and how important your
 4   role is in that process.  My family came over to this
 5   country from the island of Haiti in the West Indies, and in
 6   that country, the form of government was ruled by a
 7   dictator.  There was an infamous police force known as the
 8   Tonton Macoute, and they would literally roust you up in the
 9   middle of the night, put you in jail, and sometimes you'd
10   never be seen again.  Civil matters were decided, quite
11   frankly, via street justice, and we don't have that here in
12   this great country, and I think it's what separates us from
13   the rest of the world.
14            And, again, I want to emphasize how important it
15   is -- your role is in spending the time out of your day to
16   come down and help decide important matters like this.  Jury
17   duty is an obligation and a duty, and as I said earlier, it
18   is one of the things that separates us and makes us have
19   what I would consider the best justice system in the world.
20            Now, as relates to the trial:  The estimate of --
21   the estimate of this trial is about four days, okay?  That's
22   an estimate, not a promise, all right?  We're beginning
23   today.  We will not have court tomorrow if you are selected
24   on this jury.  You may or may not know the president has
25   declared a national day of mourning for the passing of
```

```
 1   George H. W. Bush; so the court is closed.  We will resume
 2   trial on Thursday.  On Friday we don't have session because
 3   I have my other calendar.  I have civil cases and criminal
 4   cases that I typically deal with on Fridays.  We hope that
 5   the matter will end next Monday.  There is one important
 6   caveat to that, is that if for some reason the trial moved
 7   at a faster pace -- I don't think that's the case, but I let
 8   jurors know just in case -- if the trial were to move at a
 9   faster pace and let's say you were to begin your
10   deliberations on Thursday evening, you would be expected to
11   come back on Friday to continue your deliberations because
12   you would be in the jury room, I could handle my calendar,
13   and if you had questions and a verdict we could deal with
14   those.  But if we go at the pace that we anticipate where
15   there is testimony that is continuing, we will end on
16   Thursday and resume back on Monday.
17           A typical trial day is I will have you come in at
18   9:00 A.M., we'll go till about 12 noon, we'll take a
19   one-hour recess for lunch, have you come back, and we'll go
20   till about 4:30 or 5:00 o'clock.  I do this because I want
21   to try to maximize as much trial time as possible because I
22   know we're asking individuals to take time out of their work
23   and their personal lives to be here so I want to give you --
24   I want to maximize the time so that you get as much
25   testimony as possible.  So, as I said, we hope that it will
```

1    be the last day on next Monday.

2            How the jury selection process begins is follows:

3    It is known as voir dire, and voir dire is actually a French

4    word that literally says to see the words or other words, to

5    speak the truth.  We will ask some individuals questions of

6    you all; we'll ask questions of the group.  It is important

7    that you are honest with us as we go through this process

8    because both sides want to make sure they have as much

9    information as possible about you and as they go through the

10   process of selecting a juror.  The questions are not

11   designed to embarrass but, again, it is just to try to find

12   a fair and impartial juror for this case.  If for some

13   reason there is a question that you feel uncomfortable

14   answering in open session, we have a semiprivate option

15   where I will ask you to come approach at sidebar, I'll press

16   this button here, the white noise will come on so that we

17   can have a semiprivate conversation off to the side.  Again,

18   the purpose of the voir dire is not to pry, it's really to

19   pick a fair and impartial juror in this case.

20           Now, I suspect that once you received your juror

21   summons, after jumping up and down in elation for the fact

22   that you were coming downtown, you probably went on the

23   Internet and began to search where you could park,

24   restaurants to go in town, and perhaps, just perhaps, you

25   may have seen some articles such as these on the screen.

1   And I am joking of course, but I recognize, look, we're

2   asking a lot of you to come down to court here out of your

3   lives, but it is important.  I know you have got other

4   things going on in your life.  I recognize it is a financial

5   hardship at times, but as I mentioned earlier, this is

6   vitally important to our justice system.  We need good

7   people like you to help decide important matters like this.

8   And just think that if you are selected on this jury, you

9   may join an illustrious group of other individuals who have

10   come before various jury panels throughout our country.

11          Let me introduce you now to some of the very

12   important people in this courtroom that you will engage with

13   through this process.  You all have met our courtroom clerk.

14   She is the keeper of the house; she runs this courtroom; she

15   is the boss.  She keeps the minutes of the trial.  She marks

16   all the exhibits.  She will apologize for delays that happen

17   at times.  She will swear you in as jurors, and she will

18   deal with any and all issues that you may have during the

19   course of this trial.

20          Perhaps someone who is equally important and

21   probably has the hardest job in this court is our

22   court reporter who is seated to my left.  She has the

23   challenge of transcribing everything that is said in this

24   courtroom.  I actually have a screen here that relays in

25   real time every word that is stated during the proceedings,

 1    and so even when you are answering questions during the
 2    voir dire process, she will be transcribing them in real
 3    time.  So it is important when you are answering the
 4    questions to make sure you give verbal answers because she
 5    cannot type down nods or shakings of the head.  So please
 6    keep that in mind as you are going through the voir dire
 7    process.
 8            We will be calling some names very shortly, and I
 9    will ask you all to be seated in the box.  So we're going to
10    call 16 names.  The first person will be seated at the top
11    row closest to me, and we'll go one through 8 and then 9
12    through 16 will be the bottom row.
13            If you are not the original 16 that are called,
14    please, please, please, pay attention to the questions,
15    don't check out.  Make a mental note of what you might
16    respond because you may be called up, and it will make it
17    more efficient if you already have in your mind how you
18    would respond to those questions.
19            An order that I have given the parties before you
20    walked in is that they cannot speak to you outside of this
21    courtroom.  So, for example, if we take a break during the
22    voir dire process and you happen to see any of the lawyers
23    or the parties in the hallway, they will walk by you as if
24    they don't know who you are or not even acknowledge your
25    presence.  They're not being rude, they're simply abiding by

1    this Court's orders because it's important that you as

2    jurors decide this case based only on the evidence that you

3    hear inside this courtroom and not based on any interactions

4    that take place outside of the courtroom.

5            At this time I am going to ask the parties to

6    introduce themselves.

7            So Mr. Wiener, if you would rise and please

8    introduce yourself and your client.

9            MR. WIENER:  Yes, Your Honor.  I'm Seth Wiener.

10   I'm the attorney for the plaintiffs, Thunder Studios, Inc.,

11   and with me to my left is Rodric David, who is the chief

12   executive officer of Thunder Studios, Inc., and my

13   co-counsel, Steven Gebelin.

14           THE COURT:  Thank you, Counsel.

15           Let's have the parties and the attorneys for the

16   defense please introduce themselves.

17           MR. TAYLOR:  Good morning, everyone.  My name is

18   Benjamin Taylor, and I am counsel for the defendants in this

19   case.  With me is my associate Diane Bani-Esraili and

20   Mr. Charif Kazal.  The defendants in this case are Charif

21   Kazal, Tony Kazal, and Adam Kazal.

22           THE COURT:  Thank you, Counsel.

23           So in a civil case, how a civil case starts is via

24   the Complaint, and the Complaint is the way the case begins.

25   It's not evidence.  The defendants have denied all the

1    claims in this case, and you are not to presume by virtue of

2    the fact that a Complaint has been filed that the other side

3    is liable.  I am going to read to you a statement of the

4    case just to give you a background of what this case is

5    about.

6                        "Plaintiff Thunder Studios contends

7                that the defendants infringed on its copyright

8                by posting photos onto a Website and social

9                media pages.  Further, plaintiff Rodric David

10               alleges that defendants are liable for

11               stalking by organizing protests featuring

12               protestors holding signs, hanging banners,

13               driving a van with signage around, chanting

14               slogans in Australia and around plaintiff

15               Rodric David's neighborhood and place of work,

16               which is Thunder Studios.  Also sending emails

17               to plaintiff Rodric David and making postings

18               concerning plaintiff Rodric David.

19                        "Defendants deny that they actually

20               posted any copyrighted material anywhere

21               online.  Defendants admit that Adam Kazal,

22               acting on his own and without instruction

23               from, or knowledge of, the other defendants,

24               requested that an investigator in California

25               organize protests in Rodric David's

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                neighborhood and outside Thunder Studios but

 2                deny any liability for civil stalking arising

 3                from those protests."

 4           Now, I am going to read to you the names of

 5   potential witnesses in this case to see if any of you may

 6   recognize any of those names.  We have Rodric David,

 7   Matthew Price, Paul Kolesa, Elizabeth David,

 8   Michael Hammond, Charif Kazal, Adam Kazal, Tony Kazal,

 9   Joe Dabab, Israel Lacey, Jamie Brown, Mark Woodward,

10   Jean Ghalo, Adam Swart, and Antonello Parlata.

11           Does anyone have or know any of the names that

12   were mentioned or have any relation or connection with any

13   of the court staff or the parties that have been introduced

14   this morning?  If so, please raise your hand.

15           Great, I don't see any hands.

16           So at this point, we're going to swear the jurors

17   in and call our first 16 names.

18           THE CLERK:  Please stand and raise your right

19   hand.

20           Ladies and gentlemen, do you solemnly swear that

21   you will make true answers to such questions as may be put

22   to you touching upon your qualifications to serve as jurors

23   upon the trial of the cause now before this Court so help

24   you God?

25      (All prospective jurors answer in the affirmative.)
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE CLERK:  Thank you.  Please be seated.

 2              Kim, Julie, please have a seat in Jury Seat

 3    Number 1; Brown, Claudia, please have a seat in Jury Seat

 4    Number 2; Cross, Kaley, please have a seat in Jury Seat

 5    Number 3; Ravago, Raul, Jury Seat Number 4; Regala, Joseph,

 6    Jury Seat Number 5; Elakabawi, Sharif, Jury Seat Number 6;

 7    Clark, John, Jury Seat Number 7; Corado Perez, Edgard, Jury

 8    Seat Number 8; Rosales, Luis, Jury Seat Number 9; Lu, Judy,

 9    Jury Seat Number Ten; Barela, Jonathan, Jury Seat Number 11;

10    Maaske, Neil, Jury Seat Number 12; Kaddo, Emily, Jury Seat

11    Number 13; Bacolod, Michael, Jury Seat Number 14; Boe, Paul,

12    Jury Seat Number 15; Teroganesyan, Sona, Jury Seat Number

13    16.

14              THE COURT:  All right.  So we're going to have a

15    microphone presented to you all, and there should be just --

16    if you can confirm for me -- there are screens in front of

17    you that should have a series of general questions.  Is that

18    up in the jury box?  All right.  Great.

19              When I talk about -- when we ask about area of

20    residence, I don't need your specific address.  South Bay,

21    Redondo Beach, Ventura, Santa Clarita, that will suffice.

22    So I just want to make sure you don't feel that you need to

23    give a specific address.  And so with that, why don't we

24    start.

25              Good morning, Ms. Kim.
```

```
 1            PROSPECTIVE JUROR:  Good morning.
 2            THE COURT:  All right.  So if you could answer the
 3    questions on the screen, we'd appreciate it.
 4            PROSPECTIVE JUROR:  I live in Calabasas.  I work
 5    for a biopharmaceutical company.  I am married.  The next
 6    question, my spouse's occupation?
 7            THE COURT:  Correct.
 8            PROSPECTIVE JUROR:  My spouse works for a bank.  I
 9    don't have any adult children; I have smaller children.  I
10    have been on jury service before for a civil trial in state
11    court.  Yes, it did reach a verdict, and it was a case about
12    personal injury.
13            THE COURT:  Great.  All right.  I have a couple of
14    follow-up questions.  First off, I hope that you and your
15    family weren't too impacted by the fires in Calabasas.
16            PROSPECTIVE JUROR:  We did have to evacuate, but
17    we had a good place to go so it was --
18            THE COURT:  Okay.  Good.  I went to school out at
19    Pepperdine, and I know a lot of the folks who were,
20    unfortunately, pretty badly impacted, but I am glad to hear
21    that that was not the case with you.
22            If you wouldn't mind telling me little more about
23    what do you do at the biotechnology company.
24            PROSPECTIVE JUROR:  I work in our commercial sales
25    department managing some of the partnerships, projects that
```

```
 1    we do.
 2              THE COURT:  And what type of projects does the
 3    company do?
 4              PROSPECTIVE JUROR:  Well, in my department, the
 5    kinds of projects we run are typically disease state
 6    projects or technology projects that help support the
 7    therapeutic areas for the drugs that we produce and the
 8    products that we sell.
 9              THE COURT:  And you said that your spouse works at
10    a bank.
11              PROSPECTIVE JUROR:  Yes, he does.
12              THE COURT:  What does your spouse do at the bank?
13              PROSPECTIVE JUROR:  He is the head of corporate
14    lending.
15              THE COURT:  All right.  And you said it was a
16    prior civil case.
17              How long ago was that?
18              PROSPECTIVE JUROR:  Probably about seven years
19    ago.
20              THE COURT:  And is there anything about that
21    experience that would make it difficult for you to be fair
22    and impartial to either side in this case?
23              PROSPECTIVE JUROR:  Hopefully not.
24              THE COURT:  Good.  You may have -- well,
25    presumably, by serving on a jury, the judge gave you
```

```
 1   instructions on the law as it relates to that case.  The

 2   instructions you receive here may be similar or they may be

 3   different.  If you are selected on a jury on this case, will

 4   you abide simply by the instructions that I give you in this

 5   case and ignore anything that you may have heard in your

 6   prior case?

 7           PROSPECTIVE JUROR:  Yes.

 8           THE COURT:  Good.  Thank you.

 9           Let's, if we could, switch over to Miss Brown.

10           Good morning.

11           PROSPECTIVE JUROR:  Good morning.

12           THE COURT:  If you could answer the questions

13   please.

14           PROSPECTIVE JUROR:  I live in Santa Monica.  I

15   work in marketing for a toy company.  I am married.  My

16   husband is an attorney.  I have young children and no prior

17   jury service.

18           THE COURT:  Okay.  So I assume this is a busy

19   season at your work given -- you said you work at a toy

20   company?

21           PROSPECTIVE JUROR:  It's always a busy season.

22           THE COURT:  I have young kids too, and I always

23   feel like I'm contributing to the stocks of toy companies.

24           PROSPECTIVE JUROR:  Thank you.

25           THE COURT:  What do you do at the toy company, if
```

```
 1   you don't mind me asking?

 2              PROSPECTIVE JUROR:  A senior brand manager there

 3   so I kind of work with our design team, our packaging team,

 4   and also communicate with our Hong Kong team, just kind of

 5   making sure that every item is being produced on time as

 6   well as approving new concepts for the coming years.

 7              THE COURT:  And your husband is an attorney.

 8              Do you know the nature of his practice?

 9              PROSPECTIVE JUROR:  Civil but he is not practicing

10   at the moment.

11              THE COURT:  Okay.  And did he do transactional

12   work, or did he do trial work at all?  Do you know?

13              PROSPECTIVE JUROR:  I'm not sure.

14              THE COURT:  Okay.  The reason why I ask, I'm

15   just -- I'm curious as to whether or not any conversations

16   or any insights he may have shared with you might impact

17   your ability to be fair and impartial to either side in this

18   case.

19              PROSPECTIVE JUROR:  No.

20              THE COURT:  Great.  Thank you very much.

21              Is it Miss Cross?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  Good morning.

24              THE WITNESS:  Good morning.

25              THE COURT:  Go ahead.
```

```
 1          PROSPECTIVE JUROR:  I reside in Mid-City.  I am a
 2   gymnastics instructor, and I manage and I am also an artist.
 3   I have a boyfriend who is an actor and works at a
 4   distillery.  I have no children, and I have no prior jury
 5   service.
 6          THE COURT:  Okay.  Great.  Thank you.
 7          Mr. Ravago.
 8          PROSPECTIVE JUROR:  Yes, sir.  Good morning.
 9          THE COURT:  Good morning.
10          PROSPECTIVE JUROR:  I live in Lancaster.  My
11   occupation is I work for Lockheed Martin Aircraft.  I am
12   married.  I have three adult children, and I have served on
13   two criminal trials about 15, 20 years ago.
14          THE COURT:  And what is your spouse -- does your
15   spouse work outside of the home?
16          PROSPECTIVE JUROR:  Yes, she works part-time, and
17   she works out in Lancaster also.
18          THE COURT:  And what does she do?
19          PROSPECTIVE JUROR:  She is -- her company -- I
20   guess she works for a private company that's hands-on that
21   gives people -- when they have infractions in traffic or
22   anything like that, they do community work to reduce their
23   fines and stuff like that.
24          THE COURT:  What does she do there?  Does she work
25   on the administrative side of that?
```

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  And you said you have three adult

 3       children.  What are their occupations if they are working?

 4                    PROSPECTIVE JUROR:  One works for Spectrum.  He is

 5       currently about to -- looks like about to get hired for

 6       LAPD.  I have a daughter that is an EMT for AMR out in

 7       Lancaster, and I have my youngest playing -- college student

 8       at COC playing baseball.

 9                    THE COURT:  Great.

10                    Now, you mentioned that you served on a jury in a

11       criminal case.  How long ago -- did you say it was two

12       times?

13                    PROSPECTIVE JUROR:  Twice, yes.  I think 15 and 20

14       years ago, something like that.

15                    THE COURT:  Now, I don't know if you have any

16       specific memory of those cases, but do you recall what the

17       charges were in those cases?

18                    PROSPECTIVE JUROR:  Yes.  One was a molestation,

19       death of an infant, and another was a kidnapping, robbery,

20       murder of a young female.

21                    THE COURT:  And do you know -- do you recall

22       whether or not verdicts were reached in those cases?

23                    PROSPECTIVE JUROR:  The verdicts were reached, but

24       I had to be dismissed before they were reached.

25                    THE COURT:  So, did you actually go and deliberate
```

```
 1   with the jurors or --

 2            PROSPECTIVE JUROR:  No.  No.  I think the first

 3   one, I think he pleaded, and then the second one I had to be

 4   dismissed because I wasn't going to get paid after six weeks

 5   through Lockheed Martin.

 6            THE COURT:  Got it.  All right.

 7            Did you receive any instructions from the judge in

 8   that second case -- or in either case?

 9            PROSPECTIVE JUROR:  Yes.

10            THE COURT:  Okay.  Now, you may or may not know in

11   criminal cases, the burden of proof is very different than

12   in civil cases.

13            THE WITNESS:  Yes.

14            THE COURT:  In criminal cases the burden of proof

15   is beyond a reasonable doubt.  In a civil case, it's what's

16   called a preponderance of the evidence, and if you all are

17   selected, I will explain to you what that means, but as it

18   relates to you Mr. Ravago, if you are picked and selected on

19   this jury, will you be able to set aside those instructions,

20   specifically about the burden of proof, in your prior

21   criminal case and listen and abide by the instructions in

22   this case as relates to the burden of proof?

23            PROSPECTIVE JUROR:  Yes, sir.

24            THE COURT:  Great.  Thank you.

25            Let's move on, if we could, to Mr. Regala.
```

```
 1              PROSPECTIVE JUROR:  Hello.

 2              THE COURT:  Good morning.  Go ahead, sir.

 3              THE WITNESS:  Residence, Norwalk.  Occupation, I

 4    work for LADWP.  Married.  No children.  I served -- I was

 5    an alternate on a criminal case, and they did reach a

 6    verdict, which I was not a part of.

 7              THE COURT:  Okay.  Let me ask you.  LADWP, can you

 8    help me with my rates?  No, I'm just kidding.

 9              What do you do at LADWP?

10              PROSPECTIVE JUROR:  I work with businesses to help

11    them become energy efficient.  If they have a project that

12    they want to implement to reduce their energy, our

13    department incentivizes it, and I help them through the

14    process.

15              THE COURT:  Thank you.

16              You said you are married.  Does your spouse work

17    outside of the home?

18              PROSPECTIVE JUROR:  Yes.

19              THE COURT:  And what does your spouse do?

20              PROSPECTIVE JUROR:  She's a manager at an avionics

21    company.  She makes sure that the inflight entertainment

22    screens on an airplane work.

23              THE COURT:  Got it.  All right.

24              And you said you were an alternate so you never

25    actually went into the jury deliberation room; correct?
```

```
 1                PROSPECTIVE JUROR:  Correct.

 2                THE COURT:  Did you receive instructions from the

 3     judge?  Presumably, you did before the jury went in to

 4     deliberate.

 5                PROSPECTIVE JUROR:  Yes.

 6                THE COURT:  And how long ago was this?

 7                PROSPECTIVE JUROR:  Four, five years ago.

 8                THE COURT:  And what kind of case was it?

 9                PROSPECTIVE JUROR:  If I remember correctly,

10     extortion.

11                THE COURT:  And as I mentioned earlier to

12     Mr. Ravago, the burden of proof in a criminal case is

13     different than in a civil case.  If you are selected on this

14     jury, will you be able to abide by the instructions that I

15     give you generally but specifically as to the burden of

16     proof in this case?

17                PROSPECTIVE JUROR:  Yes.

18                THE COURT:  Great.  Thank you, sir.  All right.

19                Let me see, Mr. Elakabawi?

20                PROSPECTIVE JUROR:  Yes.

21                THE COURT:  Was that close enough?

22                PROSPECTIVE JUROR:  Perfect.

23                THE COURT:  All right.  Great.

24                If you could answer the questions.  Good morning,

25     sir.
```

```
 1              PROSPECTIVE JUROR:  Good morning.  I live in the
 2    South Bay.  I do anesthesia for Kaiser.  I am single, no
 3    significant other, no children.  Jury service, the last one
 4    was a criminal case down the street, maybe in 2013, and I
 5    was an alternate.
 6              THE COURT:  Do you recall what kind of case it
 7    was?
 8              PROSPECTIVE JUROR:  Criminal.  I think it was
 9    murder or alleged murder.
10              THE COURT:  And do you know if a verdict was
11    reached?  I know you were an alternate so you were excused
12    before the deliberations, but did you ever find out if a
13    verdict was reached?
14              PROSPECTIVE JUROR:  It was not guilty.
15              THE COURT:  So the same -- I would say the same
16    thing to you.  The burden of proof is different in a civil
17    case.  If you are selected on this jury, will you be able to
18    abide by the instructions and set aside the instructions
19    that you heard in that prior criminal case?
20              PROSPECTIVE JUROR:  Yes.
21              THE COURT:  All right.  Great.  Thank you, sir.
22              Mr. Clark, good morning.
23              PROSPECTIVE JUROR:  Good morning.  I live in
24    Lompoc.  Occupation, sales and service of automated
25    equipment.  Married, three minor children.  Never been on a
```

```
 1    jury service.

 2              THE COURT:  Does your spouse work outside the

 3    home?

 4              PROSPECTIVE JUROR:  Yes, sorry.  She's a teacher.

 5              THE COURT:  What grade, if you don't mind me

 6    asking?

 7              PROSPECTIVE JUROR:  Currently, elementary.

 8              THE COURT:  Okay.  Great.  Thank you.  All right.

 9              Is it Mr. Corado Perez?

10              PROSPECTIVE JUROR:  Yes, sir.

11              THE COURT:  Good morning, sir.

12              PROSPECTIVE JUROR:  Good morning.  I live in

13    Alhambra.  I work for a cable company.  I am single.  I have

14    one kid.  He's a teenager, and this is my first jury

15    service.

16              THE COURT:  Great.  Okay.

17              So now if we could pass the microphone down to

18    Mr. -- is it Rosales?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Great.  We'll get it to you.

21              Good morning, sir.

22              PROSPECTIVE JUROR:  Good morning, Your Honor.  I

23    live in Palmdale.  I am a fire fighter for the U.S. Forest

24    Service.  I am single.  I have no kids, and I have no prior

25    jury service.
```

```
 1              THE COURT:  So I assume you were busy the last

 2    couple weeks.

 3              PROSPECTIVE JUROR:  Very busy.

 4              THE COURT:  Thank you for your service.  We

 5    appreciate that.

 6              Okay.  Miss Lu.  Good morning.

 7              PROSPECTIVE JUROR:  Good morning.  I live in

 8    San Gabriel Valley.  I'm in sales in logistics.  Single, no

 9    children.  No prior jury service.

10              THE COURT:  Okay.  Great.  Thank you.

11              Mr. Barela, good morning.

12              PROSPECTIVE JUROR:  Good morning, Your Honor.  I

13    live in Atascadero, California.  I am a psychiatric

14    technician at the state hospital.  I am married.  My wife is

15    currently unemployed.  She's going to school for nursing.

16    We have two minor children and no prior jury service.

17              THE COURT:  If you don't mind me asking, tell

18    me -- you said you are a psychiatric technician at a state

19    hospital.  What does that mean exactly?

20              PROSPECTIVE JUROR:  The type of -- we call them

21    "patients" that we have are either coming from county jail

22    or from prison either for treatment, some are incompetent to

23    stand trial, and some are there for their parole.

24              THE COURT:  And what are your responsibilities at

25    the facility?
```

```
 1              PROSPECTIVE JUROR:  To take care of their care on

 2    the unit 24/7, behaviorally and medically.

 3              THE COURT:  Thank you, sir.  All right.

 4              Is it Mr. Maaske?

 5              PROSPECTIVE JUROR:  Maaske.

 6              THE COURT:  Maaske.  Good morning.

 7              PROSPECTIVE JUROR:  Good morning.  I live in

 8    La Verne.  I don't work.  I am a retired U.S. Marine.  I'm

 9    married.  My wife, she's a court reporter.  My two adult

10    children are both college students and no prior service.

11              THE COURT:  All right.  Thank you for your

12    service.  How long ago you did retire?

13              PROSPECTIVE JUROR:  Three years ago.

14              THE COURT:  All right.  Good for you.  Okay.

15              Well, let me ask you.  You said your wife is a

16    court reporter, and so I am just curious.  Has she shared

17    any war stories about the good and bad of the lawyers that

18    have appeared in her courtroom?  I suspect she probably

19    never said anything negative about any judge, but let's put

20    that to the side, but any war stories about her life as a

21    court reporter?

22              PROSPECTIVE JUROR:  Nothing major.  I mean, people

23    she likes to work with, people she doesn't.  That's really

24    about it.

25              THE COURT:  Okay.  And if you were picked on this
```

```
 1    jury, one of the instructions is not to discuss the matter
 2    with anyone else until you have to deliberate, and so will
 3    there be a burning desire or pressure from your wife
 4    perhaps, be like tell me what this case is about.  Who is
 5    the judge?
 6              PROSPECTIVE JUROR:  No.  I think she knows.
 7              THE COURT:  Okay.  And where is she a
 8    court reporter?
 9              PROSPECTIVE JUROR:  She's independent.  So I know
10    she's working down here today.  She works mostly L.A., but I
11    know sometimes Orange County, sometimes -- it just depends.
12    So she's independent.
13              THE COURT:  Okay.  Great.  All right.  Well, thank
14    you, appreciate it.  All right.
15              Is it Miss Kaddo or Kaddo?
16              PROSPECTIVE JUROR:  Kaddo (pronouncing).
17              THE COURT:  Miss Kaddo, good morning.
18              PROSPECTIVE JUROR:  Good morning.
19              THE COURT:  Go ahead.
20              PROSPECTIVE JUROR:  I live in West Hollywood.  I
21    am a payroll and benefits administrator.  I am single, no
22    children, and I have served on a civil and criminal case.
23    The criminal was a bank robbery, and we did reach a verdict
24    in that case.  The civil case, I believe, was a
25    slip-and-fall, but they settled before we went to
```

```
 1   deliberation.

 2            THE COURT:  How long ago were those cases?

 3            PROSPECTIVE JUROR:  Four and five years ago.

 4            THE COURT:  The bank robbery was about four years

 5   ago?

 6            PROSPECTIVE JUROR:  Four, yeah.

 7            THE COURT:  Can I assume -- well, I will ask.  Was

 8   that in federal court here in this vicinity?

 9            PROSPECTIVE JUROR:  No.

10            THE COURT:  It was not.  Okay.

11       And the slip-and-fall, that was in state court?

12            THE WITNESS:  Yes, correct.

13            THE COURT:  I will say the same thing I have said

14   earlier about A, in a criminal case, the burden of proof is

15   vastly different than in a civil case and, B, you have

16   served on a civil case although it settled, and I don't know

17   if you got to the instruction phase or not, but the question

18   I ask all jurors:  Will they be able to set aside any

19   instructions that they may have heard in other cases and

20   listen to and abide by the instructions in this case if you

21   are selected as a juror.

22            PROSPECTIVE JUROR:  Yes, of course.

23            THE COURT:  All right.  Great.  Thank you.

24       Is it Bacolod?

25            PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  All right.  Good morning.
 2              PROSPECTIVE JUROR:  Good morning.  So I reside in
 3   Lakewood.  I am a maintenance coordinator for a Korean
 4   company.  I am single.  There is no significant other.  No
 5   children and no prior jury service.
 6              THE COURT:  All right.  Thank you.
 7              Is Mr. Boe?
 8              PROSPECTIVE JUROR:  Yeah, that's right.
 9              THE COURT:  Good morning, sir.
10              PROSPECTIVE JUROR:  Good morning.  I live in
11   Long Beach.  I am retired, used to work for a bank for many
12   years.  I am married.  My wife is the I.T project manager
13   for Experian.  I've got two adult children.  My daughter
14   works for Starbucks, and my son just graduated from
15   Cal State Fullerton with a degree in computer engineering.
16   He is still looking for work.
17              THE COURT:  Well, congratulations on having two
18   kids that are getting out of school and working.
19              PROSPECTIVE JUROR:  Right.
20              I have had some jury experience, criminal, at the
21   Bellflower Court.  I think one case was a theft case and the
22   other was about drugs.  It's been a long time.  I can't
23   remember when they were.
24              THE COURT:  And that's the extent of your jury
25   experience?
```

```
1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  All right.  And I will ask you the

3    same questions I have asked the others.  The burden of proof

4    is very different in a civil case.  It's a preponderance of

5    the evidence, and I will explain that to you if you are

6    selected.  Will you be able to understand and abide by the

7    rules in this case and put aside any instructions you may

8    have heard in your prior case?

9              PROSPECTIVE JUROR:  I think I probably have

10   forgotten all those rules.

11             THE COURT:  Okay.  Good.  Thank you, sir.

12             And last but not least, at least for now,

13   Miss Teroganesyan.

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Good morning.

16             PROSPECTIVE JUROR:  Good morning.

17             THE COURT:  Go ahead, please.

18             PROSPECTIVE JUROR:  I live in Northridge.

19   Occupation is senior business analyst for a healthcare

20   company.  Single, no children.  No prior jury service.

21             THE COURT:  All right.  Okay.

22             So I am going to ask you now as a group questions.

23   If any one has a response to those questions, please raise

24   their hand.  We'll get the microphone to you and, again, I

25   will remind you if for any reason there is a question that
```

```
 1    you don't feel comfortable discussing in open court, just
 2    let me know I'd like to approach, and then we'll go to the
 3    sidebar here, and we'll have further discussion.
 4            So the first set of questions are somewhat
 5    foundational.  Does everyone here understand that the
 6    parties must prove their claims or defense by what's known
 7    as a preponderance of the evidence?  I will explain to you
 8    what that is if you are selected, but the gist of the
 9    question is understanding that the plaintiff in this case
10    must prove their claim by a preponderance of the evidence.
11    Does anyone have an issue with that, or does anyone think
12    that the burden should be on the other side, on the defense,
13    because there is a claim filed against them that they have
14    to somehow prove something?
15            Does anyone here think that simply because a claim
16    has been filed that the other side is automatically liable?
17    All right.  No hands.
18            Has anyone ever been a party to a lawsuit?  All
19    right.  This is a non-litigious group I see.  All right.
20            Have you, close friends, or relatives ever filed a
21    claim or lawsuit of any kind?  All right.
22            Let's get the microphone; who has the microphone?
23            Miss -- let's start with Mr. Clark.
24            PROSPECTIVE JUROR:  Yeah.  We have rental
25    property, and from time to time I have to file claims,
```

```
 1   unfortunately.
 2                THE COURT:  Eviction claims, I assume.
 3                PROSPECTIVE JUROR:  Yeah.
 4                THE COURT:  And have you had to appear in court
 5   and/or testify in court?
 6                PROSPECTIVE JUROR:  Yes.
 7                THE COURT:  To both?
 8                PROSPECTIVE JUROR:  Yes.
 9                THE COURT:  And I assume that's mostly in state
10   court.
11                PROSPECTIVE JUROR:  Actually, it was county.
12                THE COURT:  In the county.  That's right.  All
13   right.
14                Is there anything about that experience, the fact
15   that you have been a litigant, that would make it difficult
16   for you to be fair and impartial to either side in this
17   case?
18                PROSPECTIVE JUROR:  Not that I am aware of.
19                THE COURT:  Okay.  All right.
20                Who else had their hands up?
21                All right.  Okay.  Sir, Mr. Elakabawi?
22                PROSPECTIVE JUROR:  Yes.
23                THE COURT:  Yes.
24                PROSPECTIVE JUROR:  I own a property I rented.
25   The guy was a squatter so it's the same situation.
```

```
 1              THE COURT:  Okay.  And did you ultimately have to
 2   go to court and testify?
 3              PROSPECTIVE JUROR:  Yeah.
 4              THE COURT:  Anything about that experience that
 5   would make it difficult?  I mean, it's not really related to
 6   what we're dealing with here but just in the experience of
 7   being a litigant in a judicial case that would make it
 8   difficult for you to be fair and impartial to either side?
 9              PROSPECTIVE JUROR:  No.
10              THE COURT:  Thank you.  Anyone else?
11         Mr. Ravago.
12              PROSPECTIVE JUROR:  My son was assaulted back in
13   January at a friend's home by a couple people that weren't
14   invited to the home so he's going through a lawsuit right
15   now.
16              THE COURT:  Is he going through a civil lawsuit,
17   or were there criminal charges filed, if you know?
18              PROSPECTIVE JUROR:  There is criminal charges,
19   they're filed, and it's a civil lawsuit through one of the
20   lawyers up there in Lancaster.
21              THE COURT:  First of all, I am sorry to hear about
22   your son.  I hope the recovery process has gone relatively
23   well.
24              PROSPECTIVE JUROR:  That's gone well, but he got
25   hurt pretty bad.
```

```
 1            THE COURT:  Okay.  Is there anything about the
 2  fact that your son is going through that litigation that
 3  would make it difficult for you to sit through a trial where
 4  parties are disputing issues?
 5            PROSPECTIVE JUROR:  No.
 6            THE COURT:  Great.  Thank you.
 7            Anyone else in the back row?
 8            Miss Brown, did you have your hand up?  Yes.
 9            PROSPECTIVE JUROR:  A previous job let me go, but
10  I was pregnant at the time so I did file a lawsuit.  We
11  ended up settling.
12            THE COURT:  If you don't mind me asking, how long
13  ago was that?
14            PROSPECTIVE JUROR:  That was eight, nine years
15  ago.
16            THE COURT:  And the matter settled.
17            Did you have to testify in court prior to the
18  matter settling?
19            PROSPECTIVE JUROR:  No.
20            THE COURT:  Were you deposed prior to the matter
21  settling?
22            PROSPECTIVE JUROR:  No.
23            THE COURT:  Were you asked to respond to any
24  what's known as interrogatories or any questions by the
25  other side prior to the matter settling?
```

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  Did you work with your lawyers in

 3      crafting those responses?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  The reason why I ask is just to see if

 6      there is anything about that experience dealing with

 7      lawyers, responding to questions from lawyers from the other

 8      side, there may be testimony here about responses to

 9      questions or deposition testimony.  Will that make it

10      difficult?  Will you harbor some sort of animus against

11      either side because of your unfortunate experience?

12                    PROSPECTIVE JUROR:  No.

13                    THE COURT:  Great.  Thank you.

14                    Anyone else?  Okay.

15                    Oh, I'm sorry.  Miss Kaddo -- Kaddo.

16                    PROSPECTIVE JUROR:  Kaddo (pronouncing).

17                    THE COURT:  Kaddo, sorry.

18                    PROSPECTIVE JUROR:  So, many years ago I had a

19      lawsuit filed against me.  It was a car accident, and we

20      ended up settling.

21                    THE COURT:  Did you have to testify in court?

22                    PROSPECTIVE JUROR:  No.

23                    THE COURT:  This was all dealt with through the

24      insurance companies?

25                    PROSPECTIVE JUROR:  Correct.
```

```
 1              THE COURT:  Were you upset at the lawyers who

 2    filed the case against you?

 3              PROSPECTIVE JUROR:  No.

 4              THE COURT:  Okay.  So is there anything about that

 5    experience that might make you -- for lack of a better

 6    term -- have flashbacks about, oh, I hate lawyers and so I

 7    am going to hold it against either side here?

 8              PROSPECTIVE JUROR:  Not at all.

 9              THE COURT:  Okay.  Great.  Thank you.

10              Anyone else that we missed?  Okay.

11              Do you, close family, or friends have any legal

12    training?  I know -- I'm sorry.  Who was it that is married

13    to an attorney?  Miss brown.  Who else?  Anyone else?  All

14    right.  Let's -- Miss Kaddo, while you have the mic, go

15    ahead.

16              PROSPECTIVE JUROR:  So my father is a judge in

17    Van Nuys.

18              THE COURT:  Oh, I wondered if that was the case.

19    First name Jim?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Yes.  I have had the pleasure of

22    meeting your father, and he's been a judge for a long time.

23              PROSPECTIVE JUROR:  Long time.

24              THE COURT:  In fact, I think he just recently had

25    an election.
```

```
 1                PROSPECTIVE JUROR:  Yes.

 2                THE COURT:  Okay.  All right.

 3                So let me ask -- so you have probably -- based on

    my experience with your father, your father has a lot of

 5    stories from his life and his experience, and so have you

 6    had the opportunity to absorb some of that knowledge and his

 7    experience of his -- I think it's 40-some-odd years on the

 8    bench, right?

 9                PROSPECTIVE JUROR:  Yes, his advice is don't do

10    anything wrong.

11                THE COURT:  Okay.

12                PROSPECTIVE JUROR:  That's what I have learned.

13                THE COURT:  All right.  Words of wisdom.

14                Well, but in all -- separate from that, is there

15    anything about the conversations that you've have had with

16    your father, do you think if you were picked on this jury,

17    something might occur, whether it's the style of questions

18    or the questions that are asked and you might think oh, my

19    dad said lawyers should never ask this question or anything

20    like that?

21                PROSPECTIVE JUROR:  No.

22                THE COURT:  Okay.  All right.  Thank you.

23                Miss Teroganesyan.

24                PROSPECTIVE JUROR:  Yes.  My sister is a P.I.

25    attorney as well as litigation.
```

```
 1                    THE COURT:  Okay.  And how long has she been
 2       practicing, if you know?
 3                    PROSPECTIVE JUROR:  Six years.
 4                    THE COURT:  Has she shared any war stories with
 5       you about her experience and with lawyers and/or judges and
 6       specifically anything that might affect your ability to be
 7       fair to either side in this case?
 8                    PROSPECTIVE JUROR:  No, not really.
 9                    THE COURT:  Okay.  All right.  I am assuming that
10       she loved every judge she appeared in front of, right?
11                    PROSPECTIVE JUROR:  Of course.
12                    THE COURT:  Of course.  Anyone else?
13                    Mr. Clark?
14                    PROSPECTIVE JUROR:  Yes.  I have an uncle that's a
15       retired lawyer.
16                    THE COURT:  He got out while he could.
17                    PROSPECTIVE JUROR:  Yes, sir.
18                    THE COURT:  Do you know what type of law he
19       practiced?
20                    PROSPECTIVE JUROR:  From what I remember, it
21       was -- in his past he had practiced, I guess, different
22       avenues, and in the end I think it was accidents.
23                    THE COURT:  Got it.
24                    Is there anything about the stories that he may
25       have told you or your experience with him that might make it
```

```
 1    difficult for you to be fair and impartial to either side in
 2    this case?
 3                PROSPECTIVE JUROR:  Not that I am aware of.
 4                THE COURT:  Who else had their hands up?  I know
 5    Miss brown and Miss Kim.
 6                So Miss Brown, other than what we have talked
 7    about, is there anything else?  I know you said your husband
 8    is not practicing now, but he had done some civil
 9    litigation, correct?
10                PROSPECTIVE JUROR:  Yes.
11                I also work very closely with our legal team at
12    our company who we have to go through a bunch of names to
13    make sure that they're cleared.  So trademarks, copyright.
14                THE COURT:  Okay.  And we're going to talk a
15    little bit more about that.  All right.  So I guess I will
16    ask -- my condolences for having to deal with that, but is
17    there anything about your experience with the lawyers -- I
18    mean, I know from friends of mine that do similar type of
19    work, and the people that deal with them would say, you
20    know, they're always telling us, no, or they're always, sort
21    of, pains in our posteriors, if you will.  So I guess my
22    question is whether or not your experience dealing with
23    in-house counsel at your company would make it difficult for
24    you to be fair to either side in this case?
25                PROSPECTIVE JUROR:  No.
```

```
 1            THE COURT:  Would you be thinking during the trial
 2   well, my lawyer would never ask a question like that, or my
 3   lawyer's style is completely different than that and so
 4   these lawyers must be wrong by virtue of that?
 5            PROSPECTIVE JUROR:  Possibly but no.
 6            THE COURT:  Okay.  All right.
 7            But do you think you could keep an open mind and
 8   listen to all the evidence and deliberate with your fellow
 9   jurors in deciding whether to come to conclusion?
10            PROSPECTIVE JUROR:  Yes.
11            THE COURT:  Okay.  Thank you.
12            Miss Kim.
13            PROSPECTIVE JUROR:  I have a niece who practices
14   patent law in Chicago, and then I also work with our
15   internal in-house counsel team at my work.
16            THE COURT:  Again, I am not -- I hope I am making
17   any gross assumptions, but from what I have heard, you know,
18   dealing with the lawyers in-house has its own internal set
19   of challenges, and so I ask you as well:  Do you think that
20   that would impact your ability to be fair and impartial to
21   either side in this case?
22            PROSPECTIVE JUROR:  Shouldn't be a problem.
23            THE COURT:  All right.  Great.  All right.
24            Anyone else?
25            And let's talk about the next question that was
```

```
 1    alluded to earlier.  Anyone, close family, friends,
 2    relatives have any education or experience in copyright,
 3    trademark, commercial, intellectual property or patent law?
 4    I know Miss Kim and Miss Brown, we've talked about that.
 5    Anyone else at all?  Okay.
 6              Does anyone here own any copyrights or trademarks?
 7              Has anyone here ever been accused of infringing on
 8    somebody else's copyright or trademark?  Okay.  I see no
 9    hands.
10              Are you, close friends, or family employed in the
11    entertainment industry?  All right.
12              So Miss Kim, let's talk a little more if we could.
13              PROSPECTIVE JUROR:  I have a few close friends who
14    work for Paramount Studios.
15              THE COURT:  All right.  Is there anything about
16    your relationship with those friends, whether they have
17    shared stories about litigation that they have been involved
18    in or any copyrights or things of that nature, have those
19    kind of conversations come up and, if so, anything about
20    those conversations that would make it difficult for you to
21    be fair to either side in this case?
22              PROSPECTIVE JUROR:  I am sure I have been told
23    stories, but to be honest I don't think I remember them.
24              THE COURT:  Okay.  All right.  Great.  Thank you.
25              Miss Brown, you deal with patents, copyrights,
```

```
 1   trademarks all the time.
 2           PROSPECTIVE JUROR:  Yes, I do.
 3           THE COURT:  What about friends and family employed
 4   in the entertainment industry?
 5           PROSPECTIVE JUROR:  I have -- my sister-in-law
 6   works for the Disney Studios.
 7           THE COURT:  Can she get me some tickets for the
 8   holidays?  I'm kidding.
 9           THE WITNESS:  I will ask.
10           THE COURT:  All right.  What does she do at
11   Disney, if you know?
12           PROSPECTIVE JUROR:  She works on the music.  She's
13   like a music director for the Disney Junior shows.
14           THE COURT:  Got it.
15           Has she ever shared with you any stories about any
16   litigation that Disney may have been involved in with
17   respect to any copyrights or patents or things of that
18   nature?
19           PROSPECTIVE JUROR:  No.
20           THE COURT:  Anything about that relationship with
21   her that might make it difficult for you to be fair to
22   either side in this case?
23           PROSPECTIVE JUROR:  No.
24           THE COURT:  All right.  Anyone else?
25           Ah, Mr. Clark.
```

```
 1                PROSPECTIVE JUROR:  I have family members that are

 2    actors if that matters.

 3                THE COURT:  Well, that's part of the entertainment

 4    industry.

 5                Have they shared any stories with you about

 6    generally the business but more specifically about any

 7    copyrights or patents or any works that they had claimed

 8    that they had generated first, things of that nature?

 9                PROSPECTIVE JUROR:  No.

10                THE COURT:  No.  Okay.

11                Anything about that relationship that would make

12    it difficult for you to be fair and impartial to either side

13    in this case?

14                PROSPECTIVE JUROR:  No.

15                THE COURT:  Thank you.

16                Anyone else?  Okay.

17                Have you ever had any responsibility for

18    registering any copyrights?  I see no hands.

19                Have you ever posted a copyrighted work on an

20    Internet Website?

21                Have any of you ever heard or visited the Website,

22    thunderstudios.com -- www.thunderstudios.com or the Website

23    kazalfamilystory.com?  I see no hands.

24                Have you, close friends, or family members ever

25    been the victim of stalking?  And, again, we have the
```

 1   ability to discuss this at sidebar if that's an issue.  All

 2   right.

 3          Anyone else?

 4          Do you want to approach at sidebar?  All right.

 5      (The following proceedings were held at sidebar.)

 6          THE COURT:  Sorry, Miss Brown, I just have to have

 7   the lawyers hear your responses so that's why -- I don't

 8   mean to surround you so -- if you could just step a little

 9   closer to the microphone here.

10          PROSPECTIVE JUROR:  Sure.

11          THE COURT:  So if you wouldn't mind sharing with

12   us your experience.

13          PROSPECTIVE JUROR:  So my brother-in-law actually

14   was fired from a job, and both of them were stalked for a

15   couple of weeks by another employee from that company, which

16   made it really difficult for them for some time.  This

17   happened a couple of months ago.

18          THE COURT:  I am sorry to hear about that

19   experience.

20          Did your brother-in-law go to the police, or did

21   he file any sort of temporary restraining order?

22          PROSPECTIVE JUROR:  They did.

23          THE COURT:  Okay.  And do you know what the

24   outcome -- if there was one -- were there any charges filed?

25   Were there any lawsuits steming from that stalking?

```
 1              THE WITNESS:  At the end it wasn't -- eventually,
 2    it just stopped.
 3              THE COURT:  Okay.  Do you know whether the police
 4    were involved at some point?
 5              PROSPECTIVE JUROR:  I believe so.
 6              THE COURT:  Do you know whether or not the police
 7    ever made contact with either your brother-in-law or the
 8    person who was alleged to have been doing the stalking?
 9              PROSPECTIVE JUROR:  I believe my brother-in-law
10    was in contact with the police, but I don't know if that
11    other person was.
12              THE COURT:  This case involves a stalking claim.
13    Do you think it would be difficult for you to be fair and
14    impartial to either side hearing facts that may or may not
15    be similar to what your brother experienced?  If the fact,
16    you know, allegations involving harassment.  You heard the
17    brief statement of the case.  Do you think that would be
18    difficult for you to be fair and impartial to either side in
19    this case?
20              PROSPECTIVE JUROR:  No.
21              THE COURT:  Okay.
22              Does either side have any questions?
23              MR. TAYLOR:  I do.
24              You said both of them were stalked.  You mean your
25    sister and her husband?
```

```
 1              PROSPECTIVE JUROR:  Uh-huh.
 2              MR. TAYLOR:  Can you tell us -- Your Honor?
 3              THE COURT:  Go ahead.
 4              MR. TAYLOR:  -- what the nature --
 5              PROSPECTIVE JUROR:  They were --
 6              MR. TAYLOR:  -- form it took.
 7              PROSPECTIVE JUROR:  -- followed driving.  They
 8   were followed into stores.  They -- the person drove in
 9   front of their house.
10              MR. TAYLOR:  This is by a co-worker?
11              PROSPECTIVE JUROR:  Yes.
12              MR. TAYLOR:  Over what period?
13              PROSPECTIVE JUROR:  It happened over, I would say,
14   like, three weeks.
15              THE COURT:  Okay.  Any questions?
16              MR. WIENER:  Was any of the stalking conduct
17   directed to you personally?
18              PROSPECTIVE JUROR:  No.
19              THE COURT:  All right.  Thank you very much.
20   Appreciate it.
21         (The following was heard in open court in the presence
22          of the prospective jurors.)
23              THE COURT:  All right.
24         Anyone else have any response to the questions
25   about close family, friends that have ever been the victim
```

```
 1    of stalking or whether or not you or a close friend or
 2    family ever been accused of stalking someone?  I see no
 3    hands.  We're coming to the home stretch here.
 4          Can you keep an open mind about the case until you
 5    hear all of the evidence presented, the jury instructions,
 6    and the arguments of counsel?  Does anyone have any hard
 7    time about that concept?  I see no hands.
 8          And then lastly can you follow the law even if you
 9    disagree with it?  Does anyone have any heartburn or issues
10    with respect to that?  I see no hands.
11          Let me have counsel approach at sidebar, please.
12          (The following proceedings were held at sidebar.)
13          THE COURT:  Okay.  So at this time, I would ask if
14    either side have any challenges for cause.
15          Start with the plaintiff.  Mr. Wiener, just make
16    sure you speak into the microphone.  Any challenges for
17    cause?
18          MR. WIENER:  No challenges for cause, Your Honor.
19          THE COURT:  All right.  Mr. Taylor, any challenges
20    for cause?
21          MR. TAYLOR:  None, Your Honor.
22          THE COURT:  All right.  So at this point, why
23    don't we go through the peremptory challenges.
24          Plaintiff, you have the first peremptory
25    challenge.  Do you wish to -- do you need to get your sheet?
```

```
 1              MR. TAYLOR:  Can I grab my --
 2              THE COURT:  Yes, absolutely.  We'll take a moment.
 3              Do you need your paperwork?
 4              MR. WIENER:  Yes.
 5              THE COURT:  Okay.  So just as a reminder, I am
 6    going to ask for the peremptories, and as you go through the
 7    peremptories, peremptory should be in the first eight.  As
 8    you make a peremptory, I will replace that seat with Jurors
 9    9 through 16 because based on no challenges for cause, the
10    jury is in the box.  What composition they will be remains
11    to be seen, but we know this group of 16, eight of them will
12    be part of this jury.
13              Does that make sense to both sides?  Mr. Wiener?
14              MR. WIENER:  Yes, it does.
15              THE COURT:  Mr. Taylor?
16              MR. TAYLOR:  Yes, Your Honor.
17              THE COURT:  All right.
18              So with that, the first peremptory with the
19    plaintiff.
20              MR. WIENER:  Number 6, Your Honor.
21              THE COURT:  Number 6, Mr. Elakabawi.
22              So Number 9 will go into Number 6's seat.
23              Next peremptory with the defense.
24              MR. TAYLOR:  Number 2, Your Honor, Miss Brown.
25              THE COURT:  Number 2, Miss Brown.
```

```
 1              So Number 10 will go into Seat Number 2.
 2              Next.
 3              MR. WIENER:  Number 8, Your Honor.
 4              THE COURT:  Number 8, Mr. Perez.
 5              So Number 11 will go to Number 6.
 6              Next peremptory with the defense.
 7              MR. TAYLOR:  Number 3, Your Honor.
 8              THE COURT:  Miss Cross -- Cross?
 9              MR. TAYLOR:  Cross, yes.
10              THE COURT:  Miss Cross.
11              Mr. Maaske will go into Number 3.
12              Last peremptory with the plaintiff.
13              MR. WIENER:  No one else, Your Honor.
14              THE COURT:  All right.  Pass.
15              Peremptory is with the defense.
16              MR. TAYLOR:  May I have a second, Your Honor?
17              THE COURT:  So I will pick the first eight, just
18      so you know.
19              MR. TAYLOR:  I understand.
20              THE COURT:  Okay.
21              MR. TAYLOR:  Number 7, Your Honor.
22              THE COURT:  Number 7, Mr. Clark.
23              Miss Kaddo will go to Number 7.
24              Just so we're clear, our jurors will be, just
25      so -- Juror Number 1 is Miss Kim; Juror Number 2 is Miss Lu;
```

1    Juror Number 3 is Mr. Maaske; Juror Number 4 is Mr. Ravago;

2    Juror Number 5 is Mr. Regala; Juror Number 6 is Mr. Rosales;

3    Juror Number 7 is Miss Kaddo; and Juror Number 8 is

4    Mr. Barela.  I'm sorry.  My handwriting is bad.

5            Okay.  So I am going to excuse the following

6    jurors:  Mr. Elakabawi; Miss Brown; Mr. Perez, Miss Cross;

7    Mr. Clark; Mr. Bacolod; Mr. Boe; and Miss Teroganesyan.  All

8    right.  So we'll have our jurors.

9            What we'll do is take a break.  Our courtroom

10   deputy needs to assemble the jurors.  I will give the jury

11   instructions to both sides; we'll bring the jury back; I'll

12   read the instructions; and then we'll begin with opening

13   statements.  All right?

14           MR. WIENER:  All right.

15           MR. TAYLOR:  Okay, Your Honor.  Alternates?

16           THE COURT:  No.  We do the first eight and knock

17   on wood that will suffice.

18           MR. WIENER:  What did he just ask?

19           THE COURT:  He asked whether there were

20   alternates.

21           All right.  Thank you.

22       (The following was heard in open court in the presence

23        of the prospective jurors.)

24           THE COURT:  So I am going at the read off a number

25   of names.  If I read your name, I want to thank you in

1   advance, but you can return back to the jury assembly room.

2          Mr. Elakabawi, thank you.  You can return back to

3   the jury assembly room.  Miss Brown, thank you.  You can

4   return back to the jury assembly room.  Feel free to leave

5   the gift certificates for the toys downstairs.  I am

6   kidding, of course.  Mr. Corado Perez, you can return to the

7   jury assembly room.  Thank you very much.  Miss Cross, you

8   can return back to the jury assembly room.  Mr. Clark, you

9   can return back to the jury assembly room.  Mr. Bacolod, you

10  can return back to the jury assembly room.  Mr. Boe, you can

11  return back to the jury assembly room, and

12  Miss Teroganesyan, you can return back to the jury assembly

13  room.  Let me make sure.  All right.

14         So ladies and gentlemen, you are the remaining

15  eight.  So although you probably are too young to know this,

16  but I will make the reference nevertheless.  You have won

17  the golden ticket.  All right?  And so you are going to be

18  the jurors in this case.

19         So I would ask you to reassemble if you could in

20  the following order:  So Miss Kim, you are going to be

21  Juror Number 1.  Miss Lu, if you would sit next to Miss Kim.

22  Mr. Maaske, if you would sit in Juror Seat Number 3.

23  Mr. Ravago, you can remain where you are seated.

24  Mr. Regala, you are going to switch to where Mr. Rosales is,

25  and Mr. Rosales, if you would move one seat over, and then,

 1    for reasons I will explain at a later time, Mr. Barela and

 2    Miss Kaddo, if you would switch seats, please.  Perfect.

 3              So you all are going to be the jurors in this

 4    case.  We're going to have you sworn in at this time, and

 5    then we'll discuss how we're going to proceed.

 6              THE CLERK:  Please stand and raise your right

 7    hand.

 8              Ladies and gentlemen of the jury, do you solemnly

 9    swear that you will well and truly try the cause now before

10    the Court and a true verdict therein render according to the

11    evidence and instructions of the Court so help you God?

12              (All jurors answer in the affirmative.)

13              THE COURT:  All right.  So what we're going to do,

14    we're going to take a brief recess so that the courtroom

15    deputy can sort of explain where you're going to assemble

16    every morning, things of that nature, and then we'll come

17    back and begin by instructing you.  I will give you some

18    opening jury instructions.  That will take about 15 or 20

19    minutes, and depending on the hour, we may take a break for

20    lunch and then come back with opening statement and then

21    testimony.

22              You are going to hear me say this ad nauseam

23    throughout the trial:  Please do not form or express any

24    opinion about the matter until it's finally submitted to

25    you.  Don't talk to anyone about the case.  Don't allow

```
 1   anyone to talk to you about the case.  And do not conduct

 2   any research of any kind on any subject matter connected

 3   with this case.

 4            We are going to take probably a ten-minute recess.

 5   We'll have you go back to the jury assembly room to get you

 6   situated.  All right.  Thank you.

 7            THE CLERK:  All rise for the jury.

 8            Please be seated.

 9            THE COURT:  All right.  To the folks in the

10   audience, what we will need you to do is come back tomorrow

11   morning at 8:00 A.M. for your service -- I am just kidding.

12   Just wanted to make sure you were paying attention.  You can

13   all return back to the jury assembly room, have a wonderful

14   rest of the weekend, a wonderful holiday season.  Thank you

15   for coming in today, greatly appreciated.

16      (The following was heard outside the presence of the

17       jury.)

18            THE COURT:  We're outside the presence of the

19   jury; all the other jury members have been excused.  We're

20   going to get to you a copy of the jury instructions.  We'll

21   take a brief recess, and we'll come back with our closing

22   instructions -- I should say opening instructions.  I

23   probably will let the jurors out early.  This way they can

24   have lunch, and then you all can prepare for your opening

25   statements.  We'll come back maybe at a quarter to 1:00 or a
```

```
 1   little earlier than 1:00 o'clock, depending on when we

 2   finish the opening instructions, and then you can begin with

 3   opening statement and testimony.

 4              Do you have witnesses ready to go today,

 5   Mr. Wiener?

 6              MR. WIENER:  We do, Your Honor.

 7              THE COURT:  All right.  So then let's take a

 8   brief -- let's take a ten-minute recess, please.

 9        (Recess taken 11:19 A.M. to 11:38 A.M.)

10        (The following was heard in open court in the presence

11         of the jury:)

12              THE COURT:  Welcome back.

13              And as I promised, I think you all have in front

14   of you a copy of some opening jury instructions that I am

15   going to read at this time.  These are instructions that --

16   to help guide in the consideration of the evidence in this

17   case.

18              As I mentioned earlier, you are now the jury on

19   this case, and it is now my duty to instruct you on the law.

20              These instructions are preliminary instructions to

21   help you understand the principles that apply to civil

22   trials and to help you understand the evidence as you listen

23   to it.  You will be allowed to keep this set throughout the

24   trial to refer to.  This set of instructions is not to be

25   taken home and must remain in the jury room when you leave
```

```
 1    in the evenings.  At the end of the trial, I will give you a
 2    final set of instructions.  It is the final set of
 3    instructions that will govern your deliberations.
 4         It is your duty to find the facts from all the
 5    evidence in the case.  To those facts you will apply the law
 6    as I give it to you.  You must follow the law as I give it
 7    to you whether you agree with it or not, and you must not be
 8    influenced by any personal or dislikes, opinions, prejudice
 9    or sympathy.  That means you must decide the case solely on
10    the evidence before you.  You will recall that you took an
11    oath to do so.
12         Please do not read into these instructions or
13    anything I may say or do that I have an opinion regarding
14    the evidence or what your verdict should be.
15         To help you follow the evidence, I will give you a
16    brief summary of the position of the parties:
17         Plaintiff Thunder Studios, Inc. asserts a claim
18    for copyright infringement.  Plaintiff Rodric David asserts
19    a claim for stalking.  Plaintiffs have the burden of proving
20    these claims.
21         Defendants deny these claims.
22         When a party has the burden of proving any claim
23    or affirmative defense by a preponderance of the evidence,
24    it means you must be persuaded by the evidence that a claim
25    or affirmative defense is more probably true than not true.
```

1          You should base your decision on all the evidence

2     regardless of which party presented it.

3          The plaintiff, Thunder Studios, Inc. claims

4     ownership of copyrights and seeks damages against defendants

5     for copyright infringement.  The defendants deny infringing

6     copyrights.  To help you understand the evidence in this

7     case, I will explain some of the legal terms you will hear

8     during this trial.

9          The owner of a copyright has the right to exclude

10    any other person from reproducing, distributing, performing,

11    displaying, or preparing derivative works from the work

12    covered by copyright for a specific period of time.

13         A copyrighted work can be a literary work, musical

14    work, dramatic work, pantomime, choreographic work,

15    pictorial work, graphic work, sculptural work, motion

16    picture, audio visual work, sound recording, architectural

17    work, or computer program.

18         Facts, ideas, procedures, processes, systems,

19    methods of operation, consents, principles, or discoveries

20    cannot themselves be copyrighted.

21         The copyrighted work must be original.  An

22    original work that closely resembles other works can be

23    copyrighted so long as the similarity between the two works

24    is not the result of copyrighting.

25         Copyright automatically attaches to a work the

1    moment the work is fixed in any tangible medium of
2    expression.  The owner of the copyright may register the
3    copyright by completing a registration form and depositing a
4    copy of the copyrighted work with the Copyright Office.
5    After determining that the material deposited constitutes
6    copyrightable subject matter and that certain legal and
7    formal requirements are satisfied, the Register of the
8    Copyright -- I'm sorry -- the Register of Copyrights
9    registers the work and issues a certificate of registration
10   to the copyright owner.
11           In this case, plaintiff Thunder Studios, Inc.,
12   contends that defendants have infringed on plaintiffs'
13   copyrights.  The plaintiff has the burden of proving by a
14   preponderance of the evidence that the plaintiff is the
15   owner of the copyright and that the copyright and that
16   defendants copied original expression from the copyrighted
17   work.  Preponderance of the evidence means that you must be
18   persuaded by the evidence that it is more probably true than
19   not true that the copyrighted work was infringed.
20           The plaintiffs must also prove that the
21   defendants' use of the copyrighted work was substantial.  In
22   determining whether the defendants' use of the copyrighted
23   work was substantial, you may consider how important the
24   copied portion was to the copyrighted work as a whole.
25           To prove that the defendants copied the

1   plaintiffs' work, the plaintiff may show that the defendants

2   had access to the plaintiffs' copyrighted work and that

3   there are substantial similarities between the defendants'

4   work and the plaintiffs' copyrighted work.

5          One who produces, publicly distributes, publicly

6   and/or prepares derivative works from a copyrighted work

7   without authority from the owner during the term of the

8   copyright infringes the copyright.  Copyright may also be

9   infringed by contributorily or vicariously infringing.

10          A person is liable for copyright infringement by

11   another if the person knows or should have known of the

12   infringing activity and induces or materially contributes to

13   the activity.

14          A person is liable for copyright infringement by

15   another if the person has profited directly from the

16   infringing activity and had the right and ability to

17   supervise or control the infringing activity whether or not

18   the person knew of the infringement.

19          Plaintiff Rodric David has filed a claim for the

20   tort of stalking against defendants.  Defendants are liable

21   for the tort of stalking when the following elements of the

22   tort are proven:

23          (1)  The defendant engaged in a pattern of conduct

24   the intent of which was to follow, alarm, place under

25   surveillance, or harass the plaintiff.  In order to

1    establish this element, the plaintiff shall be required to

2    support his or her allegations with independent

3    corroborating evidence.

4            (2)  As a result of that pattern of conduct,

5    either of the following occurred:

6            (A)  The plaintiff reasonably feared for his

7    safety -- for his or her safety or the safety of an

8    immediate family member.  For purposes of this subparagraph,

9    "immediate family" means a spouse, parent, child, any person

10   related by consanguinity or affinity within the second

11   degree, or any person who regularly resides, or within the

12   six months preceding any portion of the pattern of conduct

13   regularly resided, in the plaintiffs' household.

14           (B)  The plaintiff suffered substantial

15   emotional distress and the pattern of conduct would cause a

16   reasonable person to suffer substantial emotional distress.

17           (3)  One of the following:

18           (A)  The defendant as a part of the pattern

19   of conduct specified in paragraph (1) made a credible threat

20   with either (i) the intent to place the plaintiff in

21   reasonable fear for his safety or the safety of an immediate

22   family member, or (ii) reckless disregard for the safety of

23   the plaintiff or that of an immediate family member.  In

24   addition the plaintiff must have on at least one occasion

25   clearly and definitively demanded that the defendant cease

```
 1   and abate his or her pattern of conduct and the defendant

 2   persisted in his or her pattern of conduct unless exigent

 3   circumstances made the plaintiffs' communication of the

 4   demand impractical or unsafe.

 5                  (B) The defendant violated the restraining

 6   order including, but not limited to, any order issued

 7   pursuant to Section 527.6 of the Code of Civil Procedure

 8   prohibiting any act described in subdivision (a).

 9            You should decide the case as to each party

10   separately.  Unless otherwise stated, the instructions apply

11   to all parties.

12            The evidence you are to consider in deciding what

13   the facts are consists of:

14            1.  The sworn testimony of any witness;

15            2.  The exhibits which are received into evidence;

16            3.  Any facts to which the lawyers have agreed;

17   and

18            4.  Any facts that I may instruct you to accept as

19   proved.

20            In reaching your verdict, you may consider only

21   the testimony and exhibits received into evidence.  Certain

22   things are not evidence, and you may not consider them in

23   deciding what the facts are.  I will list them for you.

24            1.  Arguments and statements by lawyers are not

25   evidence.  The lawyers are not witnesses.  What they may say
```

in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence, but you should not be influenced by the objection or by the Court's ruling on it.

3.  Testimony that is excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose.  When I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4.  Anything you may see or hear when the Court is not in session is not evidence.  You are to decide the case solely on the evidence received at trial.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider

 1  both kinds of evidence.  The law makes no distinction

 2  between the weight to be given to either direct or

 3  circumstantial evidence.  It is for you to decide how much

 4  weight to give any evidence.

 5       There are rules that control what can be received

 6  into evidence.  When a lawyer asks a question or offers an

 7  exhibit into evidence and the lawyer on the other side

 8  thinks that it is not permitted by the rules of evidence,

 9  that lawyer may object.  If I overrule the objection, the

10  question may be answered or the exhibit received.  If I

11  sustain the objection, the question cannot be answered and

12  the exhibit cannot be received.  Whenever I sustain an

13  objection to a question, you must ignore the question and

14  must not guess what the answer might have been.

15       Sometimes I may order that evidence be stricken

16  from the record and that you disregard or ignore the

17  evidence.  That means when you are deciding the case you

18  must not consider the stricken evidence for any purpose.

19       In deciding the facts in this case, you may have

20  to decide which testimony to believe and which testimony not

21  to believe.  You may believe everything a witness says or

22  part of it or none of it.

23       In considering the testimony of any witness, you

24  may take into account:

25       1.  The opportunity and ability of the witness to

1    see or hear or know the things testified to;

2             2.   The witness's memory;

3             3.   The witness's manner while testifying;

4             4.   The witness's interest in the outcome of the

5    case, if any;

6             5.   The witness's bias or prejudice, if any;

7             6.   Whether other evidence contradicted the

8    witness's testimony;

9             7.   Reasonableness of the witness's testimony in

10   light of all the evidence and;

11            8.   Any other factors that bear on believability.

12            Sometimes a witness may say something that is not

13   consistent with something else he or she said.  Sometimes

14   different witnesses will give different versions of what

15   happened.  People often forget things or make mistakes in

16   what they remember.  Also, two people may see the same event

17   but remember it differently.  You may consider these

18   differences but do not decide the testimony is untrue just

19   because it differs from other testimony.

20            However, if you decide that a witness has

21   deliberately testified untruthfully about something

22   important, you may choose not to believe anything that

23   witness said.  On the other hand, if you think the witness

24   testified untruthfully about some things but told the truth

25   about others, you may accept the part you think is true and

```
 1   ignore the rest.
 2            The weight of the evidence as to a fact does not
 3   necessarily depend on the number of witnesses who testify.
 4   What is important is how believable the witnesses are and
 5   how much weight you think their testimony deserves.
 6            I will now say a few words about your conduct as
 7   jurors.
 8            First, keep an open mind throughout the trial and
 9   do not decide what the verdict should be until you and your
10   fellow jurors have completed your deliberations at the end
11   of the case.
12            Second, because you must decide this case based
13   only on the evidence received in the case and on my
14   instructions as to the law that applies, you must not be
15   exposed to any other information about the case or to the
16   issues it involves during the course of your jury duty.
17   Thus, until the end of the case or unless I tell you
18   otherwise:
19            Do not communicate with anyone in any way and do
20   not let anyone else communicate with you in any way about
21   the merits of the case or anything to do with it.  This
22   includes discussing the case in person, in writing, by phone
23   or electronic means, via e-mail, text messaging or any
24   Internet chartroom, blog, Websites or application including,
25   but not limited to, Facebook, YouTube, Twitter, Instagram,
```

```
 1    LinkedIn, Snapchat, or any other forms of social media.

 2    This applies to communicating with your fellow jurors until

 3    I give you the case for your deliberation, and it applies to

 4    communicating with everyone else including your family

 5    members, your employer, the media or press and the people

 6    involved in the trial, although you may notify your family

 7    and your employer that you have been seated as a juror in

 8    the case and how long you expect the trial to last.  But if

 9    you are asked or approached in anyway about your jury

10    service or anything about this case, you must respond that

11    you have been ordered not to discuss the matter and report

12    the contact to the Court.

13           Because you will receive all the evidence and

14    legal instruction you may properly consider to return a

15    verdict, do not read, watch, or listen to any news or media

16    accounts or commentary about the case or anything to do with

17    it, although I have no information to suggest that there

18    will be news reports about this case, but do not do any

19    research such as consulting dictionaries, searching the

20    Internet or using other reference materials and do not make

21    any investigation or in any other way try to learn about

22    this case on your own.  Do not visit or view any place

23    discussed in this case and do not use Internet programs or

24    devices to search for or view any place discussed during the

25    trial.  Also, do not do any research about this case, the
```

```
 1   law, or the people involved, including the parties, the
 2   witnesses, or the lawyers until you have been excused as
 3   jurors.  If you happen to read or hear anything touching on
 4   this case in the media, turn away and report it to me as
 5   soon as possible.
 6           These rules protect each party's rights to have
 7   this case decided only on evidence that has been presented
 8   here in court.  Witnesses here in court take an oath to tell
 9   the truth, and the accuracy of their testimony is tested
10   through the trial process.  If you do any research or
11   investigation outside the courtroom or gain any information
12   through improper communications, then your verdict may be
13   influenced by inaccurate, incomplete, or misleading
14   information that has not been tested by the trial process.
15   Each of the parties is entitled to a fair trial by an
16   impartial jury, and if you decide the case based on
17   information not presented in court, you will have denied the
18   parties a fair trial.  Remember, you have taken an oath to
19   follow the rules, and it is very important that you follow
20   these rules.
21           A juror who violates these restrictions
22   jeopardizes the fairness of these proceedings, and a
23   mistrial could result that would require the entire trial
24   process to start over.  If any juror is exposed to any
25   outside information, please notify the Court immediately.
```

```
 1              I urge you to pay close attention to the trial

 2    testimony as it's given.  During your deliberations you will

 3    not have a transcript of the trial testimony.

 4              If at any time you cannot hear or see the

 5    testimony, evidence, questions, or arguments, please let me

 6    know so that I can correct the problem.

 7              If you wish, you may take notes to help you

 8    remember the evidence.  If you do take notes, please keep

 9    them to yourself until you go to the jury room to decide the

10    case.  Do not let note taking distract you.  When you leave,

11    your notes should be left in the jury room.  No one will

12    read your notes.

13              Whether or not you take notes, you rely on your

14    own memory of the evidence.  Notes are only to assist your

15    memory.  You should not be overly influenced by your notes

16    or those of other jurors.

17              From time to time during the trial, it may become

18    necessary for me to talk to the attorneys out of the hearing

19    of the jury either by having a conference at the bench when

20    the jury is present in the courtroom or by calling a recess.

21    Please understand that while you are waiting, we are

22    working.  The purpose of these conferences is not to keep

23    relevant information from you but to decide how certain

24    evidence is to be treated under the rules of evidence and to

25    avoid confusion and error.
```

```
 1              Of course we will do what we can to keep the

 2      number and the length of conferences to a minimum.  I may

 3      not grant an attorney's request for a conference.  Do not

 4      consider my granting or denying a request for a conference

 5      as any indication of my opinion of the case or of what your

 6      verdict should be.

 7              Trials proceed in the following way:  First, each

 8      side may make an opening statement.  Again, an opening

 9      statement is not evidence.  It is simply an outline to help

10      you understand what that party expects the evidence will

11      show.  A party is not required to make an opening statement.

12              The plaintiff will then present evidence, and

13      counsel for the defendant may cross-examine; then defendant

14      may present evidence, and counsel for plaintiff may

15      cross-examine.

16              After the evidence has been presented, I will

17      instruct you on the law that applies to the case, and the

18      attorneys will make closing arguments.

19              After that you will go to the jury room to

20      deliberate on your verdict.

21              So that concludes the opening jury instructions,

22      and I note it's about 12:06 right now.  So why don't we take

23      our noon recess.  All right?  I am going to ask you to come

24      back at 1:15.  As I mentioned earlier -- I am going to say

25      this again before every time you break:  Please do not form
```

```
 1    or express any opinion about the case until the matter is
 2    finally submitted to you.  Don't talk to anyone about the
 3    case.  Don't allow anyone to talk to you about the case.
 4    And do not conduct any research of any kind on any subject
 5    matter connected with this case.
 6            So we'll see you back at 1:15, and we'll begin at
 7    that point with opening statements and trial testimony.  All
 8    right.  Have a good lunch.
 9            THE CLERK:  All rise for the jury.
10            Please be seated.
11      (The following was heard in open court outside the
12       presence of the jury:)
13            THE COURT:  Why don't I have you all come back at
14    about ten after 1:00 just in case there any preliminary
15    matters we need to discuss.
16            So just be prepared for opening statement if
17    you're going to make one and just have your witnesses ready.
18            I presume you're going to have enough witnesses to
19    fill up the afternoon, Mr. Wiener?
20            MR. WIENER:  We will, Your Honor.
21            THE COURT:  Okay.  All right.  So I'll see you
22    back at ten after 1:00.
23            THE CLERK:  All rise.  This Court is in recess.
24      (Lunch recess taken at 12:08 P.M.)
25                         --oOo--
```

```
 1                        CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  May 1, 2019.

11

12

13

14                     ___/S/ CHIA MEI JUI _____

15                     Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

MR. GEBELIN: [3]
3/12 9/2 17/22
MR. TAYLOR: [55]
3/15 4/9 4/13 5/12
5/24 6/7 6/9 6/15 7/24
8/6 8/11 8/14 9/22
10/13 11/13 13/7
13/11 13/15 15/10
15/17 15/25 16/6
16/17 16/24 17/7
17/12 17/23 18/16
18/22 19/13 19/16
20/6 22/18 22/23
23/10 24/15 24/24
25/1 32/16 67/22 68/1
68/3 68/5 68/9 68/11
69/20 69/25 70/15
70/23 71/6 71/8 71/15
71/18 71/20 72/14
MR. WIENER: [30]
3/8 10/18 10/22 13/18
16/2 19/6 19/17 20/19
21/9 21/17 21/23 22/4
22/9 22/15 22/24 23/2
23/8 23/17 32/8 68/15
69/17 70/3 70/13
70/19 71/2 71/12
72/13 72/17 76/5
91/19
MS. BANI-ESRAILI:
[1] 3/20
PROSPECTIVE
JUROR: [153]
THE CLERK: [10] 3/3
20/8 25/8 25/12 34/17
34/25 74/5 75/6 91/8
91/22
THE COURT: [246]
THE WITNESS: [6]
39/23 42/12 43/2
50/11 64/8 66/25

$

$20 [1] 26/22

-

--oOo [1] 91/25
-and [1] 2/6

1

10 [1] 71/1
100 [1] 1/9
10:13 [1] 25/10
11 [2] 35/9 71/5
11:19 [1] 76/9
11:38 [1] 76/9
12 [2] 28/18 35/10
12:06 right [1] 90/22
12:08 [1] 91/24
13 [1] 35/11
14 [2] 5/21 35/11
15 [4] 35/12 40/13
41/13 74/18
157 [1] 21/4
16 [15] 14/13 14/14
14/17 14/22 14/24
15/4 15/13 15/22

31/10 31/12 31/13
34/17 35/13 70/9
70/11
168 [2] 9/3 9/4
17-0871-AB [3] 1/7
3/4 25/13
1776 [1] 26/20
1880 [1] 2/13
1:00 [1] 91/22
1:00 just [1] 91/14
1:00 o'clock [1] 76/1
1:00 or [1] 75/25
1:15 [1] 90/24 91/6

2

20 [3] 40/13 41/13
74/18
201-7600 [1] 2/14
2013 [1] 45/4
2018 [2] 1/15 3/1
2019 [1] 92/10
24/7 [1] 48/2
28 [1] 92/4
2:00 o'clock [1] 17/11

3

3072 [1] 2/9
310 [2] 2/9 2/14
3287 [2] 1/23 92/15
341-3072 [1] 2/9
350 [1] 1/24
3:00 o'clock [1] 17/9
3:00 on [1] 17/11

4

40-some-odd [1] 59/7
4311 [1] 1/24
487-5607 [1] 2/5
4:30 [1] 28/20
4:30 or [1] 7/16

5

520 [1] 2/8
527.6 [1] 82/7
5607 [1] 2/5
5:00 o'clock [1] 28/20
5:00 P.M [1] 7/16

6

6's [2] 15/23 70/22
609 [1] 2/4

7

714 [1] 2/13
753 [1] 92/3
7600 [1] 2/14
7B [1] 25/15

8

8383 [1] 2/8
8:00 A.M [1] 75/11

9

90012 [1] 1/24
90067 [1] 2/13
90211 [1] 2/8
925 [1] 2/5
94582 [1] 2/4
9:00 A.M [2] 7/17

28/18
9:20 [1] 1/16 3/2
9:40 [1] 20/10
9:52 [1] 20/10
9:59 [1] 25/10

A

AB [3] 1/7 3/4 25/13
abate [1] 82/1
abide [6] 38/4 42/21
44/14 45/18 50/20
52/6
abiding [1] 31/25
ability [6] 39/17 60/6
62/20 66/1 80/16
84/25
able [8] 5/2 5/18 6/23
42/19 44/14 45/17
50/18 52/6
about to [1] 41/5
absolutely [2] 4/14
70/2
absorb [1] 59/6
accept [2] 82/18
85/25
access [1] 80/2
accident [1] 57/19
accidents [1] 60/22
according [1] 74/10
account [1] 84/24
accounts [1] 87/16
accuracy [1] 88/9
accused [4] 23/24
24/4 63/7 69/2
acknowledge [1]
31/24
act [1] 82/8
acting [1] 33/22
activity [4] 80/12
80/13 80/16 80/17
actor [1] 40/3
actors [1] 65/2
ad [1] 74/22
ad nauseam [1] 74/22
ADAM [7] 1/9 3/18
25/22 32/21 33/21
34/8 34/10
Adam Kazal [3] 3/18
32/21 34/8
Adam Swart [1] 34/10
added [1] 5/1
addition [2] 81/24
83/13
address [2] 35/20
35/23
administrative [1]
40/25
administrator [1]
49/21
admissibility [9] 7/23
9/5 9/6 9/14 10/3
10/25 11/24 12/11
14/5
admit [2] 12/15 33/21
admitted [1] 10/12
adult [5] 36/9 40/12
41/2 48/9 51/13
advance [3] 10/2

25/17 73/1
advanced [1] 10/21
advice [1] 59/9
affect [1] 60/6
affinity [1] 81/10
affirmative [4] 34/25
74/12 77/23 77/25
after [12] 11/8 14/18
17/9 20/3 24/17 29/21
42/4 79/5 90/16 90/19
91/14 91/22
afternoon [6] 7/17
16/13 16/23 16/24
17/4 91/19
Afterwards [1] 14/18
again [14] 11/15
11/22 14/24 17/16
19/2 27/10 27/14
29/11 29/17 52/24
62/16 65/25 90/8
90/25
against [10] 19/4
22/23 23/1 53/13
57/10 57/19 58/2 58/7
78/4 80/20
ago [16] 37/17 37/19
40/13 41/11 41/14
44/6 44/7 48/12 48/13
50/2 50/3 50/5 56/13
56/15 57/18 66/17
agree [2] 13/15 77/7
agreed [8] 5/12 5/15
7/20 7/23 9/12 12/12
14/5 82/16
agreement [9] 5/2 5/5
5/17 5/22 5/24 6/23
13/19 13/21 20/23
Ah [1] 64/25
ahead [6] 39/25 43/2
49/19 52/17 58/15
68/3
Aircraft [1] 40/11
airplane [2] 26/7
43/22
al [2] 3/5 25/14
alarm [1] 80/24
Alhambra [1] 46/13
allegations [2] 67/16
81/2
allege [1] 22/2
alleged [2] 45/9 67/8
alleges [3] 21/21 22/7
33/10
allotted [1] 19/8
allow [3] 20/3 74/25
91/3
allowed [1] 76/23
alluded [1] 63/1
alone [1] 25/24
already [2] 23/15
31/17
alternate [4] 43/5
43/24 45/5 45/11
alternates [2] 72/15
72/20
although [4] 50/16
73/15 87/6 87/17
always [5] 15/5 38/21

38/22 61/20 61/20
amended [2] 9/7
11/25
Amendment [1] 26/20
AMR [1] 41/6
analyst [1] 52/19
anchor [1] 26/25
and/or [3] 54/5 60/5
80/6
ANDRÉ [1] 1/3
anesthesia [1] 45/2
ANGELES [1] 1/17
1/24 2/13 3/1
animus [1] 57/10
another [6] 18/21
41/19 66/15 80/11
80/15 83/25
answer [8] 8/25 34/25
36/2 38/12 44/24
74/12 84/14
answered [2] 84/10
84/11
answering [3] 29/14
31/1 31/3
answers [2] 31/4
34/21
anticipate [1] 28/14
Antonello [1] 34/10
anyway [2] 6/21 87/9
apart [1] 19/2
apologize [4] 10/19
20/21 21/11 30/16
appear [1] 54/4
appearances [2] 2/1
3/8
appeared [1] 48/18
60/10
application [1] 86/24
applies [4] 86/14 87/2
87/3 90/17
apply [3] 76/21 77/5
82/10
appreciate [4] 36/3
47/5 49/14 68/20
appreciated [1] 75/15
approach [6] 14/15
24/10 29/15 53/2 66/4
69/11
approached [1] 87/9
approving [1] 39/6
architectural [1]
78/16
area [2] 14/8 35/19
areas [2] 5/21 37/7
aren't [1] 7/13
arguably [1] 12/7
arguments [5] 69/6
82/24 83/1 89/5 90/18
arising [1] 34/2
around [2] 33/13
33/14
articles [2] 11/4 29/25
artist [1] 40/2
aside [4] 42/19 45/18
50/18 52/7
asked [4] 4/4 20/4
52/3 56/23 59/18
72/19 87/9

**A**

asking [7] 9/9 28/22 30/2 39/1 46/6 47/17 56/12
asks [1] 84/6
assaulted [1] 55/12
assemble [2] 72/10 74/15
assembly [11] 73/1 73/3 73/4 73/7 73/8 73/9 73/10 73/11 73/12 75/5 75/13
asserting [1] 20/24
asserts [2] 77/17 77/18
assist [1] 89/14
associate [1] 32/19
assume [6] 3/24 38/18 47/1 50/7 54/2 54/9
assuming [1] 60/9
assumptions [1] 62/17
Atascadero [1] 47/13
attaches [1] 78/25
attention [5] 25/17 26/9 31/14 75/12 89/1
audience [3] 25/24 26/3 75/10
audio [1] 78/16
Australia [8] 11/5 11/10 12/8 12/23 12/24 12/25 18/1 33/14
authenticating [2] 8/8 8/23
authenticity [9] 9/5 9/14 10/3 11/1 11/3 11/15 11/23 12/11 14/5
authority [1] 80/7
automated [1] 45/24
automatically [2] 53/16 78/25
avenues [1] 60/22
avionics [1] 43/20
avoid [4] 8/8 10/25 11/3 89/25
aware [5] 7/4 20/14 22/16 54/18 61/3
away [1] 88/4

**B**

back [29] 17/5 26/15 26/20 28/11 28/16 28/19 55/12 56/7 72/11 73/1 73/2 73/4 73/8 73/9 73/10 73/11 73/12 74/17 74/20 75/5 75/10 75/13 75/21 75/25 76/12 90/24 91/6 91/13 91/22
background [1] 33/4
Bacolod [4] 35/11 50/24 72/7 73/9
bad [4] 26/11 48/17 55/25 72/4

badly [1] 36/20
BANI [3] 2/12 3/22 32/19
BANI-ESRAILI [3] 2/12 3/22 32/19
bank [6] 36/8 37/10 37/12 49/23 50/4 51/11
banners [1] 33/12
Barela [4] 35/9 47/11 72/4 74/1
Barnes [1] 6/7
base [1] 78/1
baseball [1] 41/8
based [7] 25/23 32/2 32/3 59/3 70/9 86/12 88/16
batteries [1] 26/11
Bay [2] 35/20 45/2
Beach [2] 35/21 51/11
bear [1] 85/11
become [2] 43/11 89/17
before [22] 4/1 5/14 7/15 12/18 14/7 14/10 16/5 19/16 24/21 26/12 26/17 30/10 31/19 34/23 36/10 41/24 44/3 45/12 49/25 74/9 77/10 90/25
began [1] 29/23
begin [11] 7/15 17/5 18/22 19/1 19/21 25/7 28/9 72/12 74/17 76/2 91/6
beginning [5] 24/20 24/20 25/19 26/13 27/22
begins [1] 17/4 29/2 32/24
behalf [2] 3/14 3/17
behaviorally [1] 48/2
believability [1] 85/11
believable [1] 86/4
believe [15] 5/16 6/1 6/20 19/7 20/13 20/23 23/14 49/24 67/5 67/9 83/8 84/20 84/21 84/21 85/22
Bellflower [1] 51/21
bench [3] 24/17 59/8 89/19
benefit [1] 26/19
benefits [1] 49/21
BENJAMIN [3] 2/12 3/17 32/18
Benjamin Taylor [2] 3/17 32/18
best [2] 26/23 27/19
better [1] 58/5
between [3] 78/23 80/3 84/2
BEVERLY [1] 2/8
beyond [1] 42/15
bias [1] 85/6
biopharmaceutical [1] 36/5

biotechnology [1] 36/23
BIROTTE [1] 1/3
bit [2] 8/20 61/15
blog [1] 86/24
Blow [1] 12/22
Boe [4] 35/11 51/7 72/7 73/10
book [1] 13/13
boss [1] 30/15
both [13] 5/12 9/19 19/9 21/22 25/6 29/8 48/10 54/7 66/14 67/24 70/13 72/11 84/1
bottom [1] 31/12
BOULEVARD [1] 2/8
box [3] 3/19 35/18 70/10
boyfriend [1] 40/3
bracketed [1] 5/16
brand [1] 39/2
Bratz [2] 6/8 6/9
break [4] 31/21 72/9 74/19 90/25
brief [6] 25/4 67/17 74/14 75/21 76/8 77/16
briefly [1] 4/1
bring [9] 4/1 16/5 16/18 16/23 19/16 19/21 20/4 25/6 72/11
Britain [1] 26/17
brother [5] 66/13 66/20 67/7 67/9 67/15
brother-in-law [4] 66/13 66/20 67/7 67/9
brown [14] 34/9 35/3 38/9 56/8 58/13 61/5 61/6 63/4 63/25 66/6 70/24 70/25 72/6 73/3
bunch [1] 61/12
burden [13] 42/11 42/14 42/20 42/22 44/12 44/15 45/16 50/14 52/3 53/12 77/19 77/22 79/13
burning [1] 49/3
Bush [1] 28/1
business [2] 52/19 65/6
businesses [1] 43/10
busy [4] 38/18 38/21 47/1 47/3
button [1] 29/16

**C**

cable [1] 46/13
Cal [1] 51/15
Cal State [1] 51/15
Calabasas [2] 36/4 36/15
calendar [6] 16/16 16/17 16/22 17/18 28/3 28/12
CALIFORNIA [9] 1/2 1/17 1/24 2/4 2/8 2/13 3/1 33/24 47/13

call [5] 18/15 18/20 31/10 34/17 47/20
called [4] 18/7 31/13 31/16 42/16
calling [4] 3/4 25/13 31/8 89/20
came [1] 27/4
car [1] 57/19
care [2] 48/1 48/1
cases [11] 26/19 28/3 28/4 41/16 41/17 41/22 42/11 42/12 42/14 50/2 50/19
cause [16] 14/16 14/16 14/19 14/20 14/21 14/25 17/7 17/21 34/23 69/14 69/17 69/18 69/20 70/9 74/9 81/15
caveat [2] 17/2 28/6
CCRR [1] 1/23
cease [1] 81/25
cell [2] 26/3 26/10
CENTRAL [1] 1/2
CENTURY [1] 2/13
certain [4] 79/6 82/21 83/15 89/23
certainly [4] 9/25 10/4
certificate [2] 79/9 92/1
certificates [1] 73/5
certify [1] 92/3
cetera [2] 22/9 22/9
challenge [4] 15/23 17/7 30/23 69/25
challenges [14] 14/16 14/16 14/18 14/21 14/25 15/13 17/21 62/19 69/14 69/16 69/18 69/19 69/23 70/9
chance [1] 22/17
change [5] 14/2 21/14 21/20 22/11 22/12
changed [2] 21/6 22/6
changes [3] 22/14 22/20 23/6
chanting [1] 33/13
charges [4] 41/17 55/17 55/18 66/24
CHARIF [9] 1/8 3/5 3/17 3/18 25/14 25/21 32/20 32/20 34/8
Charif Kazal [2] 3/17 34/8
chartroom [1] 86/24
check [2] 19/20 31/15
checked [1] 7/5
chess [1] 19/1
CHIA [3] 1/23 92/14 92/15
Chicago [1] 62/14
chief [2] 7/6 32/11
child [1] 81/9
children [16] 36/9 36/9 38/16 40/4 40/12 41/3 43/4 45/3 45/25 47/9 47/16 48/10

49/22 51/5 51/13 52/20
choose [1] 85/22
choreographic [1] 78/14
circumstances [2] 6/22 82/3
circumstantial [3] 83/21 83/24 84/3
City [1] 40/1
civil [24] 16/16 15/20 27/10 28/3 32/23 32/23 34/2 36/10 37/16 39/9 42/12 42/15 44/13 45/16 49/22 49/24 50/15 50/16 52/4 55/16 55/19 61/8 76/21 82/7
claim [15] 5/2 6/13 20/16 20/25 21/1 53/10 53/13 53/15 53/21 67/12 77/17 77/19 77/22 77/24 80/19
claimed [1] 65/7
claims [10] 20/25 22/22 23/1 33/1 53/6 53/25 54/2 77/20 77/21 78/3
clarify [2] 15/12 19/9
clarifying [1] 16/1
Clarita [1] 35/3
Clark [8] 35/7 45/22 53/23 60/13 64/25 71/22 72/7 73/8
Claudia [1] 35/3
clear [9] 8/17 8/20 16/22 17/16 18/13 22/22 24/21 24/25 71/24
cleared [1] 61/13
clearly [1] 81/25
clerk [2] 19/19 30/13 32/8
client [3] 18/10 18/14 32/8
client's [1] 18/1
clients [1] 32/8
clock [2] 19/1 19/4
close [10] 44/21 53/20 58/11 63/1 63/10 63/13 65/24 68/25 69/1 89/1
closed [2] 7/6 28/1
closely [2] 61/11 78/22
closer [1] 66/9
closest [2] 15/22 31/11
closing [3] 75/21 83/1 90/18
cmjui.csr [1] 1/25
co [2] 32/13 68/10
co-counsel [1] 32/13
co-worker [1] 68/10
COC [1] 41/8
Code [2] 82/7 92/4
college [2] 41/7 48/10
comes [7] 9/10 10/6

## C

comes... [5] 11/20
13/1 14/7 20/1 24/9
comfortable [1] 53/1
coming [8] 14/2 14/4
15/18 29/22 39/6
47/21 69/3 75/15
commentary [1]
87/16
comments [2] 22/14
23/7
commercial [2] 36/24
63/3
common [1] 26/21
communicate [3] 39/4
86/19 86/20
communicating [2]
87/2 87/4
communication [1]
82/3
communications [1]
88/12
community [1] 40/22
companies [2] 38/23
57/24
company [15] 36/5
36/23 37/3 38/15
38/20 38/25 40/19
40/20 43/21 46/13
51/4 52/20 61/12
61/23 66/15
Complaint [3] 32/24
32/24 33/2
completed [1] 86/10
completely [1] 62/3
completing [1] 79/3
components [1] 6/14
composition [1] 70/10
computer [3] 7/21
51/15 78/17
concept [1] 69/7
concepts [1] 39/6
concern [2] 4/18 4/19
concerned [1] 16/11
concerning [1] 33/18
concerns [1] 20/13
concludes [1] 90/21
conclusion [1] 62/9
condolences [1]
61/16
conduct [11] 68/16
75/1 80/23 81/4 81/12
81/15 81/19 82/1 82/2
86/6 91/4
confer [2] 4/4 13/25
conference [5] 5/15
89/19 90/3 90/4 92/8
conferences [2] 89/22
90/2
confirm [2] 12/14
35/16
conformance [1] 92/7
confusing [1] 5/9
confusion [1] 89/25
congratulations [1]
51/17
connected [2] 75/2
91/5

connection [2] 23/25
34/12
consanguinity [1]
81/10
consents [1] 78/19
consider [12] 27/19
79/23 82/12 82/20
82/22 83/15 83/16
83/25 84/18 85/17
87/14 90/4
consideration [1]
76/16
considered [2] 26/24
83/13
considering [1] 84/23
consistent [1] 85/13
consists [1] 82/13
constitutes [1] 79/5
constitution [2] 26/21
27/1
consulting [1] 87/19
consume [1] 8/23
contact [3] 67/7 67/10
87/12
contend [1] 21/5
contends [3] 21/16
33/6 79/12
content [1] 11/1
contention [1] 9/15
contents [3] 8/10 10/6
11/12
continue [3] 15/24
17/19 28/11
continuing [2] 18/13
28/15
contradicted [1] 85/7
contributes [1] 80/12
contributing [1] 38/23
contributorily [1] 80/9
control [2] 80/17 84/5
controls [1] 83/5
controversy [1] 26/22
conversation [1]
29/17
conversations [4]
39/15 59/15 63/19
63/20
coordinator [1] 51/3
copied [3] 79/16
79/24 79/25
copies [2] 19/22 25/6
copy [4] 23/15 75/20
76/14 79/4
copyright [29] 4/20
6/1 20/24 21/2 21/6
21/17 22/23 23/23
33/7 61/13 63/2 63/8
77/18 78/5 78/9 78/12
78/25 79/2 79/3 79/4
79/8 79/10 79/15
79/15 80/8 80/8 80/8
80/10 80/14
copyrightable [1]
79/6
copyrighted [15]
33/20 65/19 78/13
78/20 78/21 78/23
79/4 79/16 79/19

79/21 79/22 79/24
80/2 80/4 80/6
copyrighting [1]
78/24
copyrights [13] 20/17
21/18 24/1 63/6 63/18
63/25 64/17 65/7
65/18 78/4 78/6 79/8
79/13
Corado [3] 35/7 46/9
73/6
corporate [1] 37/13
correctly [1] 44/9
corroborating [1]
81/3
counsel [15] 2/1 3/7
6/2 10/17 24/19 32/13
32/14 32/18 32/22
61/23 62/15 69/6
69/11 90/13 90/14
country [5] 27/3 27/5
27/6 27/12 30/10
county [4] 47/21
49/11 54/11 54/12
couple [8] 3/25 20/11
26/7 36/13 47/2 55/13
66/15 66/17
course [9] 24/9 30/1
30/19 50/22 60/11
60/12 73/6 86/16 90/1
court reporter [6]
4/13 30/22 48/9 48/16
48/21 49/8
Court's [3] 9/24 32/1
83/10
Courtroom 7B [1]
25/15
covered [1] 78/12
crafting [1] 57/3
credible [1] 81/19
criminal [19] 16/16
18/22 28/3 40/13
41/11 42/11 42/14
42/21 43/5 44/12 45/4
45/8 45/19 49/22
49/23 50/14 51/20
55/17 55/18
cross [10] 35/4 39/21
71/8 71/8 71/9 71/10
72/6 73/7 90/13 90/15
cross-examine [2]
90/13 90/15
CSR [2] 1/23 92/15
curious [2] 39/15
48/16
currently [3] 41/5 46/7
47/15
CV [3] 1/7 3/4 25/13

## D

Dabab [1] 34/9
dad [1] 59/19
damages [4] 4/21
6/19 20/17 78/4
dark [3] 7/9 7/11
17/17
Date [1] 92/10
daughter [2] 41/6

51/13
DAVID [16] 1/5 3/10
20/16 21/1 21/21
21/24 22/7 23/1 32/11
33/9 33/17 33/18 34/6
34/7 77/18 80/19
David's [2] 33/15
33/25
day [8] 1/18 3/6 7/5
19/5 27/15 27/25
28/17 29/1
Day 1 [1] 3/6
days [1] 27/21
deal [8] 12/4 12/9 28/4
28/13 30/18 61/16
61/19 63/25
dealing [4] 55/6 57/6
61/22 62/18
dealt [1] 57/23
death [1] 41/19
debate [1] 14/17
DECEMBER [2] 1/15
3/1
decide [15] 27/16
30/7 32/2 77/9 82/9
83/19 84/3 84/20
85/18 85/20 86/9
86/12 88/16 89/9
89/23
decided [2] 27/10
88/7
deciding [5] 62/9
82/12 82/23 84/17
84/19
decision [1] 78/1
deck [1] 14/20
Declaration [1] 26/16
declared [2] 7/5 27/25
defendant [7] 80/23
81/18 81/25 82/1 82/5
90/13 90/13
defendants [28] 1/10
2/10 3/17 3/22 21/5
21/17 21/22 22/3 22/8
22/23 23/2 32/18
32/20 32/25 33/7
33/10 33/19 33/21
33/23 77/21 78/4 78/5
79/12 79/16 79/20
80/1 80/20 80/20
defendants' [3] 79/21
79/22 80/3
defense [1] 18/6
32/16 53/6 53/12
70/23 71/6 71/15
77/23 77/25
definitively [1] 81/25
degree [2] 51/15
81/11
delays [1] 30/16
deleting [1] 21/1
deliberate [6] 17/10
41/25 44/4 49/2 62/8
90/20
deliberately [1] 85/21
deliberating [1] 17/4
deliberation [3] 43/25
50/1 87/3

deliberations [7] 17/6
28/10 28/11 45/12
77/3 86/10 89/2
demand [1] 82/4
demanded [1] 81/25
denied [2] 32/25
88/17
deny [4] 33/19 34/2
77/21 78/5
denying [1] 90/4
department [3] 36/25
37/4 43/13
depend [1] 86/3
depending [2] 74/19
76/1
depends [1] 49/11
deposed [1] 56/20
deposited [1] 79/5
depositing [1] 79/3
deposition [2] 19/9
57/9
depriving [1] 26/19
deputy [3] 23/14
72/10 74/15
derivative [2] 78/11
80/6
described [1] 82/8
deserves [1] 86/5
design [1] 39/3
designed [1] 29/11
desire [1] 49/3
determining [2] 79/5
79/22
device [1] 26/4
devices [1] 87/24
DIANE [3] 2/12 3/22
32/19
dictator [1] 27/7
dictionaries [1] 87/19
differ [1] 83/3
differences [1] 85/18
different [12] 6/13
22/1 38/3 42/11 44/13
45/16 50/15 52/4
60/21 62/3 85/14
85/14
differently [1] 85/17
differs [1] 85/19
difficult [15] 8/24
37/21 54/15 55/5 55/8
56/3 57/10 61/1 61/23
63/20 64/21 65/12
66/16 67/13 67/18
dire [13] 14/11 14/14
19/22 21/13 24/9 25/7
26/15 29/3 29/3 29/18
31/2 31/6 31/22
direct [4] 83/21 83/21
83/22 84/2
directed [1] 68/17
directly [1] 80/15
director [1] 64/13
disagree [1] 69/9
disagreement [2] 4/21
6/19
discoveries [1] 78/19
discuss [14] 4/17 7/2
7/10 14/15 14/17 16/5

**D**

discuss... [8] 19/16
20/12 24/10 49/1 66/1
74/5 87/11 91/15
discussed [4] 4/7
13/4 87/23 87/24
discussing [3] 18/3
53/1 86/22
discussion [2] 4/16
53/3
discussions [1] 4/9
disease [1] 37/5
dislikes [1] 77/8
dismissed [2] 41/24
42/4
Disney [4] 64/6 64/11
64/13 64/16
displaying [1] 78/11
disputing [2] 11/3
56/4
disregard [3] 81/22
83/12 84/16
distillery [1] 40/4
distinction [1] 84/1
distract [1] 89/10
distress [2] 81/15
81/16
distributes [1] 80/5
distributing [1] 78/10
DISTRICT [3] 1/1 1/2
1/3
DIVISION [1] 1/2
docket [2] 4/6 21/14
Docket 157 [1] 21/4
document [3] 8/9 9/3
11/20
Document 168 [1] 9/3
documents [1] 12/5
doubt [1] 42/15
down [10] 10/21 23/5
26/6 27/16 29/21 30/2
31/5 45/4 46/17 49/10
downstairs [2] 19/20
73/5
downtown [1] 29/22
drain [1] 26/11
dramatic [1] 78/14
driving [2] 33/13 68/7
drove [1] 68/8
drugs [2] 37/7 51/22
during [13] 21/13 24/9
30/18 30/25 31/1
31/21 62/1 78/8 80/7
86/16 87/24 89/2
89/17
duty [6] 27/17 27/17
76/19 77/4 83/7 86/16

**E**

e-mail [1] 86/23
each [10] 15/1 19/3
19/5 19/6 19/8 24/24
82/9 88/6 88/15 90/7
earlier [8] 27/17 30/5
44/11 50/14 63/1 76/1
76/18 90/24
early [1] 75/23
EAST [1] 2/13

Edgard [1] 35/7
editing [2] 23/12 25/5
education [1] 63/2
effect [1] 7/22
efficient [2] 31/17
43/11
eight [17] 14/22 14/23
15/1 15/2 15/4 15/7
15/14 19/3 24/18
24/20 24/23 56/14
70/7 70/11 71/17
72/16 73/15
either [31] 7/2 14/13
15/9 17/22 20/5 26/3
37/22 39/17 42/8
47/21 47/22 54/16
55/8 57/11 58/7 60/7
61/1 61/24 62/21
63/21 64/22 65/12
67/7 67/14 67/18
67/22 69/14 81/5
81/20 84/2 89/19
Elakabawi [6] 35/6
44/19 54/21 70/1
72/6 73/2
elation [1] 29/21
election [1] 58/25
electronic [1] 86/23
element [1] 81/1
elementary [1] 46/7
elements [1] 80/21
Elizabeth [1] 34/7
Elizabeth David [1]
34/7
else's [1] 63/8
emails [1] 33/16
Emanuel [1] 6/1
embarrass [2] 29/11
Emily [1] 35/10
emotional [2] 81/15
81/16
emphasize [1] 27/14
employed [2] 63/10
64/3
employee [1] 66/15
employer [2] 87/5
87/7
EMT [1] 41/6
encourage [1] 18/12
encourages [1] 9/25
end [9] 15/22 19/5
28/5 28/15 60/22 67/1
77/1 86/10 86/17
ended [3] 6/2 56/11
57/20
energy [2] 43/11
43/12
engage [1] 30/12
engaged [1] 80/23
engineering [1] 51/15
enough [2] 44/21
91/18
ensuing [2] 4/16 4/25
entertainment [5]
24/1 43/21 63/11 64/4
65/3
entire [3] 14/13 14/17
88/23

entitled [2] 88/15 92/6
envision [1] 8/6
equally [2] 19/11
30/20
equipment [1] 45/25
error [1] 89/25
ESRAILI [3] 2/12 3/22
32/19
establish [1] 81/1
estimate [3] 27/20
27/21 27/22
evacuate [1] 36/16
even [5] 7/7 11/15
31/1 31/24 69/8
evening [4] 7/1 7/2
16/9 28/10
evenings [1] 77/1
event [1] 85/16
eventually [1] 67/1
Eviction [1] 54/2
evidence [68] 8/4 8/5
32/2 32/25 42/16 52/5
53/7 53/10 62/8 69/5
74/11 76/16 76/22
77/5 77/10 77/14
77/15 77/23 77/24
79/18 81/3 82/12
82/15 82/21 82/22
82/25 83/2 83/3 83/7
83/9 83/12 83/13
83/15 83/16 83/19
83/20 83/21 83/22
83/24 84/1 84/3 84/4
84/6 84/7 84/8 84/15
84/17 84/18 85/7
85/10 86/2 86/13
87/13 88/7 89/5 89/8
89/14 89/24 89/24
90/9 90/10 90/12
90/14 90/16
exactly [1] 15/20
24/21 47/19
examine [2] 90/13
90/15
example [3] 11/4 11/8
31/21
exceed [1] 26/22
exclude [1] 78/9
excluded [1] 83/11
excuse [2] 17/11 72/5
excused [3] 45/11
75/19 88/2
executive [1] 63/11
exercise [2] 15/1 15/3
exercised [2] 15/6
15/13
exhibits [21] 7/19
7/23 8/5 8/18 8/23 9/6
9/14 9/20 10/3 11/24
12/12 12/15 13/4
13/13 13/14 14/1 14/4
14/6 30/16 82/15
82/21
exigent [1] 82/2
expect [2] 18/6 87/8
expected [1] 28/10
expects [1] 90/10

Experian [1] 51/13
experience [20] 23/23
37/21 51/20 51/25
54/14 55/4 55/6 57/6
57/11 58/5 59/4 59/5
59/7 60/5 60/25 61/17
61/22 63/2 66/12
66/19
experienced [1] 67/15
explain [6] 42/17 52/5
53/7 74/1 74/15 78/7
exposed [2] 86/15
88/24
express [3] 27/2
74/23 91/1
expressed [1] 6/3
expression [2] 79/2
79/16
extent [4] 7/11 7/12
18/4 51/24
extortion [1] 44/10

**F**

Facebook [1] 86/25
facility [1] 47/25
fact [10] 24/23 29/21
33/2 54/14 56/2 58/24
67/15 83/22 83/25
86/2
factors [1] 85/11
facts [11] 67/14 77/4
77/5 78/18 82/13
82/16 82/18 82/23
83/3 83/24 84/19
fair [19] 10/13 10/14
29/12 29/19 37/21
39/17 54/16 55/8 60/7
61/1 61/24 62/20
63/21 64/21 65/12
67/13 67/18 88/15
88/18
fairness [1] 88/22
fall [2] 49/25 50/11
family [17] 24/3 27/4
36/15 58/11 63/1
63/10 64/3 65/1 65/24
68/25 69/2 81/8 81/9
81/22 81/23 87/4 87/6
faster [2] 28/7 28/9
father [5] 58/16 58/22
59/4 59/4 59/16
FCRR [1] 1/23
fear [1] 81/21
feared [1] 81/6
featuring [1] 33/11
federal [7] 1/23 10/17
11/4 11/9 12/7 16/10
50/8
feel [5] 29/13 35/22
38/23 53/1 73/4
fellow [3] 62/8 86/10
87/2
female [1] 41/20
few [5] 5/1 23/13
23/19 63/13 86/6
fighter [1] 46/23
figure [2] 13/14 14/6
filed [15] 4/6 5/14 7/19

7/22 7/25 33/2 53/13
53/16 53/20 55/17
55/19 57/19 58/2
66/24 80/19
fill [3] 14/22 15/4
91/19
filled [1] 15/14
final [6] 5/14 5/18
16/13 16/20 77/2 77/2
finally [2] 74/24 91/2
financial [1] 30/4
find [7] 9/2 12/14
18/18 29/11 45/12
77/4 83/25
fine [7] 17/13 17/15
17/15 17/23 19/12
19/12 19/14
fines [1] 40/23
finish [1] 76/2
fire [1] 46/23
fired [1] 66/14
fires [1] 36/15
FIRM [1] 2/11
first [27] 1/24 4/3
12/19 14/22 14/23
15/1 15/2 15/3 15/7
15/14 24/17 31/10
34/17 36/14 44/2
46/14 53/4 55/21
58/19 65/8 69/24 70/7
70/18 71/17 72/16
86/8 90/7
five [2] 44/7 50/3
fixed [1] 79/1
flashbacks [1] 58/6
flexibility [1] 18/18
flown [1] 18/1
folks [2] 36/19 75/9
follow [7] 36/14 69/8
77/6 77/15 80/24
88/19 88/19
follow-up [1] 36/14
followed [2] 68/7 68/8
following [14] 25/11
66/5 68/21 69/12 72/5
72/22 73/20 75/16
76/10 80/21 81/5
81/17 90/7 91/11
follows [1] 29/2
force [1] 27/7
foregoing [1] 92/4
foreign [1] 12/5
Forest [1] 46/23
forget [1] 85/15
forgotten [1] 52/10
form [16] 4/5 4/16
4/20 4/22 5/4 5/8 5/12
5/14 5/18 6/2 6/11
27/6 68/6 74/23 79/3
90/25
formal [1] 79/7
format [1] 92/7
former [1] 13/24
forms [1] 87/1
forward [1] 3/7
foundation [5] 8/3
8/11 8/12 9/17 10/10
foundational [2] 10/7

## F

**foundational... [1]** 53/5
**four [6]** 9/11 27/21 44/7 50/3 50/4 50/6
**frankly [1]** 27/11
**free [1]** 73/4
**French [1]** 29/3
**Friday [15]** 16/12 16/16 16/17 16/21 16/22 16/23 16/24 17/2 17/5 17/9 17/11 17/12 17/18 28/2 28/11
**Fridays [1]** 28/4
**friend [1]** 69/1
**friend's [1]** 55/13
**friends [10]** 53/20 58/11 61/18 63/1 63/10 63/13 63/16 64/3 65/24 68/25
**front [5]** 11/21 35/16 60/10 68/9 76/13
**Fullerton [1]** 51/15
**fully [1]** 5/15
**further [10]** 4/17 4/25 5/3 19/16 22/2 22/7 22/20 25/4 33/9 53/3

## G

**Gabriel [1]** 47/8
**gain [1]** 88/11
**gate [1]** 9/13
**gave [3]** 19/2 24/24 37/25
**GEBELIN [4]** 2/7 2/7 3/14 32/13
**general [3]** 6/18 19/23 35/17
**generally [2]** 44/15 65/6
**generated [1]** 65/8
**gentlemen [3]** 34/20 73/14 74/8
**George [1]** 28/1
**gets [1]** 12/18
**getting [3]** 17/14 18/17 51/18
**Ghalo [1]** 34/10
**gift [1]** 73/5
**gist [1]** 53/8
**give [19]** 21/12 23/16 24/7 25/18 28/23 31/4 33/4 35/23 38/4 44/15 72/10 74/17 77/1 77/6 77/6 77/15 84/4 85/14 87/3
**given [6]** 8/21 23/15 31/19 38/19 84/2 89/2
**gives [1]** 40/21
**glad [3]** 8/15 16/19 36/20
**gmail.com [1]** 1/25
**God [2]** 34/24 74/11
**goes [1]** 26/15
**golden [1]** 73/17
**gone [3]** 16/20 55/22 55/24

**good [53]** 3/9 3/12 3/13 3/15 3/16 3/20 3/21 3/23 6/12 13/22 25/2 26/5 30/6 32/17 35/25 36/1 36/17 36/18 37/24 38/8 38/10 38/11 39/23 39/24 40/8 40/9 43/2 44/24 45/1 45/22 45/23 46/11 46/12 46/21 46/22 47/6 47/7 47/11 47/12 48/6 48/7 48/14 48/17 49/17 49/18 51/1 51/2 51/9 51/10 52/11 52/15 52/16 91/8
**govern [1]** 77/3
**government [2]** 26/25 27/6
**grab [1]** 70/1
**gracious [1]** 24/23
**grade [1]** 46/5
**graduated [1]** 51/14
**grant [1]** 90/3
**granting [1]** 90/4
**graphic [1]** 78/15
**great [23]** 26/17 27/12 34/15 35/18 36/13 39/20 40/6 41/9 42/24 44/18 44/23 45/21 46/8 46/16 46/20 47/10 49/13 50/23 56/6 57/13 58/9 62/23 63/24
**Great Britain [1]** 26/17
**greatly [1]** 75/15
**gross [1]** 62/17
**group [5]** 29/6 30/9 52/22 53/19 70/11
**groups [1]** 24/8
**guess [8]** 5/23 8/24 14/8 40/20 60/21 61/15 61/21 84/14
**guide [1]** 76/16
**guilty [1]** 45/14
**guy [1]** 54/25
**gymnastics [1]** 40/2

## H

**Haiti [1]** 27/5
**hallway [1]** 31/23
**Hammond [1]** 34/8
**hand [9]** 13/13 23/21 26/1 34/14 34/19 52/24 56/8 74/7 85/23
**handle [2]** 8/17 28/12
**hands [13]** 26/1 26/5 34/15 40/20 53/17 54/20 61/4 63/9 65/18 65/23 69/3 69/17 69/10
**hands-on [1]** 40/20
**handwriting [1]** 72/4
**hanging [1]** 33/12
**happen [5]** 18/6 18/8 30/16 31/22 88/3
**happened [4]** 4/9 66/17 68/13 85/15

**harass [1]** 80/25
**harassment [1]** 67/16
**harbor [1]** 57/10
**hard [1]** 69/6
**hardest [1]** 30/21
**hardship [1]** 30/5
**harmless [2]** 23/20 23/21
**hate [1]** 58/6
**having [6]** 8/8 11/18 21/1 51/17 61/16 89/19
**he's [3]** 46/14 55/14 58/22
**head [2]** 31/5 37/13
**healthcare [1]** 52/19
**hear [14]** 4/13 16/19 32/3 36/20 55/21 66/7 66/18 69/5 74/22 78/7 83/18 85/1 88/3 89/4
**heard [18]** 4/8 20/2 24/2 25/11 25/25 38/5 45/19 50/19 52/8 62/17 65/21 67/16 68/21 72/22 75/16 76/10 83/23 91/11
**hearing [4]** 11/8 12/4 67/14 89/18
**heartburn [2]** 12/17 69/9
**held [4]** 26/25 66/5 69/12 92/6
**Hello [1]** 43/1
**help [16]** 27/16 30/7 34/23 37/6 43/8 43/10 43/13 74/11 76/16 76/21 76/22 77/15 78/6 83/2 89/7 90/9
**hereby [1]** 92/3
**HILLS [1]** 2/8
**hired [1]** 41/5
**history [2]** 26/17 26/18
**hold [2]** 9/1 58/7
**holding [1]** 33/12
**holiday [3]** 16/10 22/24 75/14
**holidays [1]** 64/8
**Hollywood [1]** 49/20
**home [7]** 40/15 43/17 46/3 55/13 55/14 69/3 76/25
**honest [2]** 29/7 63/23
**Hong [1]** 39/4
**Hong Kong [1]** 39/4
**Honor's [1]** 4/19
**HONORABLE [1]** 1/3
**honored [1]** 25/16
**hope [6]** 7/14 28/4 28/25 36/14 55/22 62/16
**hopefully [2]** 7/15 37/23
**hospital [2]** 47/14 47/19
**hour [2]** 28/19 74/19
**hours [4]** 19/3 19/8 24/18 24/24

**house [5]** 30/14 61/23 62/15 62/18 68/69
**household [1]** 81/13
**However [1]** 85/20
**huh [1]** 68/1
**hundred [1]** 8/16
**hurt [1]** 55/25
**husband [4]** 38/16 39/7 61/7 67/25

## I

**I'd [1]** 53/2
**I.T [1]** 51/12
**idea [1]** 8/19
**ideas [1]** 78/18
**ignore [4]** 38/5 84/13 84/16 86/1
**ii [1]** 81/22
**illustrious [1]** 30/9
**images [1]** 21/2
**imagined [1]** 26/25
**immediate [4]** 81/8 81/9 81/21 81/23
**immediately [1]** 88/25
**impact [2]** 39/16 62/20
**impacted [2]** 36/15 36/20
**impartial [12]** 29/12 29/19 37/22 39/17 54/16 55/8 61/1 62/20 65/12 67/14 67/18 88/16
**implement [1]** 43/12
**import [1]** 11/18
**important [18]** 26/14 27/2 27/3 27/14 27/16 28/5 29/6 30/3 30/6 30/7 30/12 30/20 31/3 32/1 79/23 85/22 86/4 88/19
**imposed [1]** 8/20
**impractical [1]** 82/4
**impromptu [1]** 16/10
**improper [2]** 83/8 88/12
**in 2013 [1]** 45/4
**in-house [3]** 61/23 62/15 62/18
**inaccurate [1]** 88/13
**inasmuch [1]** 17/8
**INC [9]** 1/5 3/5 3/11 25/14 32/10 32/12 77/17 78/3 79/11
**incentivizes [1]** 43/13
**include [1]** 6/17
**includes [2]** 6/13 86/22
**including [5]** 10/2 82/6 86/24 87/4 88/1
**inclusion [1]** 6/19
**INCLUSIVE [1]** 1/9
**incompetent [1]** 47/22
**incomplete [1]** 80/9
**inconsistent [1]** 11/23
**incorrect [3]** 21/14 22/4 22/5
**Independence [1]**

**26/16**
**independent [3]** 49/9 49/12 81/2
**indicates [1]** 26/21
**indicating [1]** 7/20
**indication [1]** 90/5
**Indies [1]** 27/5
**individuals [3]** 28/22 29/5 30/9
**induces [1]** 80/12
**industry [4]** 24/1 63/11 64/4 65/4
**infamous [1]** 27/7
**infant [1]** 41/19
**inflight [1]** 43/21
**influenced [4]** 77/8 83/9 88/13 89/15
**information [8]** 29/9 86/15 87/17 88/11 88/14 88/17 88/25 89/23
**infractions [1]** 40/21
**infringed [7]** 21/6 21/17 21/18 33/7 79/12 79/19 80/9
**infringement [7]** 20/24 23/25 77/18 78/5 80/10 80/14 80/18
**infringes [1]** 80/8
**infringing [6]** 63/7 78/5 80/9 80/12 80/16 80/17
**initial [1]** 4/18
**injuries [1]** 26/18
**injury [1]** 36/12
**inside [1]** 32/3
**insights [1]** 39/16
**Instagram [1]** 86/25
**instruct [4]** 76/19 82/18 83/14 90/17
**instructed [1]** 83/12
**instructing [1]** 74/17
**instruction [6]** 20/15 20/19 21/7 33/22 50/17 87/14
**instructions [41]** 20/14 22/13 22/15 22/18 23/8 23/13 25/5 38/1 38/2 38/4 42/7 42/19 42/21 44/2 44/14 45/18 45/18 49/1 50/19 50/20 52/7 69/5 72/11 72/12 74/11 74/18 75/20 75/22 75/22 76/2 76/14 76/15 76/20 76/24 77/2 77/3 77/12 82/10 86/14 90/21
**instructor [1]** 40/2
**insurance [1]** 57/24
**intellectual [2]** 23/23 63/3
**intend [1]** 13/3
**intended [2]** 10/24 83/2
**intending [1]** 12/15

**I**

intent [3] 11/3 80/24 81/20
intention [4] 10/5 13/10 13/16 13/18
interactions [1] 32/3
interest [1] 85/4
internal [2] 62/15 62/18
Internet [5] 29/23 65/20 86/24 87/20 87/23
interpret [1] 83/2
interrogatories [4] 5/1 6/12 6/17 56/24
interrupt [1] 22/22
introduce [6] 10/10 13/4 30/11 32/6 32/8 32/16
introduced [3] 9/18 11/2 34/13
investigation [2] 87/21 88/11
investigator [1] 33/24
invited [1] 55/14
involved [5] 63/17 64/16 67/4 87/6 88/1
involves [2] 67/12 86/16
involving [1] 67/16
iron [1] 5/17
island [1] 27/5
Israel [1] 34/9
Israel Lacey [1] 34/9
issue [17] 7/3 12/3 13/2 13/3 16/8 16/12 16/17 16/23 17/24 18/10 18/19 20/2 20/18 21/2 24/16 53/11 66/1
issued [1] 82/6
issues [10] 5/5 7/12 8/22 20/21 23/21 30/18 56/4 69/9 79/9 86/16
item [2] 5/12 39/5

**J**

jail [2] 27/9 47/21
Jamie [1] 34/9
Jamie Brown [1] 34/9
January [1] 55/13
Jean [1] 34/10
Jean Ghalo [1] 34/10
Jefferson [1] 26/13
jeopardizes [1] 88/22
Jim [1] 58/10
job [3] 30/21 56/9 66/14
Joe [2] 12/22 34/9
Joe Dabab [1] 34/9
John [1] 35/7
join [1] 30/9
joint [6] 5/3 5/7 5/11 11/25 21/4 21/7
jointly [1] 4/23
joking [1] 30/1
Jonathan [1] 35/9

Joseph [1] 35/5
JR [1] 1/3
judge [10] 1/3 7/6 37/25 42/7 44/3 48/19 49/5 58/16 58/22 60/10
judges [1] 60/5
judicial [2] 26/14 55/7 92/8
Judy [1] 35/8
JUI [3] 1/23 92/14 92/15
Julie [1] 35/2
jumping [1] 29/21
Junior [1] 64/13
juror [18] 29/10 29/12 29/19 29/20 50/21 71/25 71/25 72/1 72/1 72/2 72/2 72/3 72/3 73/21 73/22 87/7 88/21 88/24
Juror Number 1 [2] 71/25 73/21
Juror Number 2 [1] 71/25
Juror Number 3 [1] 72/1
Juror Number 4 [1] 72/1
Juror Number 5 [1] 72/2
Juror Number 6 [1] 72/2
Juror Number 7 [1] 72/3
Juror Number 8 [1] 72/3
jurors [43] 5/9 14/13 14/14 14/19 14/22 14/22 15/5 15/7 15/7 19/20 19/24 20/2 20/6 21/13 23/16 24/11 25/7 25/12 28/8 30/17 32/2 34/16 34/22 34/25 42/1 50/18 62/9 68/22 70/8 71/24 72/6 72/8 72/10 72/23 73/18 74/3 74/12 75/23 86/7 86/10 87/2 88/3 89/16
Jurors 9 [1] 14/22
jurors or [1] 42/1
justice [3] 27/11 27/19 30/6

**K**

Kaddo [13] 35/10 49/15 49/15 49/16 49/17 57/15 57/15 57/16 57/17 58/14 71/23 72/3 74/2 Kaiser [1] 45/2
Kaley [1] 35/4
KARINA [1] 2/4
KAZAL [21] 1/8 1/8 1/9 3/5 3/17 3/18 3/18 3/18 24/2 25/14 25/21 25/22 25/22 32/20

32/21 32/21 32/21 33/21 34/8 34/8 34/8
kazalfamilystory.com [1] 65/23
keep [9] 26/12 31/6 62/7 69/4 76/23 86/8 89/8 89/22 90/1
keeper [1] 30/14
keeps [1] 30/15
kid [1] 46/14
kidding [4] 43/8 64/8 73/6 75/11
kidnapping [1] 41/19
kids [3] 38/22 46/24 51/18
Kim [9] 35/2 35/25 61/5 62/12 63/4 63/12 71/25 73/20 73/21
kind [8] 39/3 39/4 44/8 45/6 53/21 63/19 75/2 91/4
kinds [2] 37/5 84/1
king [1] 26/17
knew [1] 80/18
knock [1] 72/16
knowledge [3] 23/11 33/23 59/6
known [6] 26/15 27/7 29/3 53/6 56/24 80/11
knows [2] 49/6 80/11
Kolesa [1] 34/7
Kong [1] 39/4
Korean [1] 51/3

**L**

L.A [1] 49/10
La [1] 48/8
La Verne [1] 48/8
Lacey [1] 34/9
lack [1] 58/5
ladies [3] 34/20 73/14 74/8
LADWP [1] 43/4 43/7 43/9
laid [2] 4/20 4/21
Lakewood [1] 51/3
Lancaster [4] 40/10 40/17 41/7 55/20
LAPD [1] 41/6
last [11] 4/3 4/15 5/12 14/8 16/9 29/1 45/3 47/1 52/12 71/12 87/8
lastly [1] 69/8
late [1] 16/9
later [2] 20/22 74/1
latter [3] 13/8 13/20 13/22
law [25] 2/3 2/3 2/7 2/11 2/12 2/12 23/24 26/21 38/1 60/18 62/14 63/3 64/5 66/13 66/20 67/7 67/9 69/8 76/19 77/5 77/6 84/1 86/14 88/1 90/17
lawsuit [7] 53/18 53/21 55/14 55/16 55/19 56/10 57/19
lawsuits [1] 66/25

lawyer [5] 60/15 62/2 84/6 84/7 84/9
lawyer's [1] 62/3
lawyers [20] 31/22 48/17 55/20 57/2 57/7 57/7 58/1 58/6 59/19 60/5 61/17 62/4 62/18 66/7 82/16 82/24 82/25 83/4 83/6 88/2
lay [4] 8/3 9/17 10/10 23/16
leads [1] 7/3
learn [1] 87/21
learned [1] 59/12
least [8] 4/18 10/5 12/1 12/10 13/1 52/12 52/12 81/24
leave [4] 14/6 73/4 76/25 89/10
lectern [4] 4/11 10/20 19/3 24/19
left [4] 24/17 30/22 32/11 89/11
legal [5] 58/11 61/11 78/7 79/6 87/14
lending [1] 37/14
length [1] 90/2
LESOWITZ [1] 2/7
let [24] 4/2 7/12 10/15 13/25 14/3 16/15 17/1 19/5 21/15 21/20 28/7 30/11 43/7 44/19 48/15 53/2 56/9 59/3 69/11 73/13 75/23 86/20 89/5 89/10
liability [1] 34/2
liable [9] 21/22 22/3 22/8 33/3 33/10 53/16 80/10 80/14 80/20
life [3] 30/4 48/20 59/5
light [1] 85/10
like [18] 4/8 8/17 9/8 12/4 27/16 30/7 30/7 38/23 40/22 40/23 41/5 41/14 49/4 53/2 59/20 62/2 64/13 68/14
likes [1] 48/23
limitations [1] 54/1
limited [4] 82/6 83/14 83/15 86/25
limits [1] 18/25
LinkedIn [1] 87/1
list [3] 9/7 11/25 82/23
listed [1] 9/6
listen [5] 42/21 50/20 62/8 76/22 87/15
literally [2] 27/8 29/4
literary [1] 78/13
litigant [2] 54/15 55/7
litigation [5] 56/2 59/25 61/9 63/17 64/16
litigious [1] 53/19
little [8] 7/21 8/19 26/2 36/22 61/15 63/12 66/8 76/1
live [13] 36/4 38/14

40/10 45/1 45/23 46/12 46/23 47/7 47/13 48/7 49/20 51/10 52/18
lives [2] 28/23 30/3
Lockheed [2] 40/11 42/5
Lockheed Martin [1] 42/5
logistics [1] 47/8
Lompoc [1] 45/24
long [14] 18/9 37/17 41/11 44/6 48/12 50/2 51/11 51/22 56/12 58/22 58/23 60/1 78/23 87/8
Long Beach [1] 51/11
look [6] 9/16 12/4 22/18 23/14 23/19 30/1
looking [1] 51/16
looks [1] 41/5
LOS [4] 1/17 1/24 2/13 3/1
lot [8] 6/13 8/8 8/23 10/21 12/17 30/2 36/19 59/4
loved [1] 60/10
Lu [4] 35/8 47/6 71/25 73/21
Luis [1] 35/8
lunch [6] 26/12 28/19 74/20 75/24 91/8 91/24

**M**

Maaske [7] 35/10 48/4 48/5 48/6 71/11 72/1 73/22
Macoute [1] 27/8
made [5] 20/14 66/16 67/7 81/19 82/3
mail [1] 86/23
maintenance [1] 51/3
major [1] 48/22
make [39] 12/20 15/9 18/5 19/20 21/14 21/15 21/20 26/8 29/8 31/4 31/15 31/16 34/21 35/22 37/21 54/15 55/5 55/7 56/3 57/9 58/5 60/25 61/13 61/23 63/20 64/21 65/11 69/15 70/8 70/13 73/13 73/16 75/12 85/15 87/20 90/8 90/11 90/18 91/17
makes [2] 15/11 27/18 43/21 84/1
making [5] 22/22 23/1 33/17 39/5 62/16
man [1] 26/25
manage [1] 40/2
manager [3] 39/2 43/20 51/12
managing [1] 36/25
manner [2] 11/6 85/3

**M**

**many [4]** 26/2 26/19 51/11 57/18
**Marine [1]** 48/8
**Mark [1]** 34/9
**Mark Woodward [1]** 34/9
**marketing [1]** 38/15
**marks [1]** 30/15
**married [10]** 36/5 38/15 40/12 43/4 43/16 45/25 47/14 48/9 51/12 58/12
**Martin [2]** 40/11 42/5
**material [2]** 33/20 79/5
**materially [1]** 80/12
**materials [1]** 87/20
**matter [17]** 7/2 21/1 25/20 25/21 28/5 49/1 56/16 56/18 56/20 56/25 74/24 75/2 79/6 87/11 91/1 91/5 92/6
**matters [6]** 20/12 27/10 27/16 30/7 65/2 91/15
**Matthew [1]** 34/7
**Matthew Price [1]** 34/7
**maximize [2]** 28/21 28/24
**maybe [5]** 8/19 9/21 12/5 45/4 75/25
**mean [12]** 9/9 9/10 9/10 9/11 11/16 12/1 47/19 48/22 55/5 61/18 66/8 67/24
**means [9]** 11/20 12/6 42/17 77/9 77/24 79/17 81/9 84/17 86/23
**meant [1]** 9/1
**meantime [1]** 19/22
**media [5]** 33/9 87/1 87/5 87/15 88/4
**medically [1]** 48/2
**medium [1]** 79/1
**meet [2]** 4/4 13/25
**meeting [2]** 12/21 58/22
**MEI [3]** 1/23 92/14 92/15
**member [3]** 81/8 81/22 81/23
**members [4]** 65/1 65/24 75/19 87/5
**memory [7]** 4/22 6/6 41/16 83/4 85/2 89/14 89/15
**mental [1]** 31/15
**mention [1]** 16/13
**mentioned [8]** 16/8 26/13 30/5 34/12 41/10 44/11 76/18 90/24
**merits [1]** 86/21
**messaging [1]** 86/23
**met [2]** 4/7 30/13

**methods [1]** 78/19
**mic [1]** 58/14
**Michael [2]** 34/8 35/11
**Michael Hammond [1]** 34/8
**microphone [7]** 35/15 46/17 52/24 53/22 53/22 66/9 69/16
**Mid [1]** 40/1
**Mid-City [1]** 40/1
**middle [1]** 27/9
**might [9]** 31/15 39/16 58/5 59/17 59/18 60/6 60/25 64/21 84/14
**mind [13]** 20/1 23/13 31/6 31/17 36/22 39/1 46/5 47/17 56/12 62/7 66/11 69/4 86/8
**minds [1]** 12/21
**mine [1]** 61/18
**minimum [1]** 90/2
**minor [2]** 45/25 47/16
**minute [2]** 75/4 76/8
**minutes [2]** 30/15 74/19
**misleading [1]** 88/13
**Miss [39]** 38/9 39/21 47/6 49/15 49/17 52/13 53/23 56/8 57/15 58/13 58/14 59/23 61/5 61/5 61/6 62/12 63/4 63/4 63/12 63/25 66/6 70/24 70/25 71/8 71/10 71/23 71/25 71/25 72/3 72/6 72/6 72/7 73/3 73/7 73/12 73/20 73/21 73/21 74/2
**Miss Brown [8]** 56/8 58/13 61/5 61/6 66/6 70/24 70/25 73/3
**Miss Cross [1]** 73/7
**Miss Kaddo [6]** 49/17 57/15 58/14 71/23 72/3 74/2
**Miss Kim [7]** 61/5 62/12 63/4 63/12 71/25 73/20 73/21
**Miss Lu [3]** 47/6 71/25 73/21
**Miss Teroganesyan [4]** 52/13 59/23 72/7 73/12
**missed [1]** 58/10
**mistakes [1]** 85/15
**mistrial [1]** 88/23
**misunderstood [1]** 5/20
**mobile [1]** 26/3
**mode [1]** 26/7
**molestation [1]** 41/18
**moment [3]** 39/10 70/2 79/1
**moments [2]** 23/13 23/19
**Monday [4]** 17/18 28/5 28/16 29/1
**Monica [1]** 38/14

**month [1]** 4/15
**months [2]** 66/17 81/12
**more [8]** 31/17 36/22 61/15 63/12 65/6 77/25 79/18 83/24
**morning [47]** 3/9 3/12 3/13 3/15 3/16 3/20 3/21 3/23 7/14 16/22 17/5 24/14 32/17 34/14 35/25 36/1 38/10 38/11 39/23 39/24 40/8 40/9 43/2 44/24 45/1 45/22 45/23 46/11 46/12 46/21 46/22 47/6 47/7 47/11 47/12 48/6 48/7 49/17 49/18 51/1 51/2 51/9 51/10 52/15 52/16 74/16 75/11
**mostly [2]** 49/10 54/9
**motion [1]** 78/15
**mourning [2]** 7/5 27/25
**move [5]** 8/4 8/5 28/8 42/25 73/25
**moved [1]** 34/19
**moves [1]** 15/16
**Mr. Bacolod [2]** 72/7 73/9
**Mr. Barela [3]** 47/11 72/4 74/1
**Mr. Boe [3]** 51/7 72/7 73/10
**Mr. Charif Kazal [2]** 3/18 32/20
**Mr. Clark [7]** 45/22 53/23 60/13 64/25 71/22 72/7 73/8
**Mr. Corado [2]** 46/9 73/6
**Mr. David [1]** 21/24
**Mr. Elakabawi [4]** 44/19 54/21 72/6 73/2
**Mr. Maaske [3]** 48/4 72/1 73/22
**Mr. Perez [1]** 71/4
**Mr. Ravago [6]** 40/7 42/18 44/12 55/11 72/1 73/23
**Mr. Regala [3]** 42/25 72/2 73/24
**Mr. Rosales [3]** 72/2 73/24 73/25
**Mr. Taylor [12]** 4/9 7/24 11/7 13/7 13/19 15/10 16/6 19/13 22/17 23/10 69/19 70/15
**Mr. Wiener [10]** 4/8 5/25 13/17 16/2 23/17 32/7 69/15 70/13 76/5 91/19
**much [12]** 10/1 18/18 19/5 24/21 28/21 28/24 29/8 39/20 68/19 73/7 84/3 86/5
**multiple [2]** 20/25

21/2
**murder [3]** 41/20 45/9 45/9
**music [2]** 64/12 64/13
**musical [1]** 78/13
**must [20]** 53/6 53/10 62/4 76/25 77/6 77/7 77/9 77/24 78/21 79/17 79/20 81/24 83/13 83/16 84/13 84/14 84/18 86/12 86/14 87/10
**myself [1]** 9/24

**N**

**name [5]** 25/21 25/24 32/17 58/19 72/25
**names [8]** 31/8 31/10 34/4 34/6 34/11 34/17 61/12 72/25
**national [2]** 7/5 27/25
**nature [7]** 20/3 39/8 63/18 64/18 65/8 68/4 74/16
**nausea [1]** 74/22
**necessarily [3]** 10/6 11/12 86/3
**necessary [1]** 89/18
**need [23]** 10/17 11/2 12/20 13/25 14/3 16/5 16/21 18/10 18/14 18/20 18/21 18/22 19/16 20/12 21/14 22/12 30/6 35/20 35/22 69/25 70/3 75/10 91/15
**needs [1]** 72/10
**negative [1]** 48/19
**neighborhood [2]** 33/15 34/1
**Neil [1]** 35/10
**neither [1]** 5/22
**never [6]** 27/10 43/24 45/25 48/19 59/19 62/2
**nevertheless [1]** 73/16
**new [1]** 39/6
**news [3]** 13/22 87/15 87/18
**newspaper [1]** 11/4
**next [12]** 7/3 15/19 18/4 18/22 28/5 29/1 36/5 62/25 70/23 71/2 71/6 73/21
**next from [1]** 15/19
**nexus [1]** 10/7
**niece [1]** 62/13
**night [1]** 27/9
**nine [1]** 56/14
**nods [1]** 31/5
**noise [1]** 29/16
**non [1]** 53/19
**non-litigious [1]** 53/19
**none [2]** 69/21 84/22
**noon [4]** 7/15 7/15 28/18 90/23

**Northridge [1]** 52/18
**Norwalk [1]** 43/3
**note [3]** 31/15 89/10 90/22
**notes [8]** 4/2 89/7 89/8 89/11 89/12 89/13 89/14 89/15
**nothing [2]** 25/4 48/22
**notice [1]** 16/9
**noticed [1]** 7/19
**notify [2]** 87/6 88/25
**number [51]** 8/21 15/15 15/23 15/23 20/15 35/3 35/4 35/5 35/5 35/6 35/6 35/7 35/8 35/8 35/9 35/9 35/10 35/11 35/11 35/12 35/12 70/20 70/21 70/22 70/22 70/24 70/25 71/1 71/1 71/3 71/4 71/5 71/5 71/7 71/11 71/21 71/22 71/23 71/25 71/25 72/1 72/1 72/2 72/2 72/3 72/3 72/4 73/21 73/22 73/22 86/3 90/2
**Number 1 [1]** 35/3
**Number 10 [1]** 71/1
**Number 11 [1]** 71/5
**Number 2 [2]** 70/24 70/25
**Number 3 [2]** 71/7 71/11
**Number 4 [1]** 20/15
**Number 6 [3]** 15/23 70/20 71/5
**Number 6's [1]** 70/22
**Number 7 [3]** 71/21 71/22 71/23
**Number 8 [2]** 71/3 71/4
**Number 9 [3]** 15/15 15/23 70/22
**nursing [1]** 47/15
**Nuys [1]** 58/17

**O**

**o'clock [4]** 17/9 17/11 28/20 76/1
**oath [3]** 77/11 88/8 88/18
**object [6]** 8/9 8/13 9/19 11/11 83/7 84/9
**objection [6]** 9/18 19/13 83/9 84/9 84/11 84/13
**objections [2]** 10/25 83/6
**obligation [1]** 27/17
**Obviously [2]** 18/3 24/8
**occasion [1]** 81/24
**occupation [5]** 36/6 40/11 43/3 45/24 52/19
**occupations [1]** 41/3
**occur [1]** 59/17
**occurred [1]** 81/5

**O**

**odd [1]** 59/7
**off [4]** 4/3 29/17 36/14 72/24
**offers [1]** 84/6
**Office [1]** 79/4
**officer [1]** 32/12
**OFFICES [1]** 2/3
**OFFICIAL [1]** 1/23
**often [1]** 85/15
**oh [4]** 57/15 58/6 58/18 59/18
**once [5]** 14/25 15/6 19/1 19/21 29/20
**one [34]** 12/13 13/2 15/11 15/16 16/7 17/1 19/8 20/1 20/14 24/16 26/8 27/18 28/5 28/19 31/1 41/4 41/18 42/3 42/3 45/3 46/14 49/1 51/21 52/23 55/19 66/24 71/13 73/25 80/5 81/17 81/24 83/24 89/11 91/17
**one-hour [1]** 28/19
**online [1]** 33/21
**only [17]** 9/11 9/23 13/9 17/8 17/24 18/7 20/23 21/8 21/24 26/24 32/2 82/20 83/14 83/15 86/13 88/7 89/14
**oOo [1]** 91/25
**open [10]** 25/11 29/14 53/1 62/7 68/21 69/4 72/22 76/10 86/8 91/11
**opening [17]** 20/13 20/15 72/12 74/18 74/20 75/22 75/24 76/2 76/3 76/14 83/1 90/8 90/8 90/11 90/21 91/7 91/16
**operation [1]** 78/19
**opinion [4]** 74/24 77/13 90/5 91/1
**opinions [1]** 77/8
**opportunity [3]** 4/17 59/6 84/25
**option [1]** 29/14
**Orange [1]** 49/11
**Orange County [1]** 49/11
**order [19]** 9/25 11/13 11/13 11/16 11/17 12/3 12/8 12/23 12/24 15/15 18/15 18/20 31/19 66/21 73/20 80/25 82/6 82/6 84/15
**ordered [1]** 87/11
**orders [3]** 11/4 11/9 32/1
**organize [1]** 33/25
**organizing [3]** 22/3 22/8 33/11
**original [4]** 31/13 78/21 78/22 79/16
**other than [2]** 22/20 22/21
**others [2]** 52/3 85/25
**otherwise [3]** 11/20 82/10 86/18
**ourselves [1]** 13/9
**out [29]** 4/20 4/22 5/17 8/2 9/12 12/14 13/14 14/6 14/21 18/15 18/18 18/20 19/16 19/22 23/16 26/3 26/11 27/15 28/22 30/2 31/15 36/18 40/17 41/6 45/12 51/18 60/16 75/23 89/18
**outcome [2]** 66/24 85/4
**outline [1]** 90/9
**outside [11]** 31/20 32/4 34/1 40/15 43/17 46/2 75/16 75/18 88/11 88/25 91/11
**over [7]** 15/16 27/4 38/9 68/12 68/13 73/25 88/24
**overly [2]** 24/23 89/15
**overrule [1]** 84/9
**own [6]** 33/22 54/24 62/18 63/6 87/22 89/14
**owner [5]** 78/9 79/2 79/10 79/15 80/7
**ownership [2]** 20/16 78/4

**P**

**P.I [1]** 59/24
**pace [4]** 17/3 28/7 28/9 28/14
**packaging [1]** 39/3
**page [1]** 92/7
**pages [1]** 33/9
**paid [1]** 42/4
**pains [1]** 61/21
**Palmdale [1]** 46/23
**panel [1]** 14/17
**panels [1]** 30/10
**pantomime [1]** 78/14
**paperwork [1]** 70/3
**paragraph [1]** 81/19
**parent [1]** 81/9
**park [2]** 2/13 29/23
**Parlata [1]** 34/10
**parole [1]** 47/23
**part [9]** 4/22 4/24 40/16 43/6 65/3 70/12 81/18 84/22 85/25
**part-time [1]** 40/16
**parties [27]** 3/25 4/4 4/6 5/22 5/24 7/20 7/22 9/12 10/1 12/12 12/15 13/3 14/15 20/4 20/23 31/19 31/23 32/5 32/15 34/13 53/6 56/4 77/16 82/11 88/1 88/15 88/18
**partnerships [1]** 36/4

52990

**party [6]** 53/18 77/22 78/2 82/9 90/10 90/11
**party's [1]** 88/6
**pass [2]** 46/17 71/14
**passing [1]** 27/25
**past [1]** 60/21
**patent [3]** 23/24 62/14 63/3
**patents [3]** 63/25 64/17 65/7
**patients [1]** 47/21
**pattern [7]** 80/23 81/4 81/12 81/15 81/18 82/1 82/2
**Paul [2]** 34/7 35/11
**Paul Kolesa [1]** 34/7
**pay [2]** 31/14 89/1
**paying [1]** 75/12
**payroll [1]** 49/21
**people [14]** 23/23 23/25 26/3 30/7 30/12 40/21 48/22 48/23 55/13 61/19 85/15 85/16 87/5 88/1
**Pepperdine [1]** 36/19
**per [2]** 24/18 24/24
**percent [1]** 8/16
**peremptories [6]** 15/1 15/2 15/6 15/25 70/6 70/7
**peremptory [10]** 15/3 69/23 69/24 70/7 70/8 70/18 70/23 71/6 71/12 71/15
**Perez [5]** 35/7 46/9 71/4 72/6 73/6
**Perfect [2]** 44/22 74/2
**performing [1]** 78/10
**perhaps [5]** 24/22 29/24 29/24 30/20 49/4
**period [2]** 68/12 78/12
**permitted [1]** 84/8
**persisted [1]** 82/2
**person [14]** 31/10 67/8 67/11 68/8 78/10 80/10 80/11 80/14 80/15 80/18 81/9 81/11 81/16 86/22
**personal [3]** 28/23 36/12 77/8
**personally [3]** 16/12 68/17 83/23
**perspective [1]** 10/9
**persuaded [2]** 77/24 79/18
**phase [1]** 50/17
**phone [3]** 26/3 26/10 86/22
**phones [2]** 26/6 26/12
**photocopy [1]** 11/16
**photographs [1]** 5/23
**photos [1]** 33/8
**pick [3]** 25/20 29/19 71/17
**picked [4]** 7/15 42/18 48/25 59/16
**picking [1]** 26/9
**pictorial [1]** 78/15
**picture [1]** 78/16
**place [7]** 32/4 33/15 36/17 80/24 81/20 87/22 87/24
**plaintiff [31]** 21/9 21/16 21/21 22/7 33/6 33/9 33/14 33/17 33/18 53/9 69/15 69/24 70/19 71/12 77/17 77/18 78/3 79/11 79/13 79/14 80/1 80/19 80/25 81/1 81/6 81/14 81/20 81/23 81/24 90/12 90/14
**plaintiffs [13]** 1/6 2/2 3/10 3/14 20/15 20/16 21/5 21/8 21/23 22/2 32/10 77/19 79/20
**plaintiffs' [8]** 10/15 11/3 79/12 80/1 80/2 80/4 81/13 82/3
**play [1]** 8/2
**playing [2]** 41/7 41/8
**pleaded [1]** 42/3
**please [32]** 3/7 25/25 26/5 26/6 31/5 31/14 31/14 31/14 32/7 32/16 34/14 34/18 35/1 35/2 35/3 35/4 38/13 52/17 52/23 69/11 74/2 74/6 74/23 75/8 76/8 77/12 88/25 89/5 89/8 89/21 90/25 91/7
**pleasure [1]** 58/21
**plural [3]** 21/5 21/8 22/2
**point [7]** 12/19 15/20 19/9 34/16 67/4 69/22 91/7
**police [5]** 27/7 66/20 67/3 67/6 67/10
**pop [1]** 20/14
**portion [5]** 4/20 6/1 13/22 79/24 81/12
**position [3]** 10/16 10/24 77/16
**possible [6]** 10/2 19/11 28/21 28/25 29/9 88/5
**Possibly [1]** 62/5
**posted [2]** 33/20 65/19
**posteriors [1]** 61/21
**posting [1]** 33/8
**postings [1]** 33/17
**potential [1]** 34/5
**power [1]** 26/6
**PowerPoint [1]** 23/15
**practice [1]** 39/8
**practiced [2]** 60/19 60/21
**practices [1]** 62/13
**practicing [3]** 39/9 60/2 61/8
**preceding [1]** 81/12
**pregnant [1]** 56/10
**prejudice [3]** 8/13 77/8 85/6
**preliminarily [1]** 25/23
**preliminary [3]** 23/7 76/20 91/14
**prepare [1]** 75/24
**prepared [1]** 91/16
**prepares [1]** 80/6
**preparing [1]** 78/11
**preponderance [7]** 42/16 52/4 53/7 53/10 77/23 79/14 79/17
**presence [8]** 25/11 31/25 68/21 72/22 75/16 75/18 76/10 91/12
**present [5]** 3/18 26/17 89/20 90/12 90/14
**presented [6]** 35/15 69/5 78/2 88/7 88/17 90/16
**president [2]** 7/4 27/24
**press [2]** 29/15 87/5
**pressure [1]** 49/3
**presumably [2]** 37/25 44/3
**presume [2]** 33/1 91/18
**pretrial [5]** 5/14 9/25 12/4 16/14 16/20
**pretty [3]** 26/11 36/20 55/25
**previous [1]** 56/9
**Price [1]** 34/7
**primarily [1]** 18/7
**principles [3]** 27/1 76/21 78/19
**print [2]** 19/22 25/6
**prior [16]** 37/16 38/6 38/16 40/4 42/20 45/19 46/24 47/9 47/16 48/10 51/5 52/8 52/20 56/17 56/20 56/25
**prison [1]** 47/22
**private [1]** 40/20
**probably [16]** 6/12 6/23 7/1 12/20 26/11 29/22 30/21 37/18 48/18 52/9 59/3 73/15 75/4 75/23 77/25 79/18
**problem [3]** 16/25 62/22 89/6
**Procedure [1]** 82/7
**procedures [1]** 78/10
**proceed [5]** 5/7 6/22 14/7 18/21 26/9 74/5 90/7
**proceedings [6]** 1/14 30/25 66/5 69/12 88/22 92/6
**process [17]** 25/7 25/20 26/14 26/15 27/4 29/2 29/7 29/10

**P**

process... [9] 30/13
31/2 31/7 31/22 43/14
55/22 88/10 88/14
88/24
processes [1] 78/16
produce [1] 37/7
produced [1] 39/5
produces [1] 80/5
products [1] 37/8
profited [1] 80/15
program [1] 78/17
programs [1] 87/23
prohibiting [1] 82/8
project [2] 43/11
51/12
projects [5] 36/25
37/2 37/5 37/6 37/6
promise [1] 27/22
promised [1] 76/13
pronouncing [2]
49/16 57/16
proof [11] 42/11 42/14
42/20 42/22 44/12
44/16 45/16 50/14
52/3 83/22 83/24
properly [1] 87/14
property [4] 23/24
53/25 54/24 63/3
propose [2] 5/6 19/10
proposed [3] 5/1 5/4
14/12
prospective [4] 25/12
34/25 68/22 72/23
protect [1] 88/6
protestors [1] 33/12
protests [5] 22/3 22/8
33/11 33/25 34/3
prove [5] 53/6 53/10
53/14 79/20 79/25
proved [1] 82/19
proven [1] 80/22
proving [3] 77/19
77/22 79/13
pry [1] 29/18
psychiatric [2] 47/13
47/18
publicly [2] 80/5 80/5
punitive [1] 6/19
purpose [7] 9/22
29/18 83/14 83/15
83/17 84/18 89/22
purposes [1] 81/8
pursuant [2] 82/7 92/3

**Q**

qualifications [1]
34/22
quarter [1] 75/25
question [28] 5/14
8/25 9/9 9/21 12/1
12/13 13/6 13/8 13/20
13/24 15/12 17/1 24/3
29/13 36/6 50/17
52/25 53/9 59/19
61/22 62/2 62/25 83/8
84/6 84/10 84/11
84/13 84/13

questioning [1] 24/18
questions [41] 5/21
5/23 14/12 14/14 16/2
19/23 19/24 20/4 20/5
23/16 24/8 24/11
24/13 28/13 29/5 29/6
29/10 31/1 31/4 31/14
31/18 34/21 35/17
36/3 36/14 38/12
44/24 52/3 52/22
52/23 53/4 56/24 57/7
57/9 59/17 59/18
67/22 68/15 68/24
83/6 89/5
Quinn [1] 6/6
Quinn Emanuel [1]
6/6
quite [2] 6/4 27/10

**R**

raise [9] 12/1 12/13
17/24 18/10 26/1
34/14 34/18 52/23
74/6
raised [3] 8/16 12/3
20/12
RAMON [1] 2/4
rates [1] 43/8
rather [1] 20/22
Raul [1] 35/5
Ravago [7] 35/5 40/7
42/18 44/12 55/11
72/1 73/23
re [1] 9/5
reach [5] 5/2 6/23
36/11 43/5 49/23
reached [5] 41/22
41/23 41/24 45/11
45/13
reaching [1] 82/20
read [18] 9/8 12/2
12/7 12/10 12/21 13/1
14/1 14/3 33/3 34/4
72/12 72/24 72/25
76/15 77/12 87/15
88/3 89/12
reading [1] 19/9
ready [7] 3/24 3/25
19/1 19/20 19/21 76/4
91/17
ready for [1] 3/24
real [2] 30/25 31/2
reality [1] 26/10
realized [1] 6/11
really [7] 6/13 21/8
29/18 48/23 55/5 60/8
66/16
reason [7] 13/1 17/4
28/6 29/13 39/14
52/25 57/5
reasonable [1] 42/15
81/16 81/21
Reasonableness [1]
85/9
reasonably [1] 81/6
reasons [3] 12/13
26/8 74/1
reassemble [1] 73/19

recall [19] 41/16 41/21
45/6 77/10
receive [4] 38/2 42/7
44/2 87/11
received [10] 14/12
29/20 82/15 82/21
83/14 83/20 84/5
84/10 84/12 86/13
recently [1] 58/24
reception [1] 26/10
recess [15] 20/9
20/10 25/4 25/9 25/10
28/19 74/14 75/4
75/21 76/8 76/9 89/20
90/23 91/23 91/24
reckless [1] 81/22
recognize [3] 30/1
30/4 34/6
record [2] 11/18 84/16
recording [1] 78/16
recovery [1] 55/22
Redondo [1] 35/21
Redondo Beach [1]
35/21
reduce [2] 40/22
43/12
refer [1] 76/24
reference [2] 73/16
87/20
refill [1] 14/23
reflect [3] 4/17 21/2
22/13
reflection [1] 4/25
Regala [4] 35/5 42/25
72/2 73/24
regard [1] 12/18
regarding [2] 12/16
77/13
regardless [1] 78/2
register [3] 79/2 79/7
79/8
registering [2] 24/1
65/18
registers [1] 79/9
registration [2] 79/3
79/9
regularly [2] 81/11
81/13
regulations [1] 92/8
related [2] 55/5 81/10
relates [8] 12/19
13/22 24/5 24/8 27/20
38/1 42/18 42/22
relation [1] 34/12
relationship [3] 63/16
64/20 65/11
relatively [2] 23/20
55/22
relatives [2] 53/20
63/2
relays [1] 30/24
relevant [1] 89/23
rely [1] 89/13
remain [2] 73/23
76/25
remaining [1] 6/2 15/4
73/14
remains [1] 70/10

remember [10] 6/7
44/9 51/23 60/20
63/23 83/3 85/16
85/17 88/18 89/8
remind [1] 52/25
reminder [2] 19/2
70/5
removed [1] 14/19
render [1] 74/10
rental [1] 53/24
rented [1] 54/24
repeated [1] 26/18
replace [1] 70/8
reported [1] 92/5
reporter [7] 1/23 4/13
30/22 48/9 48/16
48/21 49/8
REPORTER'S [1] 1/14
reports [1] 87/18
reproducing [1] 78/10
request [2] 90/3 90/4
requested [1] 33/24
require [1] 88/23
required [2] 81/1
90/11
requirements [1] 79/7
research [5] 75/2
87/19 87/25 88/10
91/4
reseat [1] 14/20
resembles [1] 78/22
reservation [2] 4/24
8/9
reserved [1] 26/23
reserving [2] 9/19
11/11
reside [2] 40/1 51/2
resided [1] 81/13
residence [2] 35/20
43/3
resides [1] 81/11
respect [20] 4/5 4/18
4/19 5/23 7/19 10/2
13/8 14/9 15/13 16/8
16/11 16/12 17/25
19/24 20/18 22/14
23/7 24/13 64/17
69/10
respectfully [1] 26/6
respond [4] 31/16
31/18 56/23 87/10
responding [1] 57/7
response [4] 12/5
13/6 52/23 68/24
responses [3] 57/3
57/8 66/7
responsibilities [1]
47/24
responsibility [1]
65/17
rest [3] 27/13 75/14
86/1
restaurants [1] 29/24
restraining [2] 66/21
82/5
restrictions [1] 88/21
resubmit [1] 5/18
result [3] 78/24 81/4

88/23
resume [4] 7/17 17/18
28/1 28/16
retire [1] 48/12
retired [3] 48/8 51/11
60/15
return [11] 73/1 73/2
73/4 73/6 73/8 73/9
73/10 73/11 73/12
75/13 87/14
reviewing [1] 9/24
revisiting [1] 6/11
right [105]
rights [2] 8/13 88/6
rise [7] 10/17 20/9
25/9 32/7 75/7 91/9
91/23
robbery [3] 41/19
49/23 50/4
RODRIC [16] 1/5 3/10
20/16 21/1 21/21 22/7
23/1 32/11 33/9 33/15
33/17 33/18 33/25
34/6 77/18 80/19
role [2] 27/4 27/15
room [19] 1/24 26/10
28/12 43/25 73/1 73/3
73/4 73/7 73/8 73/9
73/10 73/11 73/13
73/5 75/13 76/25 89/9
89/11 90/19
Rosales [5] 35/8
46/18 72/2 73/24
73/25
roust [1] 27/8
row [4] 15/21 31/11
31/12 56/7
rude [1] 31/25
ruled [1] 27/6
rules [5] 52/7 52/10
83/8 84/5 84/8 88/6
88/19 88/20 89/24
ruling [1] 83/10
run [1] 37/5
running [1] 19/4
runs [1] 30/14

**S**

safety [6] 81/7 81/7
81/7 81/21 81/21
81/22
sales [3] 36/24 45/24
47/8
same [6] 45/15 45/15
50/13 52/3 54/25
85/16
SAN [2] 2/4 47/8
San Gabriel [1] 47/8
Santa [2] 35/21 38/14
Santa Monica [1]
38/14
satisfied [1] 79/7
save [1] 8/19
saying [1] 5/21
scheduling [5] 16/8
16/12 17/21 18/3
18/19
school [3] 36/18

**S**

**school... [2]** 47/15
51/18
**screen [4]** 26/16
29/25 30/24 36/3
**screens [2]** 35/16
43/22
**sculptural [1]** 78/15
**search [2]** 29/23
87/24
**searching [1]** 87/19
**season [4]** 24/22
38/19 38/21 75/14
**seat [27]** 14/10 14/13
15/23 35/2 35/2 35/3
35/3 35/4 35/4 35/5
35/6 35/6 35/7 35/8
35/8 35/9 35/9 35/10
35/10 35/11 35/12
35/12 70/8 70/22 71/1
73/22 73/25
**seat 16 [1]** 14/13
**Seat Number [1]** 35/9
**Seat Number 2 [1]**
71/1
**Seat Number 3 [1]**
73/22
**seated [8]** 30/22 31/9
31/10 35/1 73/23 75/8
87/7 91/10
**seats [5]** 14/23 14/24
15/5 15/14 74/2
**second [8]** 9/7 11/24
13/3 42/3 42/8 71/16
81/10 86/12
**secondly [1]** 26/9
**section [3]** 5/16 82/7
92/3
**Section 527.6 [1]** 82/7
**see [26]** 6/16 12/23
17/14 20/4 23/4 26/1
26/16 29/4 31/22 34/5
34/15 44/19 53/19
57/5 63/8 65/18 65/23
69/2 69/7 69/10 83/18
85/1 85/16 89/4 91/6
91/21
**seek [2]** 9/17 20/17
**seeks [1]** 78/4
**seems [1]** 5/8
**seen [5]** 4/5 6/4 27/10
29/25 70/11
**selected [10]** 27/23
30/8 38/3 42/17 42/18
44/13 45/17 50/21
52/6 53/8
**selecting [1]** 29/10
**selection [2]** 14/9
29/2
**sell [1]** 37/8
**semiprivate [2]** 29/14
29/17
**sending [1]** 33/16
**senior [2]** 39/2 52/19
**sense [4]** 15/9 15/11
24/7 70/13
**separate [1]** 59/14
**separately [1]** 82/10

**separates [2]** 27/12
27/18
**series [1]** 35/17
**serve [1]** 34/22
**served [5]** 40/12
41/10 43/4 49/22
50/16
**serves [2]** 4/23 6/6
**service [18]** 36/10
38/17 40/5 45/3 45/24
46/1 46/15 46/24
46/25 47/4 47/9 47/16
48/10 48/12 51/5
52/20 75/11 87/10
**serving [1]** 37/25
**session [4]** 1/18 28/2
29/14 83/19
**set [10]** 18/22 42/19
45/18 50/18 53/4
62/18 76/23 76/24
77/2 77/2
**SETH [4]** 2/3 2/3 3/10
32/9
**Seth Wiener [2]** 3/10
32/9
**settled [3]** 49/25
50/16 56/16
**settling [5]** 56/11
56/18 56/21 56/25
57/20
**seven [5]** 19/8 24/19
24/20 24/24 37/18
**Seventh [1]** 26/20
**Seventh Amendment
[1]** 26/20
**shakings [1]** 31/5
**shall [3]** 26/22 26/22
81/1
**shared [6]** 39/16
48/16 60/4 63/17
64/15 65/5
**Sharif [1]** 35/6
**sharing [1]** 66/11
**sheet [1]** 69/25
**shortly [1]** 31/8
**show [5]** 10/11 26/4
26/5 80/1 90/11
**showed [1]** 6/2
**shown [1]** 12/23
**shows [1]** 64/13
**shuffle [1]** 14/20
**side [41]** 5/1 10/5
10/16 14/13 15/9
17/22 19/3 19/6 19/8
20/4 20/5 24/18 24/24
24/24 29/17 33/2
37/22 39/17 40/25
48/20 53/12 53/16
54/16 55/8 56/25 57/8
57/11 58/7 60/7 61/1
61/24 62/21 63/21
64/22 65/12 67/14
67/18 67/22 69/14
84/7 90/8
**sidebar [9]** 14/15
24/10 29/15 53/3 66/1
66/4 66/5 69/11 69/12
**sides [6]** 5/12 9/19

19/2 59/20 13 72/11
**signage [1]** 33/13
**significant [2]** 45/3
51/4
**signs [1]** 33/12
**similar [3]** 38/2 61/18
67/15
**similarities [1]** 80/3
**similarity [1]** 78/23
**simpler [1]** 9/21
**simply [4]** 31/25 38/4
53/15 90/9
**since [1]** 18/6
**single [7]** 45/2 46/13
46/24 47/8 49/21 51/4
52/20
**sir [14]** 40/8 42/23
43/2 44/18 44/25
45/21 46/10 46/11
46/21 48/3 51/9 52/11
54/21 60/17
**sister [3]** 59/24 64/5
67/25
**sister-in-law [1]** 64/5
**sit [3]** 56/3 73/21
73/22
**sitting [1]** 15/14
**situated [1]** 75/6
**situation [1]** 54/25
**six [3]** 42/4 60/3 81/12
**slip [2]** 49/25 50/11
**slip-and-fall [2]** 49/25
50/11
**slogans [1]** 33/14
**slow [1]** 7/21
**smaller [1]** 36/9
**smartphone [1]** 26/4
**Snapchat [1]** 87/1
**social [2]** 33/8 87/1
**solely [2]** 77/9 83/20
**solemnly [2]** 34/20
74/8
**somebody [1]** 63/8
**somehow [1]** 53/14
**someone [3]** 24/4
30/20 69/2
**something [11]** 7/20
7/22 12/16 22/1 24/9
41/14 53/14 59/17
85/12 85/13 85/21
**sometimes [6]** 27/9
49/11 49/11 84/15
85/12 85/13
**somewhat [2]** 34/20
74/8
**son [4]** 51/14 55/12
55/22 56/2
**Sona [1]** 35/12
**soon [1]** 88/5
**sooner [1]** 20/22
**sorry [14]** 5/20 7/21
11/21 17/25 22/21
46/4 55/21 57/15
57/17 58/12 66/6
66/18 72/4 79/8
**sort [7]** 8/6 16/10 26/4
57/10 61/20 66/21
74/15
**sound [1]** 78/16

**South [2]** 35/20 45/2
**South Bay [1]** 35/20
**speak [8]** 4/10 9/23
13/9 14/21 18/10 29/5
31/20 69/16
**speaking [1]** 10/5
**special [1]** 4/5
**specific [6]** 19/24
23/22 35/20 35/23
41/16 78/12
**specifically [5]** 8/25
42/20 44/15 60/6 65/6
**specified [1]** 81/19
**Spectrum [1]** 41/4
**spend [1]** 8/8
**spending [1]** 27/15
**split [1]** 19/10
**spouse [9]** 36/8 37/9
37/12 40/14 40/15
43/16 43/19 46/2 81/9
**spouse's [1]** 36/6
**squatter [1]** 54/25
**squeeze [1]** 16/21
**staff [2]** 7/8 34/13
**stalked [2]** 66/14
67/24
**stalking [21]** 4/22 5/2
6/13 21/22 22/3 22/8
23/2 24/4 24/4 33/11
34/2 65/25 66/25 67/8
67/12 68/16 69/1 69/2
77/19 80/20 80/21
**stand [3]** 34/18 47/23
74/6
**Starbucks [1]** 51/14
**start [5]** 24/21 35/24
53/23 69/15 88/24
**starting [2]** 15/15
15/15
**starts [1]** 32/23
**state [8]** 3/7 36/10
37/5 47/14 47/18
50/11 51/15 54/9
**stated [4]** 9/13 30/25
82/10 83/4
**statement [15]** 10/13
21/4 21/7 21/13 21/25
22/1 22/12 33/3 67/17
74/20 76/3 90/8 90/9
90/11 91/16
**statements [5]** 72/13
75/25 82/24 83/1 91/7
**STATES [3]** 1/1 92/4
92/8
**status [1]** 5/15
**stay [1]** 18/4
**steming [1]** 66/25
**stenographically [1]**
92/5
**step [2]** 3/7 66/8
**STEVEN [3]** 2/7 3/14
32/13
**Steven Gebelin [2]**
3/14 32/13
**stipulate [3]** 9/5 10/1
11/15
**stipulation [13]** 7/25
8/7 9/1 9/4 9/13 9/22

10/24 11/23 12/10
12/22 13/2 14/1 14/3
**stocks [1]** 38/23
**stop [1]** 16/15
**stopped [1]** 67/2
**stores [1]** 68/8
**stories [9]** 48/17
48/20 59/5 60/4 60/24
63/17 63/23 64/15
65/5
**Story [1]** 24/3
**streamline [1]** 11/5
**street [3]** 1/24 27/11
45/4
**stretch [1]** 69/3
**stricken [3]** 83/11
84/15 84/18
**student [1]** 41/7
**students [1]** 48/10
**STUDIOS [17]** 1/5 3/5
3/11 20/16 20/24 21/9
21/16 22/22 24/2
25/14 25/21 32/12
33/6 33/16 34/1 63/14
64/6
**Studios, [4]** 32/10
77/17 78/3 79/11
**stuff [1]** 40/23
**style [2]** 59/17 62/3
**subdivision [1]** 82/8
**subject [3]** 75/2 79/6
91/4
**submit [1]** 5/3
**submitted [2]** 74/24
91/2
**subparagraph [1]**
81/8
**substantial [5]** 79/21
79/23 80/3 81/14
81/16
**such [4]** 29/25 34/21
83/22 87/19
**suffer [1]** 81/16
**suffered [1]** 81/14
**suffice [2]** 35/21
72/17
**suggest [1]** 87/17
**suggests [3]** 12/2
12/6 12/11
**SUITE [2]** 2/8 2/13
**suits [1]** 26/21
**summary [1]** 77/16
**summons [1]** 29/21
**supervise [1]** 80/17
**support [3]** 10/7 37/6
81/2
**supposed [2]** 14/4
21/8
**supposed to [1]** 14/4
**sure [22]** 4/10 5/13
6/21 8/25 12/20 19/7
19/20 21/15 24/19
26/8 29/8 31/4 35/22
39/5 39/13 43/21
61/13 63/22 66/10
69/16 73/13 75/12
**surround [1]** 66/8
**surveillance [1]** 80/25

**S**

**suspect [2]** 29/20 48/18
**sustain [2]** 84/11 84/12
**Swart [1]** 34/10
**swear [4]** 30/17 34/16 34/20 74/9
**switch [3]** 38/9 73/24 74/2
**sworn [2]** 74/4 82/14
**sympathy [1]** 77/9
**system [4]** 26/14 27/3 27/19 30/6
**systems [1]** 78/18
**SYVERSON [1]** 2/7

**T**

**tailor [1]** 24/5
**take [25]** 9/16 18/9 23/13 23/19 25/4 32/4 48/1 70/2 72/9 74/14 74/18 74/19 75/4 75/21 76/7 76/8 84/24 88/8 89/7 89/8 89/13 90/22
**taken [6]** 20/10 25/10 76/9 76/25 88/18 91/24
**taking [1]** 89/10
**talk [19]** 4/1 7/18 8/3 8/22 12/17 12/20 14/8 18/2 18/5 18/18 35/19 61/14 62/25 63/12 74/25 75/1 89/18 91/2 91/3
**talked [4]** 14/10 24/14 61/6 63/4
**talking [1]** 11/9
**tangible [1]** 79/1
**TAYLOR [17]** 2/11 2/12 3/17 4/9 7/24 11/7 13/17 13/19 15/10 16/6 19/13 22/17 23/10 24/15 32/18 69/19 70/15
**teacher [1]** 46/4
**team [5]** 39/3 39/3 39/4 61/11 62/15
**technician [2]** 47/14 47/18
**technology [2]** 10/21 37/6
**teenager [1]** 46/14
**telling [2]** 36/22 61/20
**temporary [1]** 66/21
**ten [5]** 35/9 75/4 76/8 91/14 91/22
**ten-minute [2]** 75/4 76/8
**term [2]** 58/6 80/7
**terms [2]** 8/9 78/7
**Teroganesyan [5]** 35/12 52/13 59/23 72/7 73/12
**terribly [1]** 16/11
**test [1]** 26/2

**tested [2]** 88/9 88/14
**testified [3]** 85/1 85/21 85/24
**testifies [1]** 11/13
**testify [9]** 10/10 11/10 11/17 11/19 54/5 55/2 56/17 57/21 86/3
**testifying [1]** 85/3
**testimony [26]** 7/16 10/8 12/16 28/15 28/25 57/8 57/9 74/21 76/3 82/14 82/21 83/11 83/22 84/20 84/20 84/23 85/8 85/9 85/18 85/19 86/5 88/9 89/2 89/3 89/5 91/7
**text [1]** 86/23
**thank [43]** 10/23 16/1 20/7 20/8 25/2 25/8 25/16 32/14 32/22 35/1 38/8 38/24 39/20 40/6 42/24 43/15 44/18 45/21 46/8 47/4 47/10 48/3 48/11 49/13 50/23 51/6 52/11 55/10 56/6 57/13 58/9 59/22 62/11 63/24 65/15 68/19 72/21 72/25 73/2 73/3 73/7 75/6 75/14
**that the [1]** 14/21
**the -- I [1]** 19/2
**theft [1]** 51/21
**them [24]** 7/12 9/17 13/14 17/5 17/11 19/21 26/7 31/2 43/11 43/13 47/20 53/13 61/19 63/23 66/14 66/16 67/24 70/11 82/22 82/23 83/3 83/4 83/5 89/9
**themselves [3]** 32/6 32/16 78/20
**therapeutic [1]** 37/7
**there's [1]** 21/2
**therein [1]** 74/10
**thing [6]** 7/1 7/10 7/18 16/7 45/16 50/13
**things [12]** 3/25 20/3 27/18 30/4 63/18 64/17 65/8 74/16 82/22 85/1 85/15 85/24
**think [52]** 4/18 5/3 5/8 5/19 6/3 6/22 8/7 8/12 8/16 8/21 9/23 9/24 10/4 10/14 11/22 12/3 12/19 13/13 13/24 17/13 19/2 19/17 22/20 23/17 23/20 26/23 27/12 28/7 30/8 41/13 42/2 42/3 45/8 49/6 51/21 52/9 53/11 53/15 58/24 59/7 59/16 59/18 60/22 62/7 62/19 63/23 67/13 67/17 76/13

**tested [2]** 85/6
**thinking [2]** 24/8 62/1
**thinks [1]** 84/8
**Thomas [1]** 26/23
**Thomas Jefferson [1]** 26/23
**though [1]** 11/23
**thought [3]** 4/3 7/21 24/23
**threat [1]** 81/19
**three [6]** 15/2 40/12 41/2 45/25 48/13 68/14
**throughout [4]** 30/10 74/23 76/23 86/8
**THUNDER [19]** 1/5 3/4 3/10 20/16 20/24 21/9 21/16 22/22 24/2 25/13 25/21 32/10 32/12 33/6 33/16 34/1 77/17 78/3 79/11
**Thunder Studios [8]** 21/16 22/22 24/2 25/21 32/12 33/6 33/16 34/1
**Thunder Studios, Inc [4]** 32/10 77/17 78/3 79/11
**thunderstudios.com [1]** 65/22
**Thursday [10]** 7/3 7/17 16/21 17/4 17/15 17/17 18/15 28/2 28/10 28/16
**Thus [1]** 86/17
**ticket [1]** 73/17
**tickets [1]** 64/7
**till [3]** 7/16 28/18 28/20
**Title [1]** 92/4
**today [6]** 17/17 25/19 27/23 49/10 75/15 76/4
**told [3]** 60/25 63/22 85/24
**tomorrow [8]** 7/5 7/7 7/9 7/11 7/13 17/17 27/23 75/10
**tomorrow's [1]** 16/10
**Tonton [1]** 27/8
**Tonton Macoute [1]** 27/8
**TONY [5]** 1/8 3/18 25/22 32/21 34/8
**Tony Kazal [3]** 3/18 25/22 34/8
**too [3]** 36/15 38/22 73/15
**took [2]** 68/6 77/10
**top [2]** 15/21 31/10
**tort [3]** 80/20 80/21 80/22
**touching [2]** 34/22 88/3
**tough [1]** 5/10
**town [1]** 29/24
**toy [4]** 38/15 38/19 38/23 38/25

**toys [1]** 73/5
**trademark [2]** 63/3 63/8
**trademarks [3]** 61/13 63/6 64/1
**traffic [1]** 40/21
**training [1]** 58/12
**transactional [1]** 39/11
**transcribing [2]** 30/23 31/2
**transcript [4]** 1/14 89/3 92/5 92/7
**transcripts [1]** 19/10
**treated [1]** 89/24
**treatment [1]** 47/22
**trial [54]** 1/18 3/5 3/25 7/7 8/2 9/11 9/12 9/16 11/5 13/5 14/10 15/8 17/3 17/17 17/18 17/19 18/14 18/22 26/19 26/22 26/24 27/20 27/21 28/2 28/6 28/8 28/17 28/21 30/15 30/19 34/23 36/10 39/12 47/23 56/3 62/1 74/23 76/24 77/1 78/8 83/20 86/8 87/6 87/8 87/25 88/10 88/14 88/15 88/18 88/23 89/1 89/3 89/17 91/7
**trials [3]** 40/13 76/22 90/7
**tried [2]** 23/22 24/5
**true [8]** 34/21 74/10 77/25 77/25 79/18 79/19 85/25 92/4
**truly [1]** 74/9
**truth [3]** 29/5 85/24 88/9
**try [14]** 4/4 6/16 8/19 12/15 18/5 25/5 25/20 28/21 29/11 74/9 87/21
**trying [2]** 8/5 9/2
**TUESDAY [4]** 1/15 3/1 16/20 18/22
**turn [1]** 88/4
**Twice [1]** 41/13
**Twitter [1]** 86/25
**two [8]** 40/13 41/11 47/16 48/9 51/13 51/17 78/23 85/16
**type [5]** 31/5 37/2 47/20 60/18 61/18
**typical [1]** 28/17
**typically [2]** 28/4 37/5

**U**

**Uh [1]** 68/1
**Uh-huh [1]** 68/1
**ultimately [1]** 55/1
**unchanged [1]** 6/2
**uncle [1]** 60/14
**unclear [1]** 24/17
**uncomfortable [1]** 29/13

**under [4]** 6/22 80/24 83/8 89/24
**understand [13]** 5/13 8/2 8/6 20/18 21/15 52/6 53/5 71/19 76/21 76/22 78/6 89/21 90/10
**understanding [1]** 53/9
**understood [2]** 10/1 18/23
**undivided [1]** 26/8
**unemployed [1]** 47/15
**unfortunate [1]** 57/11
**unfortunately [2]** 36/20 54/1
**unit [1]** 48/2
**UNITED [3]** 1/1 92/4 92/8
**unless [2]** 82/2 82/10 86/17
**unlikely [1]** 17/13
**unsafe [1]** 82/4
**until [11]** 15/24 17/19 49/2 69/4 74/24 86/9 86/17 87/2 88/2 89/9 91/1
**untrue [1]** 85/18
**untruthfully [2]** 85/21 85/24
**up [24]** 4/2 6/2 10/21 12/22 16/5 16/18 16/23 19/3 19/21 19/23 24/9 27/8 29/21 31/16 35/18 36/14 54/20 55/20 56/8 56/11 57/20 61/4 63/19 91/19
**upon [3]** 5/15 34/22 34/23
**upset [1]** 58/1
**urge [1]** 89/1
**us [11]** 4/13 8/17 17/14 26/19 27/12 27/18 27/18 29/7 61/20 66/12 68/2
**use [4]** 14/16 79/21 79/22 87/23
**used [1]** 51/11
**using [1]** 11/8 12/2 87/20
**usurpations [1]** 26/18

**V**

**Valley [1]** 47/8
**value [1]** 26/22
**van [2]** 33/13 58/17
**Van Nuys [1]** 58/17
**various [1]** 30/10
**vastly [1]** 50/15
**Ventura [1]** 35/21
**verbal [1]** 31/4
**verdict [23]** 4/5 4/16 4/20 4/22 5/4 5/7 5/11 6/1 6/11 28/13 36/11 43/6 45/10 45/13 49/23 74/10 77/14 82/20 86/9 87/15

**V**

**verdict... [3]** 88/12 90/6 90/20
**verdicts [2]** 41/22 41/23
**Verne [1]** 48/8
**versa [1]** 19/4
**versions [1]** 85/14
**versus [3]** 3/5 25/14 25/21
**via [3]** 27/11 32/23 86/23
**vicariously [1]** 80/9
**vice [1]** 19/4
**vice versa [1]** 19/4
**vicinity [1]** 50/8
**victim [3]** 24/4 65/25 68/25
**view [2]** 87/22 87/24
**violated [1]** 82/5
**violates [1]** 88/21
**virtue [2]** 33/1 62/4
**visit [1]** 87/22
**visited [2]** 24/2 65/21
**visual [1]** 78/16
**vitally [1]** 30/6
**voir [13]** 14/11 14/14 19/22 21/13 24/9 25/7 26/15 29/3 29/3 29/18 31/2 31/6 31/22
**voir dire [13]** 14/11 14/14 19/22 21/13 24/9 25/7 26/15 29/3 29/3 29/18 31/2 31/6 31/22

**W**

**waiting [1]** 89/21
**walk [1]** 31/23
**walked [1]** 31/20
**wanted [8]** 6/16 7/7 7/10 7/18 12/14 12/17 14/8 75/12
**war [3]** 48/17 48/20 60/4
**was one [1]** 66/24
**watch [1]** 87/15
**Website [4]** 33/8 65/20 65/21 65/22
**websites [3]** 20/2 24/3 86/24
**week [1]** 18/5
**weekend [1]** 75/14
**weeks [6]** 4/16 4/25 42/4 47/2 66/15 68/14
**weight [4]** 84/2 84/4 86/2 86/5
**Welcome [2]** 25/15 76/12
**went [5]** 29/22 36/18 43/25 44/3 49/25
**WEST [3]** 1/24 27/5 49/20
**West Hollywood [1]** 49/20
**West Indies [1]** 27/5
**WESTERN [1]** 1/2
**white [1]** 29/16

**whole [1]** 79/24
**why [13]** 4/12 5/3 9/9 12/1 12/13 21/6 35/23 39/14 57/5 66/7 69/22 90/22 91/13
**WIENER [14]** 2/3 2/3 3/10 4/8 5/25 13/17 16/2 23/17 32/7 32/9 69/15 70/13 76/5 91/19
**wife [5]** 47/14 48/9 48/15 49/3 51/12
**WILSHIRE [1]** 2/8
**wisdom [1]** 59/13
**wish [3]** 14/7 69/25 89/7
**wishes [1]** 20/5
**without [6]** 8/13 10/6 10/7 12/15 33/22 80/7
**witness [24]** 7/12 8/3 9/16 10/10 10/11 11/2 11/10 11/12 11/17 11/19 11/25 12/6 12/22 13/5 82/14 83/23 83/23 84/21 84/23 84/25 85/12 85/20 85/23 85/23
**witness's [7]** 8/10 85/2 85/3 85/4 85/6 85/8 85/9
**witnesses [12]** 8/22 16/11 34/5 76/4 82/25 85/14 86/3 86/4 88/2 88/8 91/17 91/18
**won [1]** 73/16
**wondered [1]** 58/18
**wonderful [2]** 75/13 75/14
**Wondering [1]** 4/6
**wood [1]** 72/17
**Woodward [1]** 34/9
**word [2]** 29/4 30/25
**words [4]** 29/4 29/4 59/13 86/6
**work [60]** 4/4 20/25 28/22 33/15 36/4 36/24 38/15 38/19 38/19 39/3 39/12 39/12 40/11 40/15 40/22 40/24 43/4 43/10 43/16 43/22 46/2 46/13 48/8 48/23 51/11 51/16 57/2 61/11 61/19 62/14 62/15 63/14 65/19 78/11 78/13 78/13 78/14 78/14 78/14 78/15 78/15 78/15 78/16 78/17 78/21 78/22 78/25 79/1 79/4 79/9 79/17 79/19 79/21 79/23 79/24 80/1 80/2 80/4 80/4 80/6
**worker [1]** 68/10
**working [5]** 8/6 41/3 49/10 51/18 89/22
**works [16]** 36/8 37/9

40/3 40/9 40/17 40/20 41/4 49/10 51/14 64/6 64/12 65/7 78/11 78/22 78/23 80/6
**world [2]** 27/13 27/19
**worry [1]** 5/9
**writing [1]** 86/22
**wrong [4]** 5/8 6/1 59/10 62/4
**www.thunderstudios.com [1]** 65/22

**Y**

**years [14]** 9/11 37/18 39/6 40/13 41/14 44/7 48/13 50/3 50/4 51/12 56/14 57/18 59/7 60/3
**you hadn't [1]** 6/4
**young [4]** 38/16 38/22 41/20 73/15
**youngest [1]** 41/7
**Your Honor [39]** 4/10 5/17 6/3 6/21 8/20 9/3 9/24 11/14 13/9 13/20 15/12 16/3 16/7 16/18 16/20 17/23 19/17 19/18 20/7 20/20 21/19 21/24 22/10 22/16 22/19 23/9 23/11 24/17 24/18 32/9 46/22 47/12 69/18 69/21 70/20 71/7 71/21 76/6 91/20
**Your Honor's [1]** 4/19
**YouTube [1]** 86/25